IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Donald L Moshier JR Reg# 10924-052
P.O. Box 8000
Bradford PA 16701
(Enter above the full name and address of the plaintiff in this action)

VS.

United States Federal Bureau of Prisons and F.C.I. McKean prison medical department And Warden James Sherman
(Enter above the full name, title, and business address of each defendant in this action)

CA 05-180E

**RECEIVED**

JUN 10 2005

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

ORIGINAL

Plaintiff brings this action against the above named and identified defendants on the following cause in this action.

I. Where are you now confined? F.C.I. McKean

What sentence are you serving? One Hundred Twenty months

What court imposed the sentence? U.S. District Court N.D. of NY

II. Previous Lawsuits
A. Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved in this action. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)
1. Parties to this previous lawsuit
Plaintiffs _____ N/A _____
Defendants _____ N/A _____

2. Court (if federal court, name the district; if state court, name the county) and docket number _____ N/A _____

3. Name the judge to whom case was assigned _____ N/A _____

4. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?) _____ N/A _____

5. Approximate date of filing lawsuit __N/A__

6. Approximate date of disposition __N/A__

B. Prior disciplinary proceedings which deal with the same facts involved in this action:

Where? _____
When? _____
Result: __N/A__

III. What federal law do you claim was violated? __Medical Negligence for the Treatment of Hepatitis C__

IV. Statement of Claim
(State here as briefly as possible the facts of your case. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

A. Date of event: __Approx. September, 2003__

B. Place of event: __F.C.I. McKean prison__

C. Persons involved--name each person and tell what that person did to you: _____

__PLEASE SEE ATTACHED SIX (6) PAGES__

RECEIVED 4/26/04    TRT-NER-2004-03795

95 (face)    Copy #2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: Northeast Region, Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut St. Philadelphia, PA. 19106 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and ZIP Code) Donald Moshier, Jr., #10924-052, F.C.I.-McKean, P.O. Box 8000, Bradford, PA. 16701 |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 8/18/61 | | October 2003 | N/A |

8. Basis of Claim (State in detail the known the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

Please See Attached Section

9.                                        PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on the reverse side.)

N/A

10.                                   PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please See Attached Section

DATE RECEIVED JUN 16 2004

11.                                           WITNESSES

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
|---|---|
| Dr. Olson | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| Dr. Beam | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| Mr. Smith (Hosp. Admin.) | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| (PLEASE SEE ATTACHED SECTION) | |

12. (See instructions on reverse)     AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| N/A | $5,000,000.00 | | $5,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on revere side.) *Donald L Moshier Jr* | 13b. Phone Number of signatory Contact F.C.I. Staff | 14. DATE OF CLAIM 15 June 2004 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109
Previous editions not usable.

(This form may be replicated via WP)

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

MEMORANDUM FOR RECORD

FROM: Moshier, Jr. Donald, #10924-052, Federal Corrections Institution-McKean, P.O. Box 8000, Bradford, PA. 16701

TO: Federal Bureau of Prisons, Northeast Region, Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, PA. 19106

SUBJECT: Standard Form-95 Continuation Sheet in Support of Tort Claim

**Basis of Claim** (from block #8 on Standard Form-95):

I have known since approximately September of 03 that I have positive results for Hepatitis C. After finding out that I have the virus as well as what the possible outcomes of treating or not treating the disease, I have made direct inquiries to the prison staff (counselor), and medical persons (Physician Assistants, Doctors) as well as the administrator of medical functions (Hospital Administrator) in regard to receiving treatment for the disease, as well as preventing the disease to progress unnecessarily.

In my first inquiry, it was stated that "You are to be reassured that if you do in fact need treatment, you will receive it." (This was issued by staff member Morello, Correctional Counselor on 10-03-03). This is a response after I told the counselor that I had not received a liver profile, lab tests and that I was experiencing flu-like symptoms. In the first request all that I asked for was treatment and for the progress of the disease to be followed closely.

On October 27 2003, I filed another form (BP-9) to the warden of the facility. I stated that the medical staff and the Bureau of Prisons was acting with deliberate indifference to serious medical needs, specifically treatment of hepatitis C. The warden then stated that I requested testing for hepatitis C on September 3, 2003. The warden stated that the results came back positive on 16 September 2003, and that I was placed on "chronic care" by the medical staff on 16 October 2003. The warden stated that additional bloodwork was ordered ordered during the visit. The warden stated that "Once all lab work is complete, you will be treated following the guidelines for hepatitis C treatment set forth by the medical director of the Bureau of Prisons. There is no evidence of deliberate

Page (1)

indifference or improper care.

