**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD L. MOSHIER, JR   )
           )
   Plaintiff,    )
           )
  v.        )  CIVIL ACTION NO. 05-180(ERIE)
           )
UNITED STATES OF AMERICA,  )  JUDGE MCLAUGHLIN
JOHN J. LAMANNA (Former Warden), )  MAGISTRATE JUDGE BAXTER
DOCTOR BEAM (Doctor at FCI McKean), )
DOCTOR OLSON (Doctor at FCI McKean),) Electronically Filed
DOCTOR SMITH (Health Administrator), )
and JAMES SHERMAN    )
(FCI McKean Warden),    )
           )
   Defendants.   )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS OR, IN THE ALTERNATIVE, PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff Donald L. Moshier, Jr. filed this *pro se* lawsuit alleging that, while incarcerated

at a federal prison in McKean County, Pennsylvania ("FCI McKean"), he received inadequate

medical care from defendants in connection with several medical conditions.  Specifically,

plaintiff's Amended Complaint asserts a claim pursuant to *Bivens v. Six Unknown Named Agents*

*of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), alleging that defendants violated his

Eighth Amendment right to be free from cruel and unusual punishment, and a negligence claim

under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq.* ("FTCA").  Both claims are

premised on defendants' alleged denial and delay in performing a liver biopsy and providing

Interferon/Ribavirin treatment after he was diagnosed with the Hepatitis C virus ("Hepatitis C" or

"HCV"), and on defendants' alleged denial of adequate and/or prompt treatment for plaintiff's

gallbladder problems and a growth on the side of his stomach.  As relief, plaintiff seeks

$200,000.00 in damages, plus any other relief the Court deems appropriate.

As detailed below, however, plaintiff's *Bivens* claims should be dismissed in their entirety for multiple reasons, including because plaintiff cannot demonstrate "deliberate indifference" where he admitted that he has probably had Hepatitis C for over twenty (20) years, but now complains that medical staff at FCI McKean waited a mere eight (8) months after his diagnosis to recommend a liver biopsy, and less than two (2) months after reviewing the biopsy results to initiate Interferon/Ribavirin treatment. Plaintiff's *Bivens* and FTCA claims should also be dismissed insofar as they relate to his gallbladder problems and a growth on the side of his stomach, because he failed to exhaust his administrative remedies with respect to these issues. Accordingly, the Court should grant defendant's partial motion to dismiss or, in the alternative, partial motion for summary judgment, leaving only plaintiff's FTCA claim against the United States alleging negligent medical treatment for his Hepatitis C.

## FACTUAL BACKGROUND

## I.    THE PARTIES

Plaintiff is a federal inmate currently incarcerated at a United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). (*See* Public Information Data at 1 (attached as Exhibit 1a to Decl. of Joyce Horikawa.)) On April 26, 2002, he was sentenced in the United States District Court for the Northern District of New York to 120 months of imprisonment, to be followed by a five (5) year term of supervised release, for Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 18 U.S.C. § 846. (*See id.* at 2.) Additionally, on April 8, 2003, plaintiff was sentenced in the United States District Court for the Western District of Pennsylvania to twenty-four (24) months of imprisonment, to be served consecutively with the 120 month term of imprisonment, for Mailing Threatening

Communications in Prison, in violation of 18 U.S.C. § 876 and 2. (*See id.* at 2-3.) Plaintiff was designated to FCI McKean on June 6, 2002, and was subsequently designated to USP Lewisburg on June 26, 2005. (*See id.* at 1.) Assuming plaintiff receives all Good Conduct Time available, his projected release date is January 25, 2012. (*Id.* at 4.)

Defendants are the United States of America and five (5) individuals (the "Individual Defendants"). The Individual Defendants are as follows:

1.  John J. LaManna, former Warden, FCI McKean (currently Warden at a Federal Correctional Institution in Edgefield, South Carolina);

2.  Herbert Beam, M.D., Staff Physician, FCI McKean;

3.  Dennis Olson, M.D., Clinical Director, FCI McKean;

4.  Rodney Smith, Health Services Administrator ("HSA"), FCI McKean; and

5.  James Sherman, former Warden, FCI McKean (currently employed as the Senior Deputy Regional Director, Bureau of Prisons ("BOP") Northeast Region);

(*See* Am. Compl., ¶ 2.))

## II.    SUMMARY OF PLAINTIFF'S MEDICAL RECORDS

The medical attention that plaintiff received at FCI McKean and USP Lewisburg, from the time he tested positive for Hepatitis C until May 2006, is summarized in the attached declaration of A. Bussanich, M.D., Chief Medical Officer at USP Lewisburg. (*See* Decl. of A. Bussanich, M.D., ¶¶ 2a through 3ccccccccc (attached as Exhibit 2); *see also* Plaintiff's Prison Medical Records (attached as Exhibit 2a to Decl. of A. Bussanich, M.D.)) Dr. Bussanich's summary of plaintiff's medical records is highly detailed, spanning thirty-four (34) pages and 211 single-spaced sub-paragraphs, and addresses plaintiff's symptoms and treatment for Hepatitis C as well as numerous other ailments and chronic conditions. These include, for example, viral

syndrome (*see, e.g.,* Decl. of A. Bussanich, M.D., Ex. 2, ¶ 2e), upper respiratory infection (*see, e.g., id.,* ¶ 2h), lower back pain (*see, e.g. id.*), otitis media (*see, e.g. id.*), GERD (*see, e.g. id.,* ¶ 2k), cystic acne (*see, e.g., id.,* ¶ 2ooooo), various lipomas (*see, e.g., id.,* ¶ 2nn), asthma (*see, e.g., id.,* ¶ 2aaa), borderline diabetes mellitus (*see, e.g., id.,* ¶ 2rrr), sinusitis (*see, e.g., id.,* ¶ 2yy), cirrhosis of the liver (*see, e.g., id.,* ¶ 2ccc), and gallbladder problems (*see, e.g., id.,* ¶ 2kkkkkk).

