# Exhibit 1c

Case 1:05-cv-00180-SJM-SPB   Document 25-5   Filed 09/21/2006   Page 1 of 10

SF 95 (face)  Copy #2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: Northeast Region, Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut St. Philadelphia, PA. 19106 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and ZIP Code) Donald Moshier, Jr., #10924-052, F.C.I.-McKean, P.O. Box 8000, Bradford, PA. 16701 |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| MILITARY [ ]  CIVILIAN [X] | 8/18/61 | | October 2003 | N/A |

8. Basis of Claim (State in detail the known the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

Please See Attached Section

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on the reverse side.)

N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please See Attached Section

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
|---|---|
| Dr. Olson | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| Dr. Beam | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| Mr. Smith (Hosp. Admin.) | F.C.I.-McKean, P.O. Box 5000, Bradford, PA. |
| (PLEASE SEE ATTACHED SECTION) | |

DATE RECEIVED: JUN 16 2004

12. (See instructions on reverse)   AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| N/A | $5,000,000.00 | | $5,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on revere side.) *Donald C Moshier Jr* | 13b. Phone Number of signatory Contact F.C.I. Staff | 14. DATE OF CLAIM 15 June 2004 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

(This form may be replicated via WP)

000001

MEMORANDUM FOR RECORD

FROM: Moshier, Jr. Donald, #10924-052, Federal Corrections
     Institution-McKean, P.O. Box 8000, Bradford, PA. 16701

TO: Federal Bureau of Prisons, Northeast Region, Regional Office,
    U.S. Customs House, 7th Floor, 2nd and Chestnut Streets,
    Philadelphia, PA.  19106

SUBJECT: Standard Form-95 Continuation Sheet in Support of Tort
     Claim

**Basis of Claim** (from block #8 on Standard Form-95):

    I have known since approximately September of 03 that I have positive results for Hepatitis C. After finding out that I have the virus as well as what the possible outcomes of treating or not treating the disease, I have made direct inquiries to the prison staff (counselor), and medical persons (Physician Assistants, Doctors) as well as the administrator of medical functions (Hospital Administrator) in regard to receiving treatment for the disease, as well as preventing the disease to progress unnecessarily.

    In my first inquiry, it was stated that "You are to be reassured that if you do in fact need treatment, you will receive it." (This was issued by staff member Morello, Correctional Counselor on 10-03-03). This is a response after I told the counselor that I had not received a liver profile, lab tests and that I was experiencing flu-like symptoms. In the first request all that I asked for was treatment and for the progress of the disease to be followed closely.

    On October 27 2003, I filed another form (BP-9) to the warden of the facility. I stated that the medical staff and the Bureau of Prisons was acting with deliberate indifference to serious medical needs, specifically treatment of hepatitis C. The warden then stated that I requested testing for hepatitis C on September 3, 2003. The warden stated that the results came back positive on 16 September 2003, and that I was placed on "chronic care" by the medical staff on 16 October 2003. The warden stated that additional bloodwork was ordered ordered during the visit. The warden stated that "Once all lab work is complete, you will be treated following the guidelines for hepatitis C treatment set forth by the medical director of the Bureau of Prisons. There is no evidence of deliberate

Page (1)

indifference or improper care.

I then filed a BP-10 to the Regional Director in which I stated that blood work that was ordered on 16 October 2003, had not yet been completed. I also stated that the practice of refusing to evaluate inmates because their liver enzyme levels were not elevated more than twice the upper limit, and that such conduct does amount to deliberate indifference. I also requested no more delays in my medical treatment, request for liver profile, liver biopsy and to be vaccinated against hepatitis A. (It should be noted that this is a standard procedure for persons who just find out that they have the virus). The response by the Regional Office was much the same as the previous responses, but when the appeal was filed to the Bureau of Prisons Central Office, the response was different in numerous ways.

The Central Office Stated:

"BOP guidelines for the treatment of hepatitis C are based on a large body of scientific literature, much of which is summarized in the NIH Consensus Conference Statement: "Management of Hepatitis C, 2002." These guidelines do not recommend treating every patient with hepatitis C, since significant liver disease develops in only about 15% of those who are infected. It takes 20 years or more for cirrhosis to develop in the 15% of infected individuals. The serum ALT level is used as an indirect indicator of liver inflammation. Recent research has shown that individuals with persistently normal or near normal ALT levels are unlikely to have significant or progressive liver disease. Thus it is premature to refer you for a liver biopsy at this time. Your condition will continue to be monitored every 3 to 6 months in the Chronic Care Clinic, and if in the future you meet the criteria for a liver biopsy, this will be performed."

