IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSLYVANIA

DONALD L. MOSHIER, JR.,           )
                                  )
        Plaintiff,                )
                                  )   CIVIL ACTION NO. 05-180 (ERIE)
                                  )
    v.                            )
                                  )
                                  )
UNITED STATES OF AMERICA,         )
                                  )   JUDGE MCLAUGHLIN
JOHN J. LAMANNA (Former Warden)   )   MAGISTRATE JUDGE BAXTER
DOCTOR BEAM (Doctor at FCI McKean),)
DOCTOR OLSON (Doctor at FCI McKean),)
Doctor SMITH (Health Administrator),)
and JAMES SHERMAN (FCI McKean Warden),)
                                  )
        Defendant's               )


PLAINTIFF'S REBUTTAL TO GOVERNMENT'S RESPONSE
TO HIS CIVIL ACTION PURSUANT TO
FEDERAL RULE OF CIVIL P. RULE 7(b)

On June 10, 2005 Plaintiff DONALD L. MOSHIER, JR., pro se, filed a civil suit alleging that while incarcerated at FCI McKean Federal Prison, McKean County, Pennslyvania, he received inadequate medical care from defendants in connection with several medical conditions. Specifically, Plaintiff's amended complaint declares a claim pursuant to <u>Bivens v. Six Unknown Named Agents of the Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, <u>Estelle v. Gambel</u>, 429 U.S. 97, 50 Led 2d 251, 97 S. Ct. 285 (1976), elementary principles of the cruel and unusual punishment clause of the Eighth Amendment establish the government's obligation to provide proper medical care for those

whom it is punishing by incarceration. By not performing a liver biopsy in a reasonable amount of time after original examination to determine the exact amount of liver damage or as an exploratory means to discover the use of the proper medication, and providing Interferon/Ribarvirin treatment after Plaintiff was_diagnosed with Hepatitis C viris (Hepatitis C or (HCV), See, **Miltier_v_Beorn, 896 F2d 848 (4thCir. 1990)** prison officials' deliberate indifference to inmate Moshier Jr.'s serious medical condition constitutes Eighth Amendment violation and gives inmate cause of Action under §1983. Plaintiff's seeks $200,000,00 in damages for undue extreme pain, stress, anxiety and possible death, by delaying immediate treatment that allowed infection to spread throughout his system. Plaintiff admitted that he "may" have contacted Hepatitis C over Twenty (20) years ago, has absolutely no bearing on this case as why was he withheld proper medical treatment now in the confines and jurisdiction of the Bureau of Prisons (BOP). Plaintiff argues that because of his sickness, and inability to concentrate due to the pain and confinement in special housing (SHU). Plaintiff's failure to exhaust remedies deprives court of jurisdiction See **Richmond_v._Reno, 162 F 3d. 1338 (11th Cir. 1998),** The results of the removal of his gallbladder and growth was a direct preoperative from the six momths he was confined in the (SHU) and received no_treatment_or_medication_at_all after being diagnosed with advanced stages of Hepatitis C viris. Dr. Beam stating to Plaintiff after he was released from (SHU) "When you failed to show up for your treatment, I apologize for not following up" "I forgot"! Here we have a competent doctor on staff treating

1

a patient with a very serious case of Hepatitis C viris, and simply forgets about him when he failed to show up for a scheduled appointment? **Harris v. Cowela County**, 21 F 3rd 388(11thCir. 1994). Prison official violates Eighth Amendment by being delibertly indifferent either to prisoner's existing serious medical need or to conditions posing substantial risk of serious furure harm.

### PLAINTIFF'S BACKGROUND

On April 26, 2002, Plaintiff was sentenced in the United States District Court of New York to 120 months of imprisonment, followed by a five (5) year term of supervised release, for conspiracy to Manufacture, Distribute and Possess with intent to Distribute and Possess with intent Distribute Methamphetamine, in violative of 18 U.S.C. §846. Additionally, on April 8, 2003, Plaintiff was sentenced in the United States District Court for the Western District of Pennslyvania to twenty- four (24) months of imprisonment, to be served consecutively with the 120 month term imposed by the New York District Court for mailing threating communications in prison in violation of 18 U.S.C. §876. Plaintiff was ordered to FCI KcKean to serve his sentence on June 6, 2002. Subsequently he was designated to USP lewisburg on June 26, 2005, to complete his sentence. His release date is January 25, 2012.

