## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD L. MOSHIER, JR.,      )
                **Plaintiff**      )
                              )      **C.A. No. 05-180 Erie**
      **v.**             )
                              )      **District Judge McLaughlin**
UNITED STATES OF AMERICA, et al., )      **Magistrate Judge Baxter**
          **Defendants.**      )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


### I.    RECOMMENDATION

It is respectfully recommended that Defendants' partial motion to dismiss or, in the alternative, partial motion for summary judgment [Document #24], be granted.


### II.    REPORT

#### A.    Procedural History

On June 10, 2005, Plaintiff Donald L. Moshier, Jr., an inmate formerly incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq.[1] Named as Defendants are:  United States of America ("United States"); John J. LaManna, former Warden at FCI McKean ("LaManna"); Herbert Beam, M.D., a physician at FCI-McKean ("Beam"); Dennis Olson, M.D., Clinical Director at FCI-McKean ("Olson"); Rodney Smith, Health Services Administrator at FCI-McKean ("Smith"); and James Sherman, Warden at FCI-McKean ("Sherman").

Plaintiff alleges that his rights under the eighth amendment to the United States

---

[1]

On June 29, 2006, Plaintiff subsequently filed an Amended Complaint, which clarifies Plaintiff's claims in this matter. [Document # 18].

Constitution have been violated as a result of the deliberate indifference of Defendants Beam, Smith, Olson, LaManna, and Sherman to his serious medical needs. (Amended Complaint at ¶ 38). Plaintiff also alleges that Defendants Beam, Smith, Olson and United States were negligent in their treatment of his various medical conditions, including hepatitis C, gallbladder problems, and a growth on the side of his stomach. (Amended Complaint at ¶ 37). As a result of these claims, Plaintiff seeks monetary damages.

Defendants have filed a partial motion to dismiss, or in the alternative, partial motion for summary judgment [Document # 24], arguing that: (i) Plaintiff has failed to exhaust his administrative remedies regarding both his <u>Bivens</u> claim alleging deliberate indifference, and his FTCA claim alleging medical negligence, as to Defendants' treatment of his gallbladder problems and a growth on the side of his stomach; (ii) Plaintiff has failed to state a <u>Bivens</u> claim upon which relief may be granted, with regard to Defendants' treatment of his hepatitis C condition; (iii) Plaintiff's FTCA claim against the individual Defendants should be dismissed because they are not proper parties to such a claim; and (iv) the individual Defendants are entitled to qualified immunity. Despite having been granted three extensions of time, Plaintiff has failed to file a response to Defendants' motion. This matter is now ripe for consideration.

### B.    Factual History

Plaintiff is a federal inmate presently incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg"). (<u>See</u> Document # 25, Defendants' Brief, Exhibit 1a). On April 26, 2002, Plaintiff was sentenced by the United States District Court for the Northern District of New York to serve 120 months of imprisonment, followed by five (5) years of supervised release, for Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 18 U.S.C. § 846. (<u>Id</u>. at p. 2). Subsequently, on April 8, 2003, Plaintiff was sentenced by the United States District Court for the Western District of Pennsylvania to serve a consecutive term of 24 months of imprisonment, for Mailing Threatening Communications in Prison, in violation of 18 U.S.C. § 876 and 2. (<u>Id</u>. at pp. 2-3). Plaintiff was designated to FCI-McKean on June 6, 2002, where he remained incarcerated until

2

he was transferred to USP Lewisburg on June 26, 2005. (Id. at p. 1).  Assuming he receives all Good Conduct Time available, Plaintiff's projected release date is January 25, 2012. (Id. at p. 4).

In August of 2003, Plaintiff began to experience fatigue, nausea, headaches, and pain in his right side and stomach. (Amended Complaint at ¶ 10).  On September 2, 2003, Plaintiff requested a hepatitis test due to his history of intravenous drug use, cocaine use, and unprotected sexual contact. (See Declaration of A. Bussanich, M.D., Chief Medical Officer at USP Lewisburg ("Bussanich Declaration"), attached as Exhibit 2 to Document # 25, Defendants' Brief, at ¶ 2a).[2]  In response to Plaintiff's request, a hepatitis C profile was conducted on September 4, 2003, the results of which indicated that Plaintiff had tested positive for hepatitis C. (Bussanich Declaration at ¶ 2b).