I then filed a BP-10 to the Regional Director in which I stated that blood work that was ordered on 16 October 2003, had not yet been completed. I also stated that the practice of refusing to evaluate inmates because their liver enzyme levels were not elevated more than twice the upper limit, and that such conduct does amount to deliberate indifference. I also requested no more delays in my medical treatment, request for liver profile, liver biopsy and to be vaccinated against hepatitis A. (It should be noted that this is a standard procedure for persons who just find out that they have the virus). The response by the Regional Office was much the same as the previous responses, but when the appeal was filed to the Bureau of Prisons Central Office, the response was different in numerous ways.

The Central Office Stated:

"BOP guidelines for the treatment of hepatitis C are based on a large body of scientific literature, much of which is summarized in the NIH Consensus Conference Statement: "Management of Hepatitis C, 2002." These guidelines do not recommend treating every patient with hepatitis C, since significant liver disease develops in only about 15% of those who are infected. It takes 20 years or more for cirrhosis to develop in the 15% of infected individuals. The serum ALT level is used as an indirect indicator of liver inflammation. Recent research has shown that individuals with persistently normal or near normal ALT levels are unlikely to have significant or progressive liver disease. Thus it is premature to refer you for a liver biopsy at this time. Your condition will continue to be monitored every 3 to 6 months in the Chronic Care Clinic, and if in the future you meet the criteria for a liver biopsy, this will be performed."

In this statement, the BOP has openly relied on information that is only correct in part in relation to the treatment of the virus. The information that I was able to obtain is from a government website, and it speaks about the treatment and the progression of the disease hepatitis:

The BOP has stated in writing that 15% of those infected develop chronic or significant liver disease. The National Digestive Diseases Information Clearinghouse (NIDDK), a government website, says something different:

"A distinct characteristic of hepatits C is its tendency to cause **chronic liver disease**. At least 75% of patients with acute hepatitis C ultimately develop **chronic infection**, and most of these patients have accompanying chronic liver disease...."

Page (2)

My question is then, does the disease progress to a level of serious concern in 15% of those infected, or does it progress to a to a serious level in 75% of those infected.

In regard to the liver biopsy, I will not contest that the procedure is not necessary for diagnosis, but it is helpful for grading the severity of the disease as well as staging the degree of fibrosis and permanent architectural damage to the liver. In relation to the biopsy process: Hematoxylin and eosin stains and Masson's trichrome stain are used to grade the amount of necrosis and inflammation and **to stage the degree of fibrosis.** The biopsy is also used to rule out other causes of liver disease. It should also be noted that "grading and staging" of hepatitis by assigning scores for severity are helpful in managing patients with chronic hepatitis. The degree of inflammation and necrosis can be assessed as none, minimal, mild, moderate, and severe. The degree of fibrosis can be similarly assessed. Scoring systems are particularly helpful in clinical studies on chronic hepatitis. I can acknowledge that the biopsy procedure is expensive, and could require medication after the procedure, and that monitoring ALT levels, particularly if tested over an extended period, are reasonably accurate reflections of disease activity. However, the level is not predictive of liver biopsy findings.

Lastly, in relation to the biopsy, serum tests are **not reliable** in predicting fibrosis, particularly in the early stages (0, 1, and 2). When a patient develops bridging (stage 3) fibrosis and cirrhosis (stage 4) serum tests may then be helpful. **Physical findings** of a firm liver, or enlarged spleen or prominent spider angionata or palmar erythema, are also danger signals. While none of these findings should be considered "perfect" their presence should raise the suspicion of significant fibrosis and lead to evaluation and treatment **earlier rather than later.**

The therapy for chronic hepatitis C has evolved steadily since alpha interferon was first approved for use in the disease more than 10 years ago. At the **present time**, the optimal regimen appears to be a 24 or 48 week course of the combination of pegylated alpha interferon and ribavirin. This combination therapy leads to rapid improvement in serum ALT levels and the disappearance of detectable HCV RNA in up to 70% of patients. This begs the question of **who should be treated?**