Dr. Bussanich's summary of plaintiff's medical history is expressly incorporated in this brief but, in the interest of judicial economy, will not be repeated here. Nonetheless, the chart set forth below summarizes the treatment that plaintiff received for his Hepatitis C because that is at issue in this lawsuit. But because the Amended Complaint focuses on the alleged delay between plaintiff's diagnosis and his requested diagnostic procedure and treatment (*see* Am. Compl., ¶¶ 12-25), the chart covers only the assessment and treatment of plaintiff's Hepatitis C from his diagnosis in September 2003 until he began Interferon/Ribavirin treatment about a year later (*see id.,* ¶¶ 2a through 2c, 2ooo.) The Amended Complaint also complains of medical treatment that plaintiff received for his gallbladder problems and a growth on the side of his stomach (*see id.,* ¶¶ 26-35); however, these problems are not included in the chart because, as explained later, plaintiff failed to exhaust his administrative remedies regarding these issues.

| Date | Medical Record Type | Assessment and Treatment for Hepatitis C Until Initiation of Interferon/Ribavirin Treatment | Bussanich Decl., ¶; Medical Record, p. |
|------|---------------------|---------------------------------------------------------------------------------------------|----------------------------------------|
| 9/2/03 | Chron. Record of Medical Care | Plaintiff requested hepatitis test due to history of IV drug use, cocaine use and unprotected sexual contact. A Hepatitis C test was ordered. | ¶ 2a; p. 107 |
| **9/4/03** | Lab. Results | Hepatitis C profile conducted. **Results received 9/16/03 indicate plaintiff tested positive for Hepatitis C antibody.** | ¶¶ 2b-2c; pp. 256, 104 |
| 9/17/03 | Inmate Request to Staff | Plaintiff asked Dr. Olson for disclosure of the results of his Hepatitis C test. Dr. Olson's 9/18/03 response advised that plaintiff would be placed on call-out to discuss the test results with Dr. Beam. | ¶ 2d; p. 426 |

| Date | Medical Record Type | Assessment and Treatment for Hepatitis C Until Initiation of Interferon/Ribavirin Treatment | Bussanich Decl., ¶; Medical Record, p. |
|---|---|---|---|
| 9/28/03 | Inmate Requests to Staff | In separate requests to Dr. Olson and HSA Smith, plaintiff asked for Interferon/Ribavirin treatment and regular blood monitoring.  Dr. Olson and HSA Smith responded that plaintiff would be seen on 10/26/03 to discuss these issues. | ¶¶ 2f-2g; p. 423-24 |
| 10/3/03 | Informal Resolution Form | Plaintiff initiated the administrative remedy process by submitting an informal resolution form requesting treatment for Hepatitis C, a liver biopsy and a vaccination for Hepatitis A.  In a response on 10/3/03, the Correctional Counselor stated that he contacted Dr. Beam, and assured plaintiff that he would receive treatment if needed. | ¶ 2i; p. 412-13 |
| 10/3/03 | Inmate Request to Staff | Plaintiff asked Dr. Beam for vaccination for Hepatitis A.  In a response dated 10/8/03, Dr. Beam advised that he would see plaintiff to discuss Hepatitis C treatment. | ¶ 2k; p. 422 |
| 10/9/03 | Chron. Record of Medical Care | Administrative notation indicates that a Physician's Assistant ("PA") discussed plaintiff's request for Hepatitis A vaccination with him.  They also discussed the positive Hepatitis C test, and the PA told plaintiff that he would consult Dr. Beam. | ¶ 2k; p. 102 |
| 10/10/03 | Lab. Results | Blood collected for a Hepatic Function Panel.  **Results received 10/21/03 indicate that plaintiff's serum alanine aminotransferase ("ALT") level was 116 - elevated** (reference range 0-40).[1] | ¶ 2m; p. 430 |
| 10/15/03 | Inmate Requests to Staff | Plaintiff submitted five (5) written requests to Dr. Beam, asking for a genotype test, Hepatitis A vaccine, a viral load test, a liver biopsy and a psychological interview (to begin treatment for Hepatitis C).  Dr. Beam met with plaintiff on 10/26/03 and responded to each the next day.  Plaintiff also submitted a request to the Medical Records Technician, asking for a complete copy of his medical records.  Plaintiff was provided with the requested documents on 10/21/03. | ¶¶ 2n-2s, 2u; pp. 98, 416-21 |
| 10/16/03 | Chron. Record of Medical Care | Plaintiff seen by Dr. Beam in the chronic care clinic.  **Plaintiff stated that he probably had Hepatitis C since he was 20 years old (42 years old at this time).**  He handed Dr. Beam the five written requests referenced above,  and stated that he was in contact with an attorney.  Dr. Beam ordered Hepatitis C blood tests and Hepatitis A and B serotology tests, and issued a psychology referral. Plaintiff was advised to return in 3 months. | ¶ 2t; pp. 100-01 |

---

[1]ALT is a liver enzyme that is tested to determine if a patient has liver damage.  (*See, e.g.,* National Institutes of Health ("NIH") Consensus Conference Statement, *Management of Hepatitis C: 2002* at 9 (attached as Exhibit 1e to Decl. of Joyce Horikawa.))