In this statement, the BOP has openly relied on information that is only correct in part in relation to the treatment of the virus. The information that I was able to obtain is from a government website, and it speaks about the treatment and the progression of the disease hepatitis:

The BOP has stated in writing that 15% of those infected develop chronic or significant liver disease. The National Digestive Diseases Information Clearinghouse (NIDDK), a government website, says something different:

"A distinct characteristic of hepatits C is **its tendency to cause chronic liver disease**. At least **75%** of patients with acute hepatitis C **ultimately develop chronic infection**, and most of these patients have accompanying chronic liver disease...."

000003

Page (2)

My question is then, does the disease progress to a level of serious concern in 15% of those infected, or does it progress to a to a serious level in 75% of those infected.

In regard to the liver biopsy, I will not contest that the procedure is not necessary for diagnosis, but it is helpful for grading the severity of the disease as well as staging the degree of fibrosis and permanent architectural damage to the liver. In relation to the biopsy process: Hematoxylin and eosin stains and Masson's trichrome stain are used to grade the amount of necrosis and inflammation and **to stage the degree of fibrosis**. The biopsy is also used to rule out other causes of liver disease. It should also be noted that "grading and staging" of hepatitis by assigning scores for severity are helpful in managing patients with chronic hepatitis. The degree of inflammation and necrosis can be assessed as none, minimal, mild, moderate, and severe. The degree of fibrosis can be similarly assessed. Scoring systems are particularly helpful in clinical studies on chronic hepatitis. I can acknowledge that the biopsy procedure is expensive, and could require medication after the procedure, and that monitoring ALT levels, particularly if tested over an extended period, are reasonably accurate reflections of disease activity. However, the level is not predictive of liver biopsy findings.

Lastly, in relation to the biopsy, serum tests are **not reliable** in predicting fibrosis, particularly in the early stages (0, 1, and 2). When a patient develops bridging (stage 3) fibrosis and cirrhosis (stage 4) serum tests may then be helpful. **Physical findings** of a firm liver, or enlarged spleen or prominent spider angionata or palmar erythema, are also danger signals. While none of these findings should be considered "perfect" their presence should raise the suspicion of significant fibrosis and lead to evaluation and treatment **earlier rather than later.**

The therapy for chronic hepatitis C has evolved steadily since alpha interferon was first approved for use in the disease more than 10 years ago. At the **present time**, the optimal regimen appears to be a 24 or 48 week course of the combination of pegylated alpha interferon and ribavirin. This combination therapy leads to rapid improvement in serum ALT levels and the disappearance of detectable HCV RNA in up to 70% of patients. This begs the question of **who should be treated?**

"Patients with anti-HCV, HCV RNA, elevated serum aminotransferase levels, and evidence of chronic hepatitis on liver biopsy, and with no contradictions, should be offered therapy with the combination of alpha interferon and ribavirin. The National Institutes of Health Consensus Development Conference Panel recommend that therapy for hepatitis C be limited to those patients that have histological evidence of progressive disease. Thus the panel recommend that **all patients** with fibrosis of moderate to severe degrees of inflammation and necrosis on liver biopsy should be treated and patients with less severe histological disease should be managed on an individual basis. **Patient selection should not be based in the presence of**

Page (3)

000004

or absence of symptoms, **the mode of aquisition**, the genotype of HCV RNA or serum HCV RNA levels. There are also a multitude of other situations such as a person who is HIV postive, that do not apply here. In many of these indefinite situations, the indications for therapy should be reassessed at regular intervals. Patients with acute hepatitis C are a major challenge to management and therapy. Because such a **high proportion with acute infection develop chronic hepatitis C**, **prevention of chronicity has become the focus of attention.** In small studies, 83 to 100 percent of persons treated within 1 to 4 months of onset have had resolution of infection.

    The point as well as the basis for this claim is that the Bureau of Prisons has in fact acted with deliberate indifference to the serious medical needs of a federal prisoner infected with a disease that can progress and be fatal. The BOP has not given the proper testing for the disorder such as the liver biopsy, and I have not been given the option of taking a drug regiment to prevent the advancement of the disease. The manner in which the BOP is going to treat, or not treat, the virus in my case is that **once the disease progresses,** it will be treated, **but not prior to this event.** The actions of the BOP will ultimately take **years** off of my life, not months. This is a disease that progresses in 75% of those who contract the virus.