### DEFENDANTS

a. United States of America;
b. John J. Lamanna, former Warden, FCI McKean;
c. Doctor Herbert Beam, M.D., Staff Physician, FCI Mckean,

2

    d. Doctor Dennis Olson, M.D., Clinical Director, FCI McKean;

    e. Rodney Smith, health Services Administration (HSA) FCI McKean;

    f. James Sherman, former Warden, FCI McKean.

### BRIEF SUMMARY OF PLAINTIFF'S MEDICAL HISTORY

Dr. A. Bussanich, M.D., staff doctor records in his summary that Plaintiff tested positive for Hepatitis C in May of 2006. Plaintiff requested treatment way back on <u>September 2, 2003</u>, a Hepatitis C test was ordered. On September 16, 2003, the results were positive that Plaintiff was infected with Hepatitis C antibody. On September 17, 2003, Plaintiff asked for results of the tests. <u>On September 28, 2003</u>, Plaintiff made seperate requests asking Dr. Olson and HSA Smith for Interferon/Ribaviriv injections and blood monitoring. Dr. Olson and HSA Smith responded that Plaintiff would be seen on October 10, 2003, to discuss the issue. On October 3, 2003, Plaintiff submitted an informal resolution (cop out) requesting treatment for his <u>now diagnosed Hepatitis C, and injections for Hepatitis A</u>. Plaintiff expressed his physical condition as feeling very sick to his stomach, lethargic, and dimished strenght. In a response October 3, 2003, the correctional counsolor stated that he contacted and spoke to Dr. Beam about Plaintiff's condition, and Dr. Beam assured Plaintiff he would receive treatment if needed? For the thrid time on October 3, 2003, Plaintiff asked Dr. Beam for vaccinations for Hepatitis A. Five days later, Dr. Beam advised (he doesn't say to whom he advised or passed the word along) that he would discuss Hepatitis C treatment. On October 9, 2003, they gave Plaintiff over to a phyician's assisstant (PA) to discuss

Plaintiff's request for Hepatitis A, the Hepatitis C test, already established results a month before on September 16, 2003. Again Plaintiff stated his physical condition to the PA as his weakening and nausa. The PA said he would inform Dr. Beam. On October 21, 2003, Plaintiff's serum alanin aminotransferase (ALT) level was 116-elevated normal range 0-40. On October 15, 2003, Plaintiff tried unsecessfully five (5) cop-outs to discuss his physical condition, that it was hard for him to walk at times to go to the dinimg hall to eat because of his feelig to weak. He also stated that it was very difficult for him to return time after time to the medical department and be spurned by the staff. They kept promising treatment but kept delaying, saying the Dr. is "off" today, the doctor is very"busy", the doctor had an"emergency".

All Plaintiff wanted was when are they going to relieve him of all this pain? Since Plaintiff honestly stated to Dr. Beam, that he "probably" had hepatitis C since he was twenty years old and he is forty-two years now makes absolutely no difference <u>when</u> he supposedly acquired the "HVC". Plaintiff has been under the jurisdiction of the BOP since June 6, 2002, and diagnosed tested positive with "HCV" in May, 2006. Regardless he is entitled to proper and human medical treatment while incarcerated. On October 27, 2003, in desperation Plaintiff turned to Warden LaManna for redress. Warden LaManna responded that Plaintiff would be treated in accordance with bop policy, and no evidence of "deliberate indifference" or improper medical care was evident in his eye's, but he also stated "but then again I'm no MD! Since Warden LaManna didn't look to far into the Plaintiff's medical records to ascertain