On September 28, 2003, Plaintiff issued separate inmate requests to Defendants Smith and Beam requesting Interferon/Ribavirin treatment and regular blood monitoring.  Both Defendants responded to Plaintiff's requests by advising him that he would be seen by Defendant Beam on October 16, 2003, to discuss treatment. (Id. at ¶¶ 2f-g). Nevertheless, on October 2, 2003, Plaintiff submitted an informal resolution form to his Correctional Counselor, requesting treatment for his hepatitis C, a liver biopsy, and a vaccination for hepatitis A.  (Id. at ¶ 2i).  On the same date, Plaintiff also sent an inmate request to Defendant Beam requesting vaccination for hepatitis A. (Id. at ¶ 2j).  In response to both requests, Plaintiff was informed that Defendant Beam would see him to discuss his concerns. (Id. at ¶¶ 2j-k).

On October 10, 2003, blood was collected from Plaintiff for a Hepatic Function Panel (a liver function test), the results of which were received on October 21, 2003, and showed an

---

[2] Dr. Bussanich's Declaration contains a detailed summary of all medical treatment Plaintiff received at both FCI-McKean and USP Lewisburg.  However, since Plaintiff's claims in this case are confined to Defendants' treatment of his hepatitis C condition, gallbladder problems, and growth on the side of his stomach, all other treatment Plaintiff received for various other medical conditions will be disregarded.

elevated ALT level of 115 (reference range 0-40).[3] (Id at ¶ 2m).  On October 16, 2003, Plaintiff was seen in FCI-McKean's Chronic Care Clinic, at which time Plaintiff informed Defendant Beam that he probably had hepatitis C since he was 20 years of age (he was 42 years old at the time). (Id. at ¶ 2t).  After an examination, Defendant Beam ordered hepatitis C blood tests and hepatitis A and B serotology tests, and issued a psychology referral). (Id.).

On October 27, 2003, Plaintiff submitted a Request for Administrative Remedy with Defendant LaManna, requesting a liver biopsy and hepatitis C treatment.  In a response dated November 14, 2003, Defendant LaManna advised Plaintiff that he would be treated in accordance with BOP policy. (Id. at ¶ 2v).  On November 17, 2003, the hepatitis C blood tests and hepatitis A and B serotology tests were conducted. (Id. at ¶ 2y).  The results of these tests were reviewed on November 26, 2003, and indicated that Plaintiff had tested positive for the hepatitis B surface and core antibodies, but tested negative for the IgM antibody to the hepatitis A antigen. (Id.).

On November 18, 2003, Plaintiff submitted a written request to medical staff requesting a liver biopsy and viral load test.  In a written response that same day, Defendant Beam reassured Plaintiff that he would receive treatment when needed. (Id. at ¶ 2z).  On December 10, 2003, Plaintiff sent another written request to Defendant Beam requesting a liver biopsy.  In a written response, Defendant Beam advised Plaintiff that BOP guidelines suggested monitoring ALT levels to see if they remained elevated, in which case a liver biopsy would be appropriate, and that Plaintiff was in the monitoring stage. (Id. at ¶ 2ee).  On December 22, 2003, Defendant Beam ordered a hepatitis A vaccine for Plaintiff, which was administered on January 23, 2004. (Id. at ¶ 2kk).

On February 11, 2004, Plaintiff submitted an inmate request to Defendant Beam requesting a viral load test and liver biopsy.  In a written response, Defendant Beam reiterated

---

[3]

ALT is a liver enzyme that is tested to determine if a patient has liver damage.  (See National Institutes of Health ("NIH") Consensus Conference Statement, *Management of Hepatitis C*: *2002* at 9 (attached as Exhibit 1e to Document # 25, Defendants' Brief)).

that, if Plaintiff's ALT levels remained high over a period of time, a viral load test and liver biopsy would be the next step. (Id. at ¶ 2ll).  On February 12, 2004, a blood sample was collected from Plaintiff for a liver profile test.  The results of the test were received on February 18, 2004, indicating that Plaintiff's ALT level was still elevated at 115 (reference range 11-66). (Id. at ¶ 2mm).