"Patients with anti-HCV, HCV RNA, elevated serum aminotransferase levels, and evidence of chronic hepatitis on liver biopsy, and with no contradictions, should be offered therapy with the combination of alpha interferon and ribavirin. The National Institutes of Health Consensus Development Conference Panel recommend that therapy for hepatitis C be limited to those patients that have histological evidence of progressive disease. Thus the panel recommend that **all patients** with fibrosis of moderate to severe degrees of inflammation and necrosis on liver biopsy should be treated and patients with less severe histological disease should be managed on an individual basis. **Patient selection should <u>not</u> be based in the presence of**

or absence of symptoms, the mode of aquisition, the genotype of HCV RNA or serum HCV RNA levels. There are also a multitude of other situations such as a person who is HIV postive, that do not apply here. In many of these indefinite situations, the indications for therapy should be reassessed at regular intervals. Patients with acute hepatitis C are a major challenge to management and therapy. Because such a high proportion with acute infection <u>develop chronic hepatitis C</u>, prevention of chronicity has become the focus of attention. In small studies, 83 to 100 percent of persons treated within 1 to 4 months of onset have had resolution of infection.

    The point as well as the basis for this claim is that the Bureau of Prisons has in fact acted with deliberate indifference to the serious medical needs of a federal prisoner infected with a disease that can progress and be fatal. The BOP has not given the proper testing for the disorder such as the liver biopsy, and I have not been given the option of taking a drug regiment to prevent the advancement of the disease. The manner in which the BOP is going to treat, or not treat, the virus in my case is that once the disease progresses, it will be treated, but not prior to this event. The actions of the BOP will ultimately take years off of my life, not months. This is a disease that progresses in 75% of those who contract the virus.

**State the Nature and Extent of each Injury or Cause of Death, Which Forms the Basis of the Claim. (from block #10 on Standard Form-95)**

    As I have stated on the section "Basis of Claim", the manner in which the BOP is treating or not treating my disease at this point in time will ultimately take years off of my life. This is also a loss of future earning capacity, loss of consortium, medical costs associated with treating the disease after it progresses to a more advanced stage. This could also be compounded by the fact that I am incarcerated, and should the disease progress to a more advanced state prior to my release, I would be in a severely disabled state prior to my integration back into society. It should be noted that my ALT levels have increased sharply over the last 6 months alone, if the levels keep advancing in this manner, I will be in a more advanced stage of the virus in a short period of time, this is also compounded further since I have not received drug treatment for the virus.

**Witnesses (from block #11 on Standard Form-95)**

Harrell Watts                    Administrator, National Inmate Appeals
                                      Bureau of Prisons Central Office

L. Morello                         Counselor, F.C.I.-McKean, P.O. Box 5000
                                      Bradford, PA. 16701

M.E. Ray                        Regional Director, Bureau of Prisons
                                Northeastern Region

S. Czekai                       Medical Technician, U.S. Medical Centers
                                for Federal Prisoners Laboratory,
                                Sprongfield. MI., 65808

Any Other Medical Staff         F.C.I.-McKean, P.O. Box 8000, Bradford
Associated with the care,       PA.   16701
treatment and health of
prisoners treated by the
Chronic Care Clinic.

--------------------------Nothing Follows--------------------------


     I declare under the penalty of perjury that the foregoing
information is true and correct, pursuant to 28 U.S.C. § 1746.


Signed this _15_ day of _June_, 2004

_Donald C Moshier Jr_
Donald Moshier, Jr./ Claimant




Cc: (2) Copies to Regional Counsel
    (1) Copy, Claimant Records

V. Did the incident of which you complain occur in an institution or place of custody in this District: If so, where? _FCI McKean prison, in Bradford PA_

and answer the following questions:

A. Is there a prisoner grievance procedure in this institution?
Yes(X)    No( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes(X)    No( )

C. If your answer is Yes,

1. What steps did you take? _I filed all the grievances, from the BP-8 to the BP-11 and then filed a Tort Claim._

2. What was the result? _I was denied on all of them, and then filed a Tort Claim, then they started treating me, after my disease progressed to cirrhosis of the liver._

D. If your answer is NO, explain why not: _N/A_

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes( )    No( )    _N/A_

F. If your answer is Yes,

1. What steps did you take? _N/A_

2. What was the result? _N/A_

VI. Relief
State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues. _I want the court to grant my lawsuit in the sum of $5,000,000.00 for the damages, pain + suffering, mental + stress, and for shortening my life._

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_5/31/05_    _Donald C Mohica Jr_
(Date)    (Signature of Plaintiff)