| Date | Medical Record Type | Assessment and Treatment for Hepatitis C Until Initiation of Interferon/Ribavirin Treatment | Bussanich Decl., ¶; Medical Record, p. |
|---|---|---|---|
| 10/27/03 | Request for Admin. Remedy | Plaintiff reiterated his request for a liver biopsy and Hepatitis C treatment to the Warden. In a response dated 11/14/03, Warden LaManna advised that plaintiff would be treated in accordance with BOP policy, and that there was no evidence of deliberate indifference or improper medical care. | ¶ 2v; pp. 410-11 |
| 11/17/03 | Lab. Results | Hepatitis C battery, and Hepatitis A and B serotology tests were conducted. Results received 11/26/03 indicate that plaintiff tested positive for the Hepatitis B surface antibody and the Hepatitis B core antibody. | ¶ 2y; p. 254 |
| 11/18/03 | Inmate Request to Staff | Plaintiff asked Dr. Beam for a liver biopsy and viral load test. In a response that same day, Dr. Beam assured plaintiff that if he needed treatment, he would receive it. | ¶ 2z; p. 409 |
| 12/10/03 | Inmate Requests to Staff | Plaintiff submitted separate requests to Dr. Beam asking for a liver biopsy, and to be vaccinated for Hepatitis A. That same day, Dr. Beam responded to each in writing. Dr. Beam stated that he would present plaintiff's request for Hepatitis A vaccination to the Utilization Review Committee ("URC"). Dr. Beam also advised that BOP guidelines suggested monitoring ALT, and that a liver biopsy would be appropriate where the ALT levels remained elevated. Advised plaintiff that he was in the monitoring stage. | ¶ 2ee; pp. 407-08 |
| 12/22/03 | Chron. Record of Medical Care | Administrative notation by Dr. Beam indicates that a Hepatitis A vaccine would be ordered for plaintiff. | ¶ 2gg; p. 94 |
| 1/5/04 | Inmate Request to Staff | Plaintiff asked Dr. Beam for information as to when he will receive a Hepatitis A vaccine. In a response the next day, Dr. Beam stated that plaintiff would receive the vaccine as soon as it arrived through the pharmacy. | ¶ 2hh; p. 405 |
| 1/23/04 | Chron. Record of Medical Care | Plaintiff seen by Dr. Beam in the chronic care clinic. Plaintiff was examined and given a Hepatitis A vaccine. A liver function test was also ordered. | ¶ 2kk; pp. 92-93 |
| 2/11/04 | Inmate Request to Staff | Plaintiff asked Dr. Beam for a viral load and liver biopsy. In a response on 2/13/04, Dr. Beam advised that if plaintiff's ALT remained high over a period of time, the next step would be a viral load and liver biopsy. | ¶ 2ll; p. 403 |
| 2/12/04 | Lab. Results | Blood sample collected for a liver profile test. **Results received 2/18/04 indicate that plaintiff's ALT level was 115 - elevated** (reference range 11-66). | ¶ 2mm; p. 431 |
| **4/21/04** | Chron. Record of Medical Care | **Plaintiff failed to report for chronic care clinic appointment, but would be rescheduled in one month.** Ordered a liver function test, a lipid test, an HGA1c, and red blood cell test. | ¶ 2pp; p. 88-89 |

-6-

| Date | Medical Record Type | Assessment and Treatment for Hepatitis C Until Initiation of Interferon/Ribavirin Treatment | Bussanich Decl., ¶; Medical Record, p. |
|---|---|---|---|
| 5/12/04 | Lab. Results | Blood sample was collected for a lipid test and liver profile. **Results received 5/17/05 indicate that plaintiff's ALT level was 129 - elevated** (reference range 11-66). | ¶ 2qq; p. 432 |
| 5/21/04 | Chron. Record of Medical Care | Plaintiff seen by Dr. Beam in the chronic care clinic. Dr. Beam ordered a Hepatitis C battery and psychological evaluation, and **forwarded a liver biopsy referral to the URC**. | ¶ 2rr; pp. 86-87 |
| 7/15/04 | Chron. Record of Medical Care | Administrative notation by Dr. Beam indicates that the URC approved plaintiff for a liver biopsy. | ¶ 2ss; p. 85 |
| 7/19/04 | Lab. Results | Blood sample was collected for complete metabolic test, viral load test, HCV genotyping test and ferritin test. Indicated that plaintiff's ALT was 130 - elevated (reference range 11-66), he had a level of 7,270,00 UI/mL of HC, his HCV was of genotype 3e, and his ferritin was 180. | ¶¶ 2tt-ww; pp. 234-35, 253-54 |
| 8/18/04 | Chron. Record of Medical Care | Plaintiff seen by Dr. Beam in the chronic care clinic. Dr. Beam ordered an HGAlc test. | ¶ 2aaa; pp. 82-83 |
| **8/24/04** | Bradford Regional Medical Center Records | **A CT guided liver biopsy was performed on plaintiff at the Bradford Regional Medical Center**. Before examination, a CT of the entire abdomen showed that plaintiff's liver was in the upper limits of normal for size. **After the bioposies were obtained, his liver was found to have the consistency of wood.** The microstudy diagnosis was cirrhosis of the liver, micro-nodular pattern, active. **Dr. Beam reviewed the biopsy results on 9/7/03.** | ¶¶ 2bbb-2ccc; pp. 191, 196 |
| **9/8/04** | Chron. Record of Medical Care | Dr. Beam had a long discussion with plaintiff regarding the biopsy results. Discussed the risks, psychological effects and bone marrow suppression associated with Interferon treatment. Plaintiff wanted the treatment, and Dr. Beam opined that Interferon was a good idea. **Dr. Beam indicated that he would send the Interferon treatment referral forms to Central Office after he received the Psychological clearance.** | ¶ 2ggg; p. 78 |
| 9/22/04 | Psychology Evaluation | Plaintiff cleared by the Chief Psychologist to receive Interferon and Ribavirin treatment. | ¶ 2hhh; p. 252 |
| 9/24/04 | Chron. Record of Medical Care | After a discussion and examination, Dr. Beam assessed plaintiff with hepatitis C with cirrhosis. He educated plaintiff regarding the treatment plan. Dr. Beam noted that he would follow-up regarding his request to initiate Interferon treatment if he had not heard back in one month | ¶ 2iii; p. 76 |

| Date | Medical Record Type | Assessment and Treatment for Hepatitis C Until Initiation of Interferon/Ribavirin Treatment | Bussanich Decl., ¶; Medical Record, p. |
|---|---|---|---|
| 10/7/04 | Chron. Record of Medical Care | Administrative notation by Dr. Beam indicates that he was approved to initiate Interferon and Ribavirin treatment. Anticipated beginning during the week of 10/25/04. Planned weekly visits for 6 weeks, followed by monthly monitoring. | ¶ 2kkk; p. 79 |
| 10/7/04 | Inmate Request to Staff | Plaintiff asked Dr. Beam when his Hepatitis C treatments would begin. Dr. Beam responded the next day that plaintiff had been approved and that he had been notified in writing. | ¶ 2lll; pp. 396-97 |
| 10/20/04 | Chron. Record of Medical Care | Plaintiff reported to Dr. Beam to discuss the Interferon/Ribavirin treatment. Plaintiff accepted the risks and signed the consent form. | ¶ 2mmm; p. 74 |
| **10/28/04** | Chron. Record of Medical Care | **Plaintiff received his 1st dosage of Interferon/Ribavirin.** Seen later in the day by Dr. Beam. Educated regarding the injection procedure and self-administered the dose. | ¶¶ 2nnn-2ooo; p. 75 |