**State the Nature and Extent of each Injury or Cause of Death, Which Forms the Basis of the Claim.** (from block #10 on Standard Form-95)

    As I have stated on the section "Basis of Claim", the manner in which the BOP is treating or not treating my disease at this point in time will ultimately take years off of my life. This is also a loss of future earning capacity, loss of consortium, medical costs associated with treating the disease after it progresses to a more advanced stage. This could also be compounded by the fact that I am incarcerated, and should the disease progress to a more advanced state prior to my release, I would be in a severely disabled state prior to my integration back into society. It should be noted that my ALT levels have increased sharply over the last 6 months alone, if the levels keep advancing in this manner, I will be in a more advanced stage of the virus in a snort period of time, this is also compounded further since I have not received drug treatment for the virus.

**Witnesses** (from block #11 on Standard Form-95)

| | |
|---|---|
| Harrell Watts | Administrator, National Inmate Appeals Bureau of Prisons Central Office |
| L. Morello | Counselor, F.C.I.-McKean, P.O. Box 5000 Bradford, PA. 16701 |

000005

Page (4)

| | |
|---|---|
| M.E. Ray | Regional Director, Bureau of Prisons Northeastern Region |
| S. Czekai | Medical Technician, U.S. Medical Centers for Federal Prisoners Laboratory, Sprongfield. MI., 65808 |
| Any Other Medical Staff Associated with the care, treatment and health of prisoners treated by the Chronic Care Clinic. | F.C.I.-McKean, P.O. Box 8000, Bradford PA.   16701 |

---------------------------------Nothing Follows---------------------------

o

   I declare under the penalty of perjury that the foregoing information is true and correct, pursuant to 28 U.S.C. § 1746.

Signed this _15_ day of _June_, 2004

*Donald C Moshier Jr*
Donald Moshier, Jr./ Claimant

Cc: (2) Copies to Regional Counsel
    (1) Copy, Claimant Records



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets - 7th Floor*
*Philadelphia, PA. 19106*

June 24, 2004

Donald L. Moshier Jr.
Reg. No. 10924-052
Federal Correctional Institution-McKean
P.O. Box 8000
Bradford, PA  16701

Re: Administrative Tort Claim Received June 16, 2004
    Claim No. TRT-NER-2004-03795

Dear Mr. Moshier:

This will acknowledge receipt on June 16, 2004, of your Administrative Tort Claim for alleged personal injury suffered at the FCI McKean on or about October 3, 2003.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675, we have six months from the date of receipt to review, consider, and adjudicate your claim. Accordingly, you may expect to hear from us on or before December 13, 2004.

All correspondence regarding this claim should be addressed to me at: Federal Bureau of Prisons, Northeast Regional Office, U.S. Custom House, Room 700, 2nd & Chestnut Streets, Philadelphia, Pennsylvania 19106. If the circumstances surrounding this claim change in any fashion, you should contact me immediately. Also, should your address change, you should advise me accordingly.

Sincerely,

Henry J. Sadowski
Regional Counsel

000007

UNITED STATES GOVERNMENT

# Memorandum

Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

DATE: December 9, 2004

REPLY TO
ATTN OF: Henry J. Sadowski, Regional Counsel

SUBJECT: Administrative Tort Claim No. TRT-NER-2004-03795

TO: Donald L. Moshier, Jr., Reg. No. 10924-052
FCI McKean

Your Administrative Tort Claim No. TRT-NER-2004-03795, properly received in this office on June 16, 2004, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek compensatory damages in the amount of $5,000,000.00 for an alleged personal injury. Specifically, you claim you have not received the appropriate treatment for Hepatitis C, causing the disease to progress to a more advanced stage.

After careful review of this claim, I have decided not to offer a settlement. Investigation reveals your Hepatitis C condition has been closely monitored. The progression of your Hepatitis C condition has now reached the stage requiring treatment. Your Interferon treatments were started on October 28, 2004. A review of your case indicates you have received the appropriate monitoring and treatment for Hepatitis C, consistent with community standards. You fail to show you have experienced a personal injury as the result of negligence on the part of any Bureau of Prisons' employee.

Accordingly, your claim is denied. If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum.

cc: James F. Sherman, Warden, FCI McKean

000008

## ACKNOWLEDGMENT OF RECEIPT

## DENIAL OF TORT CLAIM

I, Donald L. Moshier, Jr., Reg. No. 10924-052, hereby acknowledge receipt this 21st day of DECEMBER, 2004, of the December 9, 2004, memorandum from Henry J. Sadowski, Regional Counsel, Northeast Region, Federal Bureau of Prisons, informing me of the denial of my tort claim (TRT-NER-2004-03795).

x _Donald L. Moshier Jr._
Signature

Witnessed this 21st day of DECEMBER, 2004.

_____
Staff Witness

# PAGES 1   DATE 12-21-04   FAX #
TO NERO Legal
FROM McKEAN Legal
CO.
PH #

000005