4

why its taking the medical department and Dr.'s Beam and Dr. Olson to make a bona fide decision on when to treat Plaintiff's medical condition. When the lab results already proved that Plaintiff has Hepatitis C., back in September 4, 2003! On November 17, 2003, more tests only confirmed what has already been established that Plaintiff has "full blown" Hepatitis C viris, and must have immediate injections of Interferon/Ribavirin. Now on November on November 18, 2003, Plaintiff asked Dr. Beam for a liver biopsy and viral load tese. In a ludicrous response, Dr. Beam assured Plaintiff that if he <u>needed treatment he would receive it</u>! How much more evidence does the Dr. Beam need? Its established Plaintiff is infected with Hepatitis C, with a laboratory report, why the delay? On December 10, 2003, Plaintiff is pleading for help. Dr. Beam now informs the Plaintiff he must consult the Utilization Review Committee (URC). Why has Dr. Beam waited from the time Plaintiff was diagnosed and proven to have hepatitis C, on September 4, 2003, to December 10,2003, that he has to consult the (URC)? Dr. Beam was well aware that Plaintiff's ALT level was elevated to a dangerously high level, why the delay? It wasn't till December 22, 2003, nearly four (4) months had passed, and Dr. Beam informs the Plaintiff that Hepatitis A vaccine would be ordered? On January 5, 2004, Plaintiff asked Dr. Beam, when will I receive injections for my hepatitis? Finally after five (5) months he was given Hepatitis A vaccine. On February 12, 2004, blood tests indicated Plaintiff's ALT level was 115-elevated extremely high, when reference range is normal at 11-66. Plaintiff received only one (1) injection of Hepatitis A vaccine on January 23,2004.

5

Why the delay? Not until April 21, 2004, when Dr. Beam knows in his medical expertise that one (1) injection of Hepatitis A vaccine is not even going to combat an infection as serious as Hepatitis C! Dr. Beam failed to inquire as to why Plaintiff failed to show up for his scheduled appointment, given the seriousness of Plaintiff's illiness. To further aggravate matters on June 12,2004, lab results reveal Plaintiff's ALT level to be 129-elevated reference range 11-66. It's not until July 15, 2004, that the (URC) approved a liver biospy for Plaintiff, a full seven (7) months since Plaintiff first asked if the hospital would give him a liver biospy. On July 19, 2004, Plaintiff's ALT was at a dangeruosly high level of 7,270,00 UI/ml of HC, his HCU was of a genotype 3e, and his ferritin (iron) was 180. By medical standards <u>unacceptable</u>- shows infection throughout Plaintiff's system. On August 24, 2004, at this stage Dr. Beam being a medical doctor must have realized how gravely ill the Plaintiff was by August. Not surprisingly on August 24,2004, Dr. Beam ordered a liver biospy to be performed on Plaintiff at the Bradford Regional medical Center. A CT scan of Plaintiff's abdoman, revealed that Plaintiff's liver was in the upper limits (enlarged) of a normal size. Diagnosis- cirrhosis in the advanced stages. On September 8, 2004, fully one year from the date that Plaintiff first sought treatment, Dr. Beam now decided that it was a good idea now that Plaintiff has sustained a considerable amount of liver damage, due to Dr.'s Beam and Dr. Olson and Smith's dilatory indifference and negligence, as to Plaintiff's complaints about severe pain in his lower abdoman, lack of appetite, vomiting and constant nausea. By September 8, 2004, Dr. Beam still had not