On May 12, 2004, another blood sample was collected from Plaintiff for a lipid test and a liver profile.  The results of the tests were received on February 17, 2004, and indicated, *inter alia*, that Plaintiff's ALT level was 129 (reference range 11-66). (Id. at ¶ 2qq).  As a result, on May 21, 2004, Defendant Beam forwarded a liver biopsy referral to the Utilization Review Committee ("URC"), and ordered a hepatitis C battery and a psychological evaluation. (Id. at ¶ 2rr).  On July 15, 2004, the URC approved Plaintiff for a liver biopsy. (Id. at ¶ 2ss).

On July 19, 2004, a complete metabolic test was conducted, and blood samples were collected for an HCV genotyping test, a Ferritin test, and an HCV Quantasure Plus (viral load) test.  The results of these tests indicated, *inter alia*, that Plaintiff's ALT level was 130 (reference range 11-66), Plaintiff's HCV was of the Genotype 3e, Plaintiff's Ferritin was 180 mg/mL, and Plaintiff's HCV level was 7,270,000 UI/mL. (Id. at ¶¶ 2tt-2ww).

On August 24, 2004, a liver biopsy was performed on Plaintiff at the Bradford Regional Medical Center.  Before the examination, a CT of Plaintiff's entire abdomen was performed, which revealed that the size of Plaintiff's liver was in the upper limits of normal.  After the CT was conducted, a CT guided needle biopsy of Plaintiff's liver was performed, which revealed cirrhosis of the liver, micro-nodular pattern, active. (Id. at ¶ 2ccc).  On September 8, 2004, Defendant Beam informed Plaintiff that the liver biopsy revealed cirrhosis, and he discussed with Plaintiff the risks, psychological effects, and bone marrow suppression associated with Interferon treatment.  After discussion, Plaintiff indicated that he wanted Interferon treatment, and Defendant Beam agreed that the treatment was "a good idea." (Id. at ¶ 2ggg).  On September 22, 2004, Plaintiff was cleared by the Chief Psychologist to receive Interferon and Ribavirin. (Id. at ¶ 2hhh).

On October 7, 2004, Defendant Beam made an administrative notation indicating that he

5

was approved to initiate Interferon and Ribavirin treatment on Plaintiff, which was scheduled to begin during the week of October 25, 2004. (Id. at ¶ 2kkk).  On October 28, 2004, Plaintiff received his first dosage of Interferon/Ribavirin, with no apparent distress, and was advised to return to the clinic in one week for his next dose. (Id. at ¶ 2nnn).  On November 4, 2004, Plaintiff self-administered his second Interferon injection, under supervision, and was instructed to return in one week for his next dose. (Id. at ¶ 2qqq).

On November 9, 2004, a liver profile was conducted, indicating that Plaintiff's ALT level was 160 (reference range 11-66).  On November 11, 2004, Plaintiff self-administered his third dose of Interferon under direct supervision. (Id. at ¶ 2uuu).  A liver profile conducted on November 17, 2004, revealed an ALT level of 144 (reference range 11-66). (Id. at ¶ 2www).  On November 18, 2004, Plaintiff received his fourth dose of Interferon. (Id. at ¶ 2xxx).  A liver profile conducted on November 23, 2004, indicated that Plaintiff's ALT level was 141 (reference range 11-66). (Id. at ¶ 2zzz).

On November 24, 2004, Defendant Beam cut Plaintiff's dosages of Interferon and Ribavirin in half, and Plaintiff received his reduced dose the next day. (Id. at ¶¶ 2aaaa and 2bbbb).  On November 30, 2004, a liver profile was conducted, which revealed an ALT level of 148 (reference range 11-66). (Id. at ¶ 2eeee).  On December 2, 2004, Plaintiff received a full dose of Interferon, which he tolerated well. (Id. at ¶ 2ffff).  Plaintiff was seen by Defendant. Beam the next day, at which time Plaintiff reported that he was "doing okay."  (Id. at ¶ 2gggg).