## APPLICABLE LEGAL STANDARDS

## I.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists. *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines,* 673 F.2d 700, 711 n.16 (3d Cir. 1982); *Shepherdson v. Local Union No. 401,* 823 F. Supp. 1245, 1248 (E.D. Pa. 1993). When considering a challenge to a court's jurisdiction under Fed. R. Civ. P. 12(b)(1), a court ordinarily need not limit its inquiry to the facts as pled in the complaint. *Land v. Dollar,* 330 U.S. 731, 735 (1947). Rather, "[t]he court may inquire by affidavits or otherwise, into the facts as they exist." *Id.* at 735 n.4. Such inquiry is permissible because a federal court must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so. *See Boyle v. The Governor's Veterans Outreach & Assistance Ctr.,* 925 F.2d 71, 74 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

## II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss under Rule 12(b)(6) is the appropriate method by which to challenge the legal sufficiency of claims in a complaint.  *See* Fed. R. Civ. P. 12(b)(6); *Raines v. Haverford College*, 849 F. Supp. 1009, 1010 (E.D. Pa. 1994).  Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any attached exhibits, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record.  *Raines*, 849 F. Supp. at 1019; *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Indeed, if a court could not consider such documents, "'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'"  *Interfaith Community Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339, 1345 (D.N.J. 1996) (quoting *Dykes v. Southeastern Pa. Trans. Auth.*, 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)).

While courts considering motions to dismiss have a limited role, these courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint.  *AlliedSignal*, 928 F. Supp. at 1346.  The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff has any chance of doing so.  *Id.; Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III.    MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  That is, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The plaintiff cannot merely rest on allegations in his complaint. *Id.* at 324. To defeat a motion

for summary judgment, "the nonmoving party must adduce more than a mere scintilla of

evidence in his favor." *Williams v. Borough of Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

## IV.    INSUFFICIENCY OF SERVICE

Service of process is governed by Fed. R. Civ. P. 4. The plaintiff bears the burden of

establishing that the defendant was properly served. *See Grand Entertainment Group v. Star*

*Media Sales,* 988 F.2d 476, 488 (3d Cir. 1993).

## ARGUMENT

## I.    PLAINTIFF'S *BIVENS* CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY FOR SEVERAL REASONS

Plaintiff's *Bivens* claims fail for multiple reasons. To begin with, plaintiff's claims should

be dismissed to the extent that they relate to his gallbladder problems and a growth on the side of

his stomach, because he failed to exhaust his administrative remedies with respect to these

issues. Additionally, the Individual Defendants that did not directly treat plaintiff (Sherman,

LaManna and Smith) should be dismissed because they merely deferred to the medical

professionals already treating plaintiff. And all of the Individual Defendants should be dismissed

because plaintiff cannot demonstrate that they acted with deliberate indifference as to his HCV.

And even if plaintiff could show a constitutional violation, the Individual Defendants are entitled

to qualified immunity. Finally, all of the Individual Defendants except for defendant Sherman

should be dismissed based on inadequate service of process.

**A.    Plaintiff Failed To Exhaust His Administrative Remedies As to His Claims Alleging Deliberatively Indifferent Medical Care For His Gallbladder Problems And A Growth On The Side Of His Stomach**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  This administrative exhaustion requirement is mandatory and applies to all inmate suits regarding prison life.  *See Porter v. Nussle*, 534 U.S. 516, 521-25 (2002) (PLRA mandates completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief); *Booth v. Churner*, 532 U.S. 731, 736 (2001) (exhaustion requirement applies to all inmate suits about prison life); *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000) (PLRA makes exhaustion mandatory in all cases).  Because plaintiff in this case challenges his medical treatment in prison, he must demonstrate that he has exhausted all of his available administrative remedies.

The BOP, in turn, has adopted regulations that establish the specific steps that an inmate must follow to exhaust his or her administrative remedies as mandated by the PLRA.  *See* 28 C.F.R. § 542.10 *et seq.*  First, "an inmate shall . . . attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  If informal resolution does not work, the second step is to file a formal written Administrative Remedy Request with the Warden within twenty (20) days of the date on which the basis of the complaint occurred.  *See* 28 C.F.R. §§ 542.14(a).  If the inmate is not satisfied with the Warden's response, the third step is to submit an appeal to the Regional Director within twenty (20) days of the Warden's response.  *See* 28 C.F.R. §§ 542.15(a).  If the Regional Director denies the appeal, the

fourth step is for the inmate to file an appeal with the General Counsel of the BOP within thirty (30) days from the date of the Regional Director's response. *See id.* The administrative remedy process is not "exhausted" until this fourth step is completed and the inmate's appeal is denied by the BOP's General Counsel.

In this case, plaintiff has not exhausted his administrative remedies with respect to his claims alleging deliberatively indifferent treatment for his gallbladder problems and a growth on the side of his stomach.[2]  Indeed, plaintiff never filed a single administrative remedy request or appeal in connection with the medical treatment for these conditions.  (Decl. of  Joyce Horikawa, ¶ 9 (attached as Exhibit 1.))  Moreover, as explained below, plaintiff has procedurally defaulted on these *Bivens* claims because he has conceded that his gallbladder and growth on the side of his stomach were removed outside of the time frame that the regulations permit for exhaustion of administrative remedies.  (*See* Am. Compl., ¶¶ 29-32 (gallbladder removed in about April 2005) and ¶ 35 (growth on left side of his stomach removed in February 2006)).