taken the proper administrative steps to get the Interferon/Ribarvirin injections for the Plaintiff. Dr.'s Beam and Dr. Olson and Dr. Smith are medical doctors, why would they consult a mere psychologist to authorize them to give Interferon/Ribavirin to a gravely ill patient? Thie is very hard for a layman in the law, as also defies common sense, or a normal thinking person, with a normal I.Q. to believe that on Septenber 24, 2004, that these doctors, after all the tests, and clinical exams, that they assessed this Plaintiff with Hepatitis C, and still further delayed treatment after one (1) year from the Plaintiff's first visit on September 28, 2003,the Plaintiff after a year of undue pain and detriment to Plaintiff's liver, is finally given his first dosage of Interferon/Ribarvirin on October 28, 2004. It is apparent from viewing Plaintiff's medical records well establishes that Plaintiff was definetly diagnosed with Hepatitis C, and not treated accordingly within the standards set forth in the BOP Guideline and the NIH Consensus Development Conference Statement, Management of Hepatitis c: 2002, Ex. 1e. The long delay only promoted the infection to spread throughout Plaintiff's body and resulting in the removal of a gangerous gallbladder, as stated by Dr. Graham, at bradford Regional Medical Center. This is proof in itself to determine deliberate indifference.
See. McEllgott v. Foley, 182 F3d 1248 (11 th Cir. 1999)Prison official does not insulate his potential liability under Eighth Amendment for actions reflecting deliberate indifference to serious medical needs of prisoners by instituting a policy of indifference.

## IMMUNITY

Since Dr.'s Beam; Olson; and Smith all acted in concert at one time or another to diagnose, discuss and examine Plaimtiff, they are not being sued <u>individually</u>. See. <u>Tapley v.Collins</u>, 211 F 3d 1210 (11th Cir. 2000) Qualified immunity only protects public officials from lawsuits brought against them in their <u>individual</u> capacities. Since Dr.'s Beam; Olson; and Simth are in the same group, they all are responsible for Plaintiff's violation of his Eighth Amendment rights, to have competent and timely medical care, a reasonable diagnosis then proper treatment administered. The government admits that it has a constitutional obligation to provide inmates with adequate medical care. However, all three doctors in this case are liable, its like the "right hand didn't know what the left hand was doing". No qualified immunity entitlement due here!

## DUE PROCESS

Regardless of what the wording entails under Rule 4(e) Dr.'s Beam;Olson; Smith; as well as John J. LaManna, and James Sherman, none of these individually are being sued <u>individually</u>, they are all viewed as the same <u>altogether</u>. Not single. Plural. The government is dealing with a very sick inmate with permanent complications because this medical group, "passed the buck" so to speak, therefore,not only endangered this mans life by their indifference, especially during Plaintiff's time in the SHU, now he is not only without his gallbladder, he has a 9" disfiguring scar on the lower right quardrant of his abdoman. This could all

8

have been avoided if competent if diligent care would have been administered by the medical staff at FCI Mckean.

## CONCLUSION

Further Plaintiff alleges that from October 28,2004, Dr. Beam administered two (2) full injections of Interferon. Plaintiff states that he was rolled up in a ball on the floor of the cell in pain and agony. Dr. Beam cut Plaintiff's dosage to 1/4 dose. From December 14,2004, till February 5,2005, Plaintiff did not receive any medication. Dr. Beam never came to SHU to see, or inquire as to his condition. Plaintiff was still confined to SHU as of April 12, 2005. Plaintiff's pain became so severe that he lay on the dirty floor screaming and convulsing. The doctor on the a.m. shift, took one look at Plaintiff and hurriedly had him transported by ambulance to Kane Medical Center. Emergency staff and Dr, Anderson, ran tests and determined that a severe gallbladder and urinary track infevtion was spreading in Plaintiff's body. Plaintiff spent three days under monitor and released. Returned to SHU April 15,2005. Due to failing respiration, diminished heart beat the physician on the a.m. shift informed the PA to call an ambulance, "this man needs medical assistance at once". This was April 18, 2005. Plaintiff was transported to Bradford Medical Center. Dr. Nathanial Graham was on duty and started oxygen and I.V. for dehydration, and a temperature of 104.5°. Dr. Graham remarked that Plaintiff was a very sick man and if prison staff would have waited another 20 hours Plaintiff would have expired. Dr. Graham also said that if Plaintiff would have been given antibiotics