On December 6, 2004, Plaintiff submitted a written request to Defendant Beam complaining that he had a large lump under his rib cage in his left side, which was "very large and painful." (Id. at ¶ 2hhhh).  Defendant Beam responded that he would check the lump during Plaintiff's weekly appointment. (Id.).  On December 7, 2004, a liver profile was conducted, which indicated that Plaintiff's ALT level was 158 (reference range 11-66). (Id. at ¶ 2iiii).  Two days later, Plaintiff received a one-half dose of Interferon. (Id. at ¶ 2jjjj).

Thereafter, weekly liver profiles were conducted from December 14, 2004, through April 5, 2005, which revealed ALT levels ranging from a high of 208 on December 21, 2004, to a low of 91 on March 29, 2005. (Id. at ¶¶ 2llll, 2pppp, 2ssss, 2uuuu, 2yyyy, 2aaaaa, 2jjjjj,

6

2mmmmm, 2ooooo, 2rrrrr, 2ttttt, 2vvvvv, 2yyyyy, and 2bbbbbb). During this time period, Plaintiff received his weekly dose of Interferon within one to two days after each profile. (Id. at ¶¶ 2mmmm, 2qqqq, 2tttt, 2wwww, 2zzzz, 2bbbbb, 2ddddd, 2fffff, 2hhhhh, 2kkkkk, 2nnnnn, 2qqqqq, 2sssss, 2uuuuu, 2wwwww, 2zzzzz, and 2cccccc).  In all, Plaintiff received twenty-five (25) weekly doses of Interferon, eleven of which were full doses. (Id. at ¶ 2ffffff).

On April 13, 2005, Plaintiff reported that his chest hurt and he could not breath.  He also reported non-radiating pain at his mid-sternum, which he stated felt like pressure with swelling; however, no visible swelling was noted.  Plaintiff was assessed with anxiety possible or muscular pain. (Id at ¶ 2dddddd).  The next day, Plaintiff was treated by a Physician's Assistant ("P.A.") for emergency triage.  Plaintiff stated that, for two weeks, he had been feeling constant pain between his ribs and shooting to his back, which increased in sharpness.  Plaintiff reported that he could not sleep and was vomiting.  Diffuse swelling and fullness was observed at Plaintiff's left upper quadrant, and he was assessed with rule out pancreatitis. (Id. at ¶ 2eeeeee).

On April 14, 2005, Plaintiff was examined by Defendant Beam at the P.A.'s request.  Plaintiff reported that he had been experiencing a swelling sensation and epigastric pain for 48 hours, and that he had vomited once.  On examination, it was noted that Plaintiff was "quite tender" in the epigastric area upon palpation, and he was assessed with epigastric tenderness.  Plaintiff was then taken to the Kane Community Hospital emergency room for blood work. (Id. at ¶ 2gggggg). After he was seen in the emergency room, Plaintiff was admitted to the hospital due to the results of an ultrasound, which indicated possible acute cholecystitis (sudden inflammation of the gallbladder).  Once admitted to the hospital, Plaintiff underwent a battery of tests, which ruled out pulmonary embolism, coronary disease, peptic ulcer disease, and aneurismal changes.  Plaintiff was discharged from the hospital on April 16, 2005, with a diagnosis of non-carcinogenic chest pain, probable chronic cholecystitis without cholethiasis, history of cirrhosis and hepatitis C, and Costochondritis. (Id. at ¶ 2hhhhhh).