The United States Supreme Court recently held that only proper exhaustion satisfied the PLRA exhaustion requirement. *See Woodford v. NGO*, ___ U.S. ___, No. 05-416, 2006 WL 1698937, at *7 (June 22, 2006).  "Proper exhaustion" means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *See id.* at *4; *see Spruill v. Gillis*, 372 F.3d 218, 228 (3d Cir. 2004) (holding that the PLRA requires proper exhaustion, and alternatively describing this requirement as a "procedural default component.").  The Third

_____

[2]Defendants do not dispute that plaintiff exhausted his administrative remedies with respect to the diagnostic testing and medical treatment connected to his Hepatitis C.  (Decl. of Joyce Horikawa, Ex. 1, ¶ 9.))  Nonetheless, such claims fail for the reasons explained below.

Circuit has explained that "prison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231. In this case, the BOP regulations are the "yardstick" for measuring proper exhaustion and, as discussed, direct inmates to file administrative remedy requests within twenty (20) days of the event or incident giving rise to the inmate's issue. *See* 28 C.F.R. § 542.14(a). Because plaintiff alleges that his gallbladder was removed in April 2005 and the growth on the side of his stomach was removed in February 2006, plaintiff is now well beyond the twenty (20) day time limit set forth in the regulations. As such, plaintiff has procedurally defaulted on his claims connected to his gallbladder problems and removal of a growth on the side of his stomach, and he may not raise these issues in this lawsuit under a *Bivens* theory of liability.

### B. Plaintiff Cannot Demonstrate That The Individual Defendants Acted With "Deliberate Indifference" To His Hepatitis C

Incarcerated prisoners are entitled to reasonable medical care under the Eight Amendment to the United States Constitution. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). To prove a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference to [his] serious medical needs." *Id.* at 104; *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978). Thus, the requirement for such a claim is two-fold – the plaintiff must establish (1) a serious medical need; and (2) culpable state of mind on the part of the defendants, amounting to deliberate indifference. *Monmouth County Correction Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987).

In this case, defendants do not dispute that Hepatitis C is a serious medical need. However, defendants vigorously dispute that they acted with deliberate indifference to plaintiff's

HCV.  Deliberate indifference may be displayed in a myriad of ways, such as where a prison

official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide

it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a

prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier,* 182 F.3d

192, 197 (3d Cir. 1999) (quoting *Monmouth,* 834 F.2d at 346-47).

It is well-established that medical malpractice is insufficient to present a constitutional

violation.  *See Estelle,* 429 U.S. at 106;  *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1999);

*Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (negligent medical

treatment is not actionable under the Eighth Amendment); *Unterberg v. Correctional Medical

Systems, Inc.,* 799 F. Supp. 490, 497 (E.D. Pa. 1992) (medical malpractice is not deliberate

indifference).  As the Supreme Court has stated, "[m]edical malpractice does not become a

constitutional violation merely because the victim is a prisoner."  *Estelle,* 429 U.S. at 106.

Related to the principle that malpractice does not violate the Eighth Amendment is the

fact that a mere disagreement among medical personnel cannot support a constitutional claim.

*See Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir. 1987).  Instead, the standard applied when

reviewing the actions of prison doctors and medical staff in this type of case is deferential.

*Inmates of Allegheny County Jail,* 612 F.2d at 762.   "[P]rison authorities are accorded

considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67, and

"mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment

violation.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Furthermore, a court will generally not find deliberate indifference when some level of

medical care has been offered to the inmate.  *Clark v. Doe,* No. Civ. A. 99-5616, 2000 WL

1522855, at *2 (E.D. PA. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth

Amendment claims where an inmate has received some level of medical care.").  Indeed, a court

may look to the quantity of services and types of treatments offered to the inmate in making this

determination.  *Englerth v. Hetrick,* Civ. A. No. 87-5855, 1998 WL 11660, at *1 (E.D. PA. Feb.

16, 1988) (finding the plaintiff received "substantial medical treatment while incarcerated" where

he had been seen thirty-five (35) times by the prison physician, forty-eight (48) times by the

nursing staff; three (3) times by the psychiatrist and forty-five (45) times by the psychologist).

      In short, where a prisoner is provided with reasonable medical treatment, even if it is not

the treatment that he desires, a prisoner cannot prove "deliberate indifference."

      **1.**     ***Defendants Sherman, LaManna And Smith Should Be Dismissed Because Plaintiff Never Alleges That They Personally Participated In His Medical Care***

      The Amended Complaint is silent as to any specific acts or omissions taken by defendants

LaManna and Smith; accordingly, their liability is apparently based on respondeat superior.  It is

well-settled, however, that this theory may not form the basis for liability under *Bivens*.  *Balter v.*

*United States,* 172 Fed. Appx. 401, 403 (3d Cir. 2006); *Francis v. Dodrill,* No. 3:04CV1694,

2005 WL 2216582, at *2, n.3 (M.D. Pa. Sept. 12, 2005); *see Rode v. Dellarciprete,* 845 F.2d

1195, 1208 (3d Cir. 1988) (finding in § 1983 action that "[a] defendant in a civil rights action

must have personal involvement in the alleged wrongs; liability cannot be predicated solely on

the operation of respondeat superior.").

      At most, plaintiff may seek to hold defendant LaManna liable for his denial of plaintiff's

administrative remedy requests.  With respect to defendant Sherman, the Amended Complaint

alleges only that, during the time he served as acting Warden, plaintiff "asked for his help and

intervention in resolving this issue, but was denied by him." (Am. Compl., ¶ 36.) The law in the Third Circuit is abundantly clear, however, that prison officials who are not physicians cannot be considered deliberately indifferent to a prisoner's serious medical needs because they failed to respond directly to medical complaints of prisoners who were being treated by the prison doctor. *See Durmer*, 991 F.2d at 69; *Boyd v. Pugh,* No. Civ. 3:CV-04-1761, 2004 WL 1430087, at *6 (M.D. Pa. June 17, 2005) (warden cannot be considered deliberately indifferent for failing to respond to inmate's medical complaints where prisoner is under care of medical experts); *Thomas v. Zinkel,* 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) (health care administrators cannot be found deliberately indifferent when inmate receiving care from a doctor); *Hull v. Dotter,* No. CIV. A. 96-3087, 1997 WL 327551, at *4 (E.D. Pa. June 12, 1997) (same).