9

sooner that all this would have been avoided. Dr. Graham informed Plaintiff that emergency surgery was imminent that Plaintiff's blood count shown severe infection. Dr. Graham prepared Plaintiff for immediate surgery to remove his gangrenous gallbladder. Dr. Graham also stated that Plaintiff had a 50/50 chance of surviving this serious procedure. <u>See</u>. Medical Record M000226525. Plaintiff was discharged after eight (8) days, and returned back to SHU, until April 27,2005. On June 20, 2005, Plaintiff was redisignated to USP Lewisburg. The Medical staff and staff Dr. Bussanich did absolutely nothing for Plaintiff as far as treatment goes from June 20, 2005, till March 19,2007. Plaintiff did not receive any Interferon/Ribavirin for his Hepatitis C, other than Zantac 150 m.g.; Albuterol inhaler; Naproxyn 500 m.g. On December 23,2006, Plaintiff was randomly picked and stabbed 21 times by a sociopathic inmate bent on trying to get back to Administration Detention Annex (ADX). Plaintiff was rushed to Giesinger Hospital, and received surgery to close his several wounds. and blood transfusions to replace lost blood from the attack. Plaintiff was released on January 4, 2007. Plaintiff still has not received treatment for his hepatitis C. The damage this ordeal has caused Plaintiff, starting on September 2, 2003 till present, he now suffers from severe swelling in his legs, with large brown spots , flu like symptoms causing spittle to run off his chin, constant headachs and blurred vision. Plaintiff is complaining of blood in his stool, and extreme flatus (gas) . Plaintiff has extreme pain in his ears, has diminished strength and lathargic most of the day, and cannot sleep due to pain especially in his abdomen. Plaintiff

Plaintiff states he never experienced any of thes problems since Dr.'s Beam; Olson; and Smith in concerted treatment began their experiencing with strong drugs that only caused more damage to my liver, pancreas, and gallbladder. For the foregoing reasons Plaintiff prays this Honorable Court will GRANT him EXEMPLARY DAMAGES to his body, and mental capacity to function now and in the future.

## EXCUSABLE ERROR

Petitioner is a layman at law, therefore, he relies upon **excusable error pro se,** pleading this Court will hold his Motions to less stringent standards than formal pleading drafted by Lawyers, pursuant to **Haines v. Kerner**, 404 U.S. 519, 92 S.Ct. 954 (1972), cited in **Hughes v. Rowe**, 449 U.S. 5, 101 S.Ct. 173, 176 (1980).

Respectfully submitted,

DONALD L. MOSHIER JR.,
Reg. No. 10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

## CERTIFICATE OF MAILING

I Donald L Moshier Jr, under penalty of perjury, hereby certify that on this 9 day of April, 2007, I placed an envelope containing the Original and 1 copies of the following documents in the control of prison authorities by depositing the envelope in the institution mailbox designated for all outgoing inmate legal mail:

> MARY BETH BUCHANAN
> United States Attorney
> Western District of Pennslyvania
> 700 Grant Street, Suite 4000
> Pittsburg, PA 15219

addressed to the Clerk of Court, _____

_____,

Therefore, in accordance with the federal rules governing filing procedures and the "mailbox rule" eatablished in Houston v. Lack, 487 U.S. 266 (1988), the foregoing documents are deemed "filed" for the purpose of this action.

Signed Donald L. Moshier Jr.
Donald L. Moshier, Jr.
#10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSLYVANIA

DONALD L. MOSHIER, JR., )
      Plaintiff, )
)
    v. ) CIVIL ACTION NO. 05-180 (ERIE)
)
)
UNITED STATES OF AMERICA, ) JUDGE MCLAUGHLIN
JOHN J. LAMANNA (Former Warden), ) MAGISTRATE JUDGE BAXTER
DOCTER BEAM (Doctor at FCI Mckean), )
DOCTOR OLSON (Doctor at FCI mcKean), )
DOCTOR SMITH (Health Administrator), )
and JAMES SHERMAN (FCI McKean Warden), )
)
      Defendants. )

DONALD L. MOSHIER, JR.,
Reg. 10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

*Donald L. Moshier Jr.* (signature)