On April 18, 2005, Defendant Olson prescribed Amoxicillin, in accordance with the hospital's discharge instructions. (Id. at ¶ 2nnnnnn).  Later the same day, Plaintiff reported that he was feeling much worse since his return to FCI-McKean, and that his symptoms had

accelerated the previous morning.  As a result, Plaintiff was taken to the Bradford Regional Medical Center and examined by a treating physician. (Id. at ¶ 2oooooo).  On examination, Plaintiff's abdomen was firm with guarding in the right upper quadrant, and tender, without guarding, throughout the rest of his abdomen.  The physician noted that, if Plaintiff did not improve rapidly, he should undergo surgery to have his gallbladder removed; however, the physician cautioned that surgery would carry a high risk of mortality, due to Plaintiff's hepatitis C condition. (Id. at ¶ 2qqqqqq).

On April 19, 2005, Plaintiff underwent successful surgery to have his gangrenous gallbladder removed.  The physician noted that Plaintiff would require a hospital stay of 7-10 days, due to the high mortality risk.  (Id. at ¶ 2ssssss).  On April 20, 2005, Defendant Beam entered a notation in Plaintiff's medical record indicating that Interferon and Ribavirin would be discontinued. (Id. at ¶ 2uuuuuu).

On April 27, 2006, Plaintiff was discharged from the hospital and returned to FCI-McKean.  At the time of his discharge, Plaintiff was eating solid food and his surgical incision was healing well.  The discharge instructions indicated that Plaintiff was to follow a low fat diet and do no heavy lifting. (Id. at ¶ 2bbbbbbb).

On May 5, 2005, Plaintiff was seen by Defendant Beam in the Chronic Care Clinic, and reported that he felt better and was experiencing "scant abdominal pain."  After examination, he was assessed with satisfactory post-operation cholecystectomy off Interferon/Ribavirin. (Id. at ¶ 2eeeeeee).  On May 12, 2005, Plaintiff's treating physician from Bradford Regional Medical Center performed a post-operation check-up, at which it was noted that Plaintiff "was moving well and looked good." (Id. at ¶ 2fffffff).

On May 19, 2005 and May 25, 2005, Plaintiff submitted separate written requests to Defendant Beam for blood work for his hepatitis C status and examination of the lump in his abdomen to make sure it was not cancerous.  In a written response to each request, Defendant Beam indicated that the blood tests had been ordered and that the lump would be examined on May 27, 2005.  Defendant Beam further explained that the lump was not cancerous and that the treatment for hepatitis C was suspended 1-3 months to make sure Plaintiff was healed from the

surgery. (Id. at ¶¶ 2gggggggg-2hhhhhhh).

On May 27, 2005, Plaintiff was seen by Defendant Beam and reported that he "felt fine." On examination, Defendant Beam noted that Plaintiff's abdomen was healing well.  Defendant Beam also opined that the lump Plaintiff felt in his left upper quadrant was his ribs. (Id. at ¶ 2iiiiiii).  On May 31, 2005, a liver profile was conducted, the results of which indicated that Plaintiff's ALT level was 73 (reference range 11-66). (Id. at ¶ 2jjjjjjj).  On June 16, 2005, Plaintiff was transferred to USP Lewisburg. (Id. at 2mmmmmmm).[4]

### C.    Standards of Review

#### 1.    Subject Matter Jurisdiction - F.R.C.P. 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the complaint as deficient on its face, the Court must take all allegations in the complaint as true. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891(3d Cir. 1977).  However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. at 891.  See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3rd Cir. 2000);  Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).

In Mortensen, the Third Circuit delineated the standard of review to be used in a 12(b)(1) motion, as opposed to a motion under 12(b)(6), stating:

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects.  Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. . . .

---

[4]

Since Plaintiff's claims pertain solely to his medical treatment at FCI-McKean, there is no need to recite his medical history after his transfer to USP Lewisburg.

> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different.  At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56 . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

549 F.2d 884, 891.   Accordingly, no presumptive truthfulness attaches to Plaintiff's allegations regarding subject matter jurisdiction.


### 2.    Motion to Dismiss

    A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

    Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974).  However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat

<u>Factory Securities Litigation</u>, 114 F.3d 1410, 1429-30 (3d Cir.1997).  Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.  <u>See</u> <u>Swierkiewicz</u>.