Here, there are no allegations that defendants Sherman, LaManna and Smith provided any medical treatment to plaintiff. Nor is there any such evidence in the record. The only evidence of defendant LaManna's involvement is that he denied plaintiff's administrative remedy request. (*See* Administrative Remedy, Case No. 314442 at 2 (attached as Exhibit 1b to Decl. of Joyce Horikawa.)) Further, defendants Sherman, LaManna and Smith hold administrative – not clinical – positions. The record evidence establishes that plaintiff was receiving medical care from the clinical medical staff at FCI McKean beginning with his incarceration there until his transfer to USP Lewisburg, where his medical care has continued to the present by medical staff at that institution. As such, under binding Third Circuit precedent, defendants Sherman, LaManna and Smith cannot be found deliberately indifferent for deferring to the medical professionals already treating plaintiff. Plaintiff's *Bivens* claims against these defendants should be dismissed.

-16-

#### 2.    *All Individual Defendants Should Be Dismissed Because Plaintiff Cannot Prove They Failed To Provide Reasonable Medical Treatment*

Plaintiff appears to allege that his rights under the Eighth Amendment were violated because of an alleged denial and/or delay in receiving a liver biopsy and Interferon/Ribavirin treatment after he tested positive for Hepatitis C.  Thus, plaintiff is challenging the determination of his treating physicians, defendants Olson and Beam, as to whether and when to use a particular diagnostic procedure or initiate a particular medical treatment.  As such, this is merely a disagreement over medical judgment that, as explained, does not rise to the level of deliberate indifference.  *See White,* 987 F.2d at 110.

A review of plaintiff's prison medical records, summarized in Dr. Bussanich's declaration and earlier in this Brief, demonstrates that after medical staff at FCI McKean were notified of plaintiff's Hepatitis C diagnosis on September 16, 2003 (*see* Decl. of Dennis A. Bussanich, M.D., Ex. 2, ¶¶ 2b through 2c), he was closely monitored and given a liver biopsy and Interferon/Ribavirin treatment in accordance the Federal Bureau of Prisons Clinical Practice Guidelines For the Prevention and Treatment of Viral Hepatitis (February 2003) ("BOP Guidelines") (attached as Exhibit 1d to Decl. of Joyce Horikawa.).[3]

Within days of his Hepatitis C diagnosis, plaintiff began clamoring for a liver biopsy and Interferon/Ribavirin treatment (*see, e.g.,* Decl. of A. Bussanich, M.D., Ex. 2, ¶¶ 2f, 2i), even though he admitted that he has probably had Hepatitis C for more than twenty (20) years before he was designated at FCI McKean (*see id.*, ¶ 2t).  In response, defendant Beam and a PA at FCI McKean met with plaintiff to discuss his positive Hepatitis C test, and collected a blood sample

---

[3]The BOP Guidelines are based on the NIH Consensus Development Conference Statement, *Management of Hepatitis C: 2002*, Ex. 1e.  (*See* BOP Guidelines, Ex. 1d,  at 2.)

to check his ALT levels.  (*See id.*, ¶¶ 2k, 2m.)  The BOP Guidelines support monitoring ALT

levels before proceeding to a liver biopsy or Interferon/Ribavirin treatment.  Under the heading

"[i]dentifying candidates for liver biopsy," the BOP Guidelines state that "[i]nmates with chronic

HCV infection should be periodically evaluated and have ALT levels monitored to help

determine if liver biopsy is warranted in accordance with the following . . . ."  (BOP Guidelines,

Ex. 1d, at 42.)  The guidelines go on to explain that, "[i]nmates with ALT levels two times the

upper limit of normal or greater should have ALT measurements repeated at least twice over a 6

month period.  Inmates with persistent elevations in ALT levels > twice normal should be

referred directly for liver biopsy unless antiviral therapy is contraindicated."  (*Id.* at 42.)[4]

On October 21, 2003, medical staff at FCI McKean received the results from plaintiff's

Hepatitic Function Panel, which indicated that his ALT level was more than twice the upper limit

of normal.  (*See* Decl. of A. Bussanich, M.D., Ex. 2, ¶ 2m.)  In accordance with the BOP

Guidelines, plaintiff's ALT levels were again tested on February 12, 2004 and found to be above

normal, but less than twice the upper limit of normal (115 compared to an upper limit of 66).

(*See id.,* ¶ 2mm.)  Although plaintiff was scheduled to have his ALT levels checked for the third

time in a six (6) month period on April 21, 2004, he failed to report for his chronic care clinic

appointment.  (*See id.,* ¶ 2pp.)  On May 17, 2004, FCI McKean staff received plaintiff's blood

test results indicating that plaintiff's ALT level was more than twice the upper limit of normal

(129 compared to upper limit 66).  (*See id.,* ¶ 2qq.)  Because plaintiff's first ALT level was

---

[4]This Court discussed the BOP Guidelines in a similar case, *Cherry v. United States*, No.
04-292E, slip op. at 13-16 (W.D. Pa. February 22, 2006) (Baxter, M.J.) (attached as Exhibit 3).
Note that the plaintiff voluntarily dismissed that case before the district court issued a decision.

confirmed by two (2) more elevated ALT measurements, defendant Beam appropriately

forwarded a liver biopsy referral to the URC within three (3) days.  (*See id.,* ¶ 2rr.)