### 3.    Summary Judgment

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  <u>Id.</u>

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  <u>See</u> Fed.R.Civ.P. 56(c); <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Country Floors, Inc. v. Partnership Composed of Gepner and Ford</u>, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact ◁o demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  <u>Schoch v. First Fidelity Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990) <u>quoting</u> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  <u>Matsushita Elec. Indus. Co. v Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-

movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

## 4.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "‹beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe

all allegations in a complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d

Cir.1997).  <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P.

12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir.

1990)(same).


### D.    Subject Matter Jurisdiction and the Federal Tort Claims Act

The Federal Tort Claims Act (FTCA) grants jurisdiction to the federal courts to hear

suits against the United States Government for torts committed by its employees while in the

scope of their employment.  <u>See</u> 28 U.S.C. § 2675(a).  The FTCA allows federal inmates to sue

the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674.  The FTCA

specifically requires an initial presentation of the claim to the appropriate federal agency and a

final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit.  <u>See</u>

<u>Deutsch v. United States</u>, 67 F.3d 1080, 1091 (3d Cir. 1995).  This requirement is set forth in 28

U.S.C. § 2675(a)[5]:

> An action shall not be instituted upon a claim against the United States
> for money damages for injury or loss of property or personal injury or
> death caused by the negligent or wrongful act or omission of any employee
> of the Government while acting within the scope of his office of employment,
> unless the claimant shall have first presented the claim to the appropriate
> Federal agency and his claim shall have been finally denied by the agency in
> writing and sent by certified or registered mail.  The failure of an agency to
> make final disposition of a claim within six months after it is filed shall, at
> the option of the claimant any time thereafter, be deemed a final denial of
> the claim for purposes of this section.

Thus, presentation of an administrative claim in accordance with 28 U.S.C. § 2675(a) is

"a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against

---

[5]

Prior to 1996, FTCA claimants had the option of filing suit in federal court without first presenting their claims to
the appropriate federal agency.  Because the vast majority of these claims were ultimately settled before trial,
however, the Department of Justice proposed that Congress amend the FTCA to "requir[e] all claims to be
presented to the appropriate agency for consideration and possible settlement before a court action could be
instituted.  This procedure would make it possible for the claim first to be considered by the agency whose
employee's activity allegedly caused the damage....  Since it is the one directly concerned, it can be expected that
claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible
expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S. Code Cong. &
Admin. News 1966, pp. 2515, 2517.

the government under the FTCA." <u>Valenzuela v. Thrifty Rent-A-Car</u>, 1995 WL 708109, at *3 (E.D.Pa. Nov. 20, 1995). <u>See also</u> <u>McNeil v. United States</u>, 508 U.S. 106 (1993)(FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies); <u>Livera v. First Nat. State Bank</u>, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of administrative remedies is a jurisdictional requirement that cannot be waived and must be strictly construed). An administrative claim is deemed "presented" when the federal agency receives written notification of the alleged injuries accompanied by a claim for money damages set forth in a sum certain. 28 U.S.C. § 14.2; <u>see also</u> <u>Bialowas v. United States</u>, 443 F.2d 1047, 1049 (3d Cir. 1971).

Defendants argue that Plaintiff has not filed an administrative claim with the Federal Bureau of Prisons ("B.O.P.") regarding his claim that Defendants were medically negligent in their treatment of his gallbladder problems and the growth on the side of his stomach, and, therefore, Plaintiff has failed to exhaust his administrative remedies with regard to such claim in accordance with the FTCA's requirements.[6] In support of this argument, Defendants have submitted the Declaration of Joyce Horikawa, senior Attorney Advisor in the Northeast Regional Office of the B.O.P. ("Horikawa Declaration"), in which Ms. Horikawa declares that she conducted a thorough search of the B.O.P.'s records and found that Plaintiff "has not filed any administrative tort claims with the [BOP] in which he complained of negligent medical treatment for his gallbladder and/or a lump, mass, or lipoma on the side of his stomach or abdomen...." (Horikawa Declaration attached as Exhibit 1 to Document # 25, Defendants' Brief, at ¶ 5).