About a month after the URC approved plaintiff for his liver biopsy, a CT guided liver

biopsy was performed on August 24, 2004.  (*See id.,* ¶ 2bbb through 2ccc.)  His liver was found

to have the consistency of wood, and he was diagnosed with cirrhosis of the liver, micro-nodular

pattern, active.  (*See id.,* ¶ 2ccc.)  The day after defendant Beam reviewed the biopsy report, he

had a long discussion with plaintiff regarding the results, the risks, the psychological effects and

the bone marrow suppression associated with Interferon treatment.  (*See id.,* ¶¶ 2fff through

2ggg.)  After plaintiff decided to have the treatment, defendant Beam referred plaintiff for the

requisite psychological clearance.  (*See id.,* ¶ 2ggg.)  Plaintiff received psychological clearance

within two (2) weeks of that discussion, and his  Interferon/Ribavirin treatment was approved on

October 7, 2004.  (*See id.,* ¶¶ 2hhh, 2kkk.)  Plaintiff received his first dosage of

Interferon/Ribavirin on October 28, 2004.  (*See id.,* ¶ 2nnn)  In summary, it took less than two (2)

months between defendant Beam's review of the liver biopsy results on September 7, 2004, and

the initiation of Interferon/Ribavirin treatment.

As discussed, plaintiff was appropriately referred for a liver biopsy after his elevated ALT

level was confirmed twice in about a six (6) month period.  Likewise, plaintiff was referred for

Interferon/Ribavirin treatment after the results of the liver biopsy were reviewed, and plaintiff

received psychological clearance.  Indeed, the BOP Guidelines provide that "[a]ntiviral therapy

[Interferon/Ribavirin treatment] is recommended for patients with chronic hepatitis C and a liver

biopsy with portal or bridging fibrosis and at least moderate inflammation and necrosis."  (BOP

Guidelines, Ex. 1d, at 44.)  In a similar case, this Court confirmed that this language makes clear

that "a liver biopsy and evidence of moderate inflammation and necrosis are prerequisites to antiviral therapy." *Cherry*, No. 04-292E, slip op. at 16 (Ex. 3). Accordingly, medical staff at FCI McKean adhered to BOP Guidelines in ordering plaintiff's liver biopsy within eight (8) months of his diagnosis, and initiating Interferon/Ribavirin treatment less than two (2) months after reviewing the biopsy results. Moreover, plaintiff was regularly examined by medical staff at FCI McKean after his Hepatitis C diagnosis (*see, e.g.,* Decl. of A. Bussanich, M.D., Ex. 2, ¶¶ 2t), he was given an Hepatitis A vaccine (*see, e.g., id.,* ¶ 2kk) and he was continuously monitored by blood tests, including a complete metabolic test, viral load test, HCV genotyping test and ferratin test (*see, e.g., id.,* ¶¶ 2tt through 2ww).[5]

Accordingly, plaintiff's medical record establishes that his Hepatitis C has been treated based on sound clinical expertise and consistent with the BOP Guidelines and the NIH Consensus Development Conference Statement, *Management of Hepatitis C: 2002,* Ex. 1e. Although plaintiff may disagree with the treatment he has been receiving, this does not amount to deliberate indifference. *See Cherry*, 04-292E, slip op. at 16-17 (Ex. 3) (finding that denial of liver biopsy and antiviral treatment did not violate the Eighth Amendment) (citing similar cases). Because plaintiff cannot demonstrate that the Individual Defendants acted with deliberate indifference, plaintiff's *Bivens* claims against them should be dismissed.

---

[5]After the Interferon/Ribaviron treatment began, plaintiff was seen weekly at the chronic care clinic for his Interferon injections, follow-up examinations and blood monitoring, until his hospitalization for gallbladder problems. (*See id.,* ¶¶ 2nnn through 2hhhhhh.)

### C.    Even If Plaintiff Has Stated A Cognizable Constitutional Claim, The Individual Defendants Are Entitled To Qualified Immunity

A federal government employee is generally entitled to immunity from suit for personal damages if his or her conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The qualified immunity defense in this context is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Accordingly, the Supreme Court has repeatedly stressed that qualified immunity issues should be resolved at the earliest stage of litigation.  *See e.g., Hunter v. Bryant,* 502 U.S. 224, 226  (1991).

In this case, it is well-established that the government has a constitutional obligation to provide inmates with adequate medical care.  However, it was objectively reasonable for the Individual Defendants to believe that their treatment of plaintiff's Hepatitic C did not violate such a right.  As previously discussed, plaintiff was provided with medical attention since his diagnosis with Hepatitis C, and it was objectively reasonable for defendants to believe that they were adequately tending to plaintiff's medical needs.  The fact that plaintiff disagrees with the decision of whether and when to order a liver biopsy and initiate Interferon/Ribavirin treatment does not amount to the violation of a clearly established constitutional right.  Therefore, Individual Defendants Sherman, LaManna, Smith, Beam and Olson should be dismissed from this action on the basis of qualified immunity.

**D.**    **With The Exception of Defendant Sherman, The Individual Defendants Should Be Dismissed Based On Improper Service Of Process**

Service on an officer or employee of the United States sued in an individual capacity is governed by Rule 4(i)(2)(B) of the Federal Rules of Civil Procedure.  This provision states that service "is effected by serving the United States in the manner prescribed by Rule 4(i)(1) ***and*** by serving the officer or employee in the manner prescribed by Rule 4(e), (f) or (g)."  (Emphasis added).  Because Rule 4(f) (service upon individuals in a foreign country) and (g) (service upon infants and incompetent persons) are not applicable here, plaintiff was required to serve the Individual Defendants under Rule 4(e).  That provision requires that, unless a waiver has been obtained and filed, plaintiff must serve the individual defendant either (1) as provided by Pennsylvania law, which requires personal service, or (2) by personal service upon defendant or by leaving a copy of the summons and complaint "with some person of suitable age and discretion then residing [at defendant's dwelling]" or by delivering a copy of the summons and complaint to "an agent authorized by appointment or by law to receive service of process."  In either case, plaintiff was required to effectuate personal service, unless a valid waiver is obtained.

The docket sheet in this case indicates that none of the Individual Defendants were served in this case, except for defendant Sherman.  (*See* docket, and at no. 12.))  Accordingly, this Court should dismiss plaintiff's claims against defendants LaManna, Beam, Olson and Smith for insufficient service and the resulting lack of personal jurisdiction.  *See Omni Capital Int'l v. Rudolph Wolff & Co.,* 484 U.S. 97, 104 (1987) (stating that, "before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Doyle v. United States Dep't of Justice,* No. 95-CV-0051, 1995 WL 412406, at *4

(E.D. Pa. July 7, 1995) (stating that "despite the perceived harshness of such a rule, it is clear that ineffective service requires the dismissal of individual defendants in their individual capacities since there is no personal jurisdiction over them").