Plaintiff has not presented any evidence to contradict Ms. Horikawa's Declaration. As a result, this Court finds that Plaintiff has failed to exhaust his administrative remedies in accordance with 28 U.S.C. § 2675(a), and this Court lacks subject matter jurisdiction to consider

---

[6] Defendants have conceded that Plaintiff exhausted his administrative remedies with regard to his FTCA claim of medical negligence related to the treatment of his hepatitis C condition. (<u>See</u> Document # 25, Defendants' Brief, at p. 25 n. 6).

Plaintiff's FTCA claims of medical negligence related to the treatment of his gallbladder problems and the growth on the side of his stomach.

       **E.     Exhaustion Requirement - Bivens Claims**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

<u>Id.</u>

No analysis of exhaustion may be made absent an understanding of the administrative process available to federal prisoners. The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. <u>Id.</u> The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

The requirements that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. <u>Porter v. Nussle,</u> 534 U.S. 516 (2002). <u>See</u> <u>also</u> <u>Concepcion v. Morton,</u>

15

306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative

exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S.

140, 144 (1992).  Thus, federal courts are barred from hearing a claim if a plaintiff has failed to

exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL

2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).  However, a plaintiff's failure to

exhaust his administrative remedies does not deprive the district court of subject matter

jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear

majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply

with the section would deprive federal courts of subject matter jurisdiction.").

      The Third Circuit has held that a plaintiff need not affirmatively plead exhaustion, but

that exhaustion is an affirmative defense which is waived if not properly presented by a

defendant.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA

requires pleading exhaustion with particularity," while construing the PLRA requirements in

light of the recent Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506

(2002)).

      The exhaustion requirement is not a technicality, rather it is federal law which federal

district courts are required to follow.  Nyhuis, 204 F.3d at 73 (by using language "no action shall

be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the

administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)

citing Nyhuis, 204 F.3d at 78. There is, however, language in *Nyhuis* reflecting the Circuit's

"understanding that compliance with the administrative remedy scheme will be satisfactory if it

is substantial."  Nyhuis, 204 F.3d at 77-78.  The Third Circuit has not yet fully explored the

meaning of "substantial compliance": "Whatever the parameters of 'substantial compliance'

referred to [in *Nyhuis*], it does not encompass a second-step appeal five months late nor the

filing of a suit before administrative exhaustion, however late, has been completed."  Ahmed,

297 F.3d at 209.

      Defendants argue that Plaintiff has failed to exhaust his administrative remedies on his

Bivens claim alleging that Defendants were deliberately indifferent to his gallbladder problems

and the growth on the side of his stomach, in violation of his Eighth Amendment rights.[7]  In support of this argument, Defendants have submitted the Horikawa Declaration, in which Ms. Horikawa certifies that Plaintiff "has not filed a singe [sic] administrative remedy request or appeal in connection with the medical treatment or testing connected with either a gallbladder problem or a growth, mass, or lipoma on the side of his stomach or abdomen." (Horikawa Declaration attached as Exhibit 1 to Document # 25, Defendants' Brief, at ¶ 9).

Once again, Plaintiff has provided no documentary evidence contradicting Ms. Horikawa's Declaration.  As a result, Plaintiff's Eighth Amendment <u>Bivens</u> claims alleging that Defendants were deliberately indifferent to his gallbladder problems and the growth on the side of his stomach, are not properly before this Court and judgment should be granted in favor of Defendants on such claims.

### F.    FTCA Claim vs. Individual Defendants

In their motion, the individual Defendants argue that Plaintiff cannot proceed with his FTCA claim against them because they are not proper parties under the FTCA.  The Court agrees.  Although the FTCA provides a limited waiver of sovereign immunity for certain torts committed by federal employees, the United States is the only proper defendant in an action brought under the FTCA. 28 U.S.C. § 2679; <u>see</u>, <u>e.g.</u>, <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 418 (6th Cir. 1998); <u>Kennedy v. United States Postal Serv.</u>, 145 F.3d 1077, 1078 (9th Cir. 1998); <u>Mars v. Hanberry</u>, 752 F.2d 254, 255 (6th Cir. 1985).  Thus, Plaintiff's remaining FTCA claim against the individual Defendants, alleging medical negligence related to the treatment of his hepatitis C condition, should be dismissed.