## II. PLAINTIFF'S FTCA CLAIMS SHOULD BE DISMISSED TO THE EXTENT THAT THEY RELATE TO HIS GALLBLADDER PROBLEMS AND A GROWTH ON THE SIDE OF HIS STOMACH

Plaintiff's FTCA claim should be dismissed as to all Individual Defendants, because they are not proper parties to such a claim. Additionally, the FTCA claim should be dismissed to the extent that it alleges that plaintiff received negligent medical treatment for his gallbladder problems and a growth on the side of his stomach, because plaintiff failed to exhaust his administrative remedies in connection with these issues.

### A. The Individual Defendants Are Not Proper Parties To The FTCA Claim

As sovereign, the United States is immune from suit except as it consents to be sued, and the terms of its consent, as set forth by Congress, define the limits of the federal courts' subject matter jurisdiction to decide suits brought against the United States. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see also United States v. Mitchell,* 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA creates a limited waiver of sovereign immunity for claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *see generally, United States v. Orleans*, 425 U.S. 807, 813 (1976) (limited waiver).

-23-

Because the FTCA's waiver of sovereign immunity extends only to the United States – and not its employees or specific federal agencies – the United States is the only proper defendant in an action brought under the FTCA. *See, e.g., Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam) (affirming dismissal of Postal Service in FTCA action because the United States is the only proper defendant in such an action); *Allgeier v. United States,* 909 F.2d 869, 871 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee."); *Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985) ("The United States is the only proper party in an action pursuant to the [FTCA], and the FTCA does not grant federal courts jurisdiction over actions against individual defendants such as employees.") (internal citations omitted); *McNiff v. Asset Management Specialists, Inc.,* 337 F. Supp. 2d 685, 691 (E.D. Pa. 2004) ("It is well-settled that the United States of America is the only proper party in a suit pursuant to the Federal Tort Claims Act."). Accordingly, this Court should dismiss plaintiff's FTCA claims against defendants Sherman, LaManna, Beam, Olson and Smith.

**B.**    **Plaintiff Failed To Exhaust His Administrative Remedies Under The FTCA Regarding His Claims Alleging Negligent Treatment For His Gallbladder Problems And A Growth On The Side Of His Stomach**

The FTCA specifically requires that a claimant present an administrative tort to the appropriate administrative agency, and that the tort claim must be finally denied by the agency before a civil action may be initiated:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant ***shall have first presented the claim to the appropriate Federal agency and his claims***

*shall have been finally denied by the agency in writing and sent by certified or registered mail.*

28 U.S.C. § 2675(a) (emphasis added).  This is "the balance struck by Congress in the context of tort claims against the Government" and courts "are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims."  *United States v. Kubrick,* 444 U.S. 111, 117 (1979).

The administrative exhaustion requirement is clear and mandatory.  *See McNeil v. United States,* 508 U.S. 106, 111 (1993) (explaining that statutory exhaustion requirement "is unambiguous.  We are not free to rewrite the statutory text."); *Wujick v. Dale & Dale, Inc.,* 43 F.3d 790, 793-94 (3d Cir. 1994) (noting that administrative exhaustion under FTCA is mandatory and the Supreme Court "firmly rejected the 'no harm, no foul' reasoning"); *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir. 1971) (requiring a claim be submitted to and finally denied by the appropriate federal agency before filing a lawsuit).  Because the FTCA represents a conditional limited waiver of sovereign immunity, the requirement of administrative exhaustion is jurisdictional and cannot be waived.  *See, e.g., Livera v. First National State Bank of New Jersey,* 879 F.2d 1186, 95 (3d Cir. 1989); *Bialowas,* 443 F.2d 1047, 1049.

Plaintiff here never filed an administrative tort claim with the BOP regional office alleging negligent medical treatment related to his gallbladder problems or removal of a growth on the side of his stomach.  (Decl. of  Joyce Horikawa, Ex. 1, ¶ 5.))[6]  Because plaintiff did not exhaust his available administrative remedies under the FTCA with respect to these issues, the

---

[6]Defendants do not dispute that plaintiff filed a timely administrative tort claim with the BOP regional counsel alleging negligent treatment of his Hepatitis C.  (*Id.*)  In their Answer and Affirmative Defenses, which is being filed simultaneously with this Brief, defendants deny plaintiff's allegations of medical malpractice.

Court lacks subject matter jurisdiction and should dismiss plaintiff's claims related to his

gallbladder problems and a growth on the side of his stomach.

## **CONCLUSION**

For all the foregoing reasons, this Court should dismiss plaintiff's *Bivens* claims in their

entirety, and dismiss his FTCA claims to the extent that they relate to his gallbladder problems

and a growth on the side of his stomach.  Accordingly, the Court should grant defendants' partial

motion to dismiss or partial motion for summary judgment.  Plaintiff's only remaining claim in

this lawsuit should be his FTCA claim against the United States alleging negligent medical

treatment for his Hepatitis C.

                            Respectfully submitted,

                            MARY BETH BUCHANAN
                            United States Attorney

                            s/ Megan E. Farrell
                            MEGAN E. FARRELL
                            Assistant U.S. Attorney
                            Western District of PA
                            700 Grant St., Suite 4000
                            Pittsburgh, PA 15219
                            (412) 894-7429
                            PA ID # 76972

                            Counsel for defendants

Of Counsel:
Joyce Horikawa
Senior Attorney Advisor
Federal Bureau of Prisons
U.S. Custom House – 7th Floor
Second and Chestnut Streets
Philadelphia, PA 19104

Dated: September 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2005, a true and correct copy of

the foregoing Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary

Judgment, and Brief In Support Thereof was served via first-class mail upon the following:

> Donald L. Moshier, Jr.
> No. 10924-052
> USP Lewisburg
> P.O. Box 1000
> Lewisburg, PA 17837


> s/ Megan E. Farrell
> MEGAN E. FARRELL
> Assistant U.S. Attorney