---

[7]

Defendants have conceded that Plaintiff has exhausted his administrative remedies with regard to his <u>Bivens</u> claim alleging that Defendants were deliberately indifferent to his hepatitis C condition, in violation of his Eighth Amendment rights. (<u>See</u> Document # 25, Defendants' Brief, at p. 12 n. 2).

### G.    Bivens Claim - Deliberate Indifference to Hepatitis C Condition

Plaintiff claims that Defendants Beam, Smith, Olson, LaManna, and Sherman acted with deliberate indifference toward Plaintiff's hepatitis C condition, in violation of his Eighth Amendment rights.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[8] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

In his amended complaint, Plaintiff has asserted that the individual Defendants showed deliberate indifference to his hepatitis C condition by refusing to treat him with the prescription medications Interferon and Ribavirin during the period from September 22, 2003, to the end of September 2004, and by refusing to perform a liver biopsy until August 2004. (Amended

---

[8]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Complaint at ¶¶ 13-24).

Plaintiff's medical records indicate that Plaintiff was placed on FCI-McKean's chronic care list as early as September 16, 2003, for treatment and monitoring of his hepatitis C condition. (Bussanich Declaration at ¶ 2c). Since that time, Plaintiff was seen by FCI-McKean's medical staff and, in particular, Defendant Beam, on, at least, a monthly basis from September 2003 through September 2004, when Plaintiff was administered his first Interferon/Ribavirin treatment. During this time, Plaintiff underwent a liver function test on October 10, 2003 (Id. at ¶ 2m); a hepatitis C battery, and hepatitis A and B serotology tests on November 17, 2003 (Id. at ¶ 2y); a hepatitis A vaccination on January 5, 2004 (Id. at ¶ 2kk); liver profile tests on February 12, 2004, and May 12, 2004 (Id. at ¶¶ 2mm and 2qq); a complete metabolic test, genotype test, Ferritin test, and viral load test on July 19, 2004 (Id. at ¶¶ 2tt-2ww); and a liver biopsy on August 24, 2004 (Id. at ¶ 2ccc). Thereafter, Plaintiff was treated and tested on a weekly basis until he was transferred to USP Lewisburg on June 16, 2005.

In short, the sheer magnitude of the medical records in this case, evidencing continual treatment and monitoring of, and communication with, Plaintiff regarding his hepatitis C condition, belies Plaintiff's claim of deliberate indifference. Moreover, Plaintiff's complaints regarding the delay in receiving Interferon treatment and a liver biopsy were answered by Defendant Beam on more than one occasion. In particular, Plaintiff was informed by Defendant Beam that, in accordance with BOP guidelines, Plaintiff's ALT levels would be monitored for a period of time before determining whether Interferon treatment and a liver biopsy were necessary. (Bussanisch Declaration at ¶¶ 2ee, 2ll). Although Plaintiff may disagree with this course of treatment, a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

Based on the foregoing, therefore, this Court concludes that Plaintiff's Eighth Amendment deliberate indifference claims against the individual Defendants should be dismissed, as a matter of law.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' partial motion to dismiss or, in the alternative, partial motion for summary judgment [Document # 24], be granted, and the following claims should be dismissed from this case:

1.    Plaintiff's FTCA claims against the individual Defendants;

2.    Plaintiff's FTCA claim against the United States alleging medical negligence regarding the treatment of his gallbladder problems and the growth on the side of his stomach; and

3.    Plaintiff's Eighth Amendment <u>Bivens</u> claims against the individual Defendants.

As a result, the only claim that should remain pending in this case is Plaintiff's FTCA claim against the United States alleging medical negligence regarding the treatment of his hepatitis C condition.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C)), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  May 14, 2007

cc:    The Honorable Sean J. McLaughlin
       United States District Judge

20