IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD L. MOSHIER, JR | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 05-180(ERIE) |
| | ) | |
| v. | ) | JUDGE MCLAUGHLIN |
| | ) | MAGISTRATE JUDGE BAXTER |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Electronically Filed |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

*Pro se* prisoner Donald L. Moshier, Jr. originally filed this *pro se* lawsuit against the United States of America and five (5) individual defendants, alleging tort and constitutional claims based on allegedly inadequate medical care that he received during his incarceration at a federal prison in McKean County, Pennsylvania ("FCI McKean"). Plaintiff's only remaining claim, however, is against the United States for medical malpractice pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*. In particular, plaintiff's remaining claim alleges that the medical staff at FCI McKean provided negligent medical treatment with regard to his Hepatitis C virus. As a result of the alleged medical malpractice, the Amended Complaint requests $100,000.00 in actual damages, plus costs and any other relief the Court deems appropriate. (*See* Am. Compl., ¶ 40(B)-(D)).

As detailed below, however, the Court should grant summary judgment in favor of the United States because plaintiff's medical malpractice claims fails to conform to the standards for such a claim under Pennsylvania law. Specifically, the law in Pennsylvania is clear that, in a case such as this involving complex medical issues, a plaintiff cannot sustain a claim for medical malpractice without producing a sufficient expert report or testimony. Although this Court

entered a Minute Entry on March 22, 2007 requiring discovery to be completed by July 31, 2007 (*see* Docket No. 34), plaintiff has yet to produce an expert report or otherwise identify an expert who will testify in support of his medical malpractice claims.  Because plaintiff has failed to provide the requisite expert report or testimony within the discovery period, he has failed to create a genuine question of material fact as to his medical malpractice claims.

Moreover, summary judgment should be granted in favor of the United States because plaintiff cannot establish the requisite elements of a breach of the standard or care, or a causal connection between any such breach and the alleged injury.  Plaintiff cannot demonstrate a breach because the undisputed medical records show that the medical staff at FCI McKean treated plaintiff in accordance with the applicable medical guidelines.  But even if plaintiff could show that defendant allegedly denied or delayed treatment for his Hepatitis C, he cannot establish that such denial or delay caused his cirrhosis.  Medical records show that plaintiff has had cirrhosis since at least 1999 – and may have had it as long as twenty years ago – and defendant's expert has testified that cirrhosis is a process that takes decades rather than years to develop.

## PROCEDURAL HISTORY

In his Amended Complaint, plaintiff originally alleged a claim against the United States and the individual defendants pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, as well as an FTCA claim.  (*See id.*, ¶¶ 37-38).  Both claims were premised on the treatment of his Hepatitis C, and defendants' alleged denial of adequate and/or prompt treatment for plaintiff's gallbladder problems and a growth on the side of his stomach.  (*See e.g., id.,* ¶¶ 26-38).  However, in a Report and

Recommendation dated May 15, 2007, this Court recommended granting defendants' partial motion to dismiss or, in the alternative, partial motion for summary judgment. (*See* Docket No. 40). Specifically, this Court recommended dismissing the following claims: (I) plaintiff's FTCA claims against the individual defendants; (ii) plaintiff's FTCA claim against the United States alleging medical negligence regarding the treatment of his gallbladder problems and the growth on the side of his stomach; and (iii) plaintiff's Eighth Amendment *Bivens* claims against the individual defendants. (*See id.* at p. 20). The District Court adopted the Report and Recommendation in a Memorandum Order dated June 11, 2007. (*See* Docket No. 43).

Consequently, plaintiff's only remaining claim is against the United States for medical malpractice related to the treatment of his Hepatitis C. In particular, defendant's alleged negligence consisted of an alleged delay in providing Interferon/Ribavirin treatment and refusing to perform a liver biopsy after he was diagnosed with Hepatitis C and, after such treatment was initiated, by allegedly negligently administering the antiviral therapy. (*See* Donald L. Moshier deposition transcript, Ex. 2, at 75-77, 94-95).[1] According to plaintiff, he developed "Hepatitis C cirrhosis," headaches, stress, and sickness in his stomach as a result of the United States' alleged negligence. (*See id.* at 80-83).[2]

---

[1] Citations to "(Ex.__)" refer to the exhibit numbers of documents contained in a separate Appendix of Exhibits in Support of the United States' Motion for Summary Judgment, which is being filed simultaneously with this Brief.

[2] Plaintiff also alleges that his gallbladder problems were related to the alleged delay in treating his Hepatitis C. (*See id.* at 77-78, 82). As discussed, however, plaintiff's claims related to his gallbladder problems have already been dismissed. Moreover, plaintiff admits that he has no evidence supporting this theory. (*See id.* at 78).

## STATEMENT OF FACTS

In the interest of judicial economy, the United States incorporates by reference its Concise Statement of Material Facts in Support of its Motion for Summary Judgment, and separate Appendix of Exhibits in Support of the United States' Motion for Summary Judgment.

## APPLICABLE LEGAL STANDARD

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). That is, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The plaintiff cannot merely rest on allegations in his complaint. *Id.* at 324. To defeat a motion for summary judgment, "the nonmoving party must adduce more than a mere scintilla of evidence in his favor." *Williams v. Borough of Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

## ARGUMENT

The FTCA allows private individuals to bring suits against the United States for torts committed by its employees acting within the scope of their employment. *See Bialowas v. United States,* 443 F.2d 1047 (3d Cir. 1971). Under this statute, the United States may be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The liability of the United States is determined by the law of the state where the tortious conduct occurred. *United States v. Muniz*, 374 U.S. 150, 152 (1963) (citing 28 U.S.C. §1364(b)). Because FCI McKean is located in Pennsylvania, the United States' liability in this action will be determined by the laws of negligence and medical malpractice in

Pennsylvania. *See, e.g., Wooding v. United States,* Civil Action No. 05-1681, 2007 WL 951494, at *3, n.6 (W.D. Pa. March 27, 2007) (Ambrose, C.J.).

To establish a *prima facie* case of medical malpractice under Pennsylvania law, the burden falls on the plaintiff to produce evidence establishing each of the following elements: "(1) a duty or obligation recognized by law, (2) breach of that duty by defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant." *Hill v. LaManna*, No. 03-323E, 2007 WL 777077, at *12 (W.D. Pa. March 12, 2007) (McLaughlin, J. and Baxter, M.J.) (citing *Corrigan v. Methodist Hosp.*, No. 94-CV-1478, 2002 WL 31392261, at *7 (E.D. Pa. November 7, 2002)). *See also Mitzelfelt v. Kamrin,* 584 A.2d 888, 891 (Pa. 1990)); *Maresca v. Mancall,* 135 Fed. Appx. 529, 531 (3d Cir. 2005) (per curiam) (citing *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003)). As detailed below, plaintiff cannot establish the requisite elements of breach or causation for multiple reasons.

I.  **BECAUSE PLAINTIFF HAS FAILED TO PROVIDE ANY EXPERT REPORT OR TESTIMONY, HE CANNOT SUSTAIN A MEDICAL MALPRACTICE CLAIM UNDER PENNSYLVANIA LAW**

The elements of breach and causation must generally be proven by expert testimony because medical malpractice claims usually encompass matters not within the ordinary knowledge and experience of lay persons. "Allegations of medical malpractice generally may not be proven without the testimony of 'an expert witness who will testify, to a reasonable degree of medical certainty, that the act of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'" *Gindraw v.*

*Dendler,* 967 F. Supp. 833, 837 (E.D. Pa. 1997) (quoting *Mitzelfelt,* 584 A.2d at 892); *see also Wooding,* 2007 WL 951494, at *3 (citing cases); *Hill,* 2007 WL 777077, at *12 (citing cases).[3]

In this case, plaintiff has yet to produce an expert report or identify an expert who will testify in support of his case, even though discovery closed on July 31, 2007. Plaintiff's testimony – in both written discovery answers and during his recent deposition – confirm that he has obtained no expert report or testimony. In Interrogatory No. 7, defendant asked plaintiff to identify each expert witness who he may call to testify at trial in support of his action, and to provide certain information for each such expert witness; in response, plaintiff stated that "[a]t this time I do not have any expert witness' [sic] to testify and support me in this claim . . . ." (*See* Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production of Documents, Ex. 1, at No. 7). And during his deposition on July 30, 2007, plaintiff confirmed that he has no expert, and has not had any discussions with expert witnesses to testify on his behalf. (*See* Donald L. Moshier deposition transcript, Ex. 2, at 101-102) ("I have no expert.").[4]

---

[3]There is a "very narrow exception" to the requirement of expert testimony in medical malpractice actions, which applies only where "the matter is so simple, or the lack of skill or care so obvious, as to be within the range of experience and comprehension of even non-professional persons." *See Toogood,* 824 A.2d at 1145 (quoting *Hightower-Warren v. Silk,* 698 A.2d 52, 54 n.1 (Pa. 1997)). This exception is also conceptualized by the doctrine of *res ipsa loquitur. See Toogood,* 824 A.2d at 114. In this case, however, plaintiff is required to prove that the treatment he received at FCI McKean for his Hepatitis C deviated from acceptable medical standards, and that such alleged deviation caused the harm of which he complains. Because this determination involves complex issues of medical care, the "very narrow exception" described in *Toogood* does not apply to this case.

[4]Although not required for the purposes of this argument, the United States submits an expert report from Barry Kisloff, a physician specializing in gastroenterology. (*See* Curriculum Vitae of Barry Kisloff, M.D., FACP, Ex. 4). After reviewing plaintiff's medical records, Dr. Kisloff concluded, "to a reasonable degree of medical certainty, that Mr. Moshier's chronic hepatitis C was diagnosed and treated in an entirely appropriate manner consistent with the medical standards of care for this disease." (Expert Report of Barry Kisloff, M.D., FACP, Ex. 3).

In summary, the law in Pennsylvania is clear that a plaintiff must establish that his medical care was negligent, and that such negligence was the proximate cause of his injuries. *See Toogood*, 824 A.2d at 1145.  In a case involving complex medical issues such as this, the only way to meet this burden is through expert testimony that demonstrates to a reasonable degree of medical certainty that the acts alleged deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.  *See Mitzelfelt,* 584 A.2d at 892; *see Strain v. Ferroni,* 592 A.2d 698, 701 (Pa. Super. Ct. 1991) (stating that the Pennsylvania Supreme Court has expressly held that, in malpractice cases, "a jury will not be permitted to find negligence without expert testimony to establish variance from accepted medical practice.")  (citing *Chandler v. Cook,* 265 A.2d 794, 796 (Pa. 1970)).  Because it is undisputed that plaintiff has no expert report or testimony in this case, summary judgment should be granted in defendant's favor.  *See, e.g., Maresca,* 135 Fed. Appx. at 531 (affirming summary judgment in favor of the defendant because the plaintiff's expert report did not articulate an opinion to any degree of medical certainty that the defendant was negligent or caused the plaintiff's injury); *Wooding,* 2007 WL 951494, at * 5 (granting the United States' motion for summary judgment as to the plaintiff's medical malpractice claim, because the plaintiff failed to provide the requisite expert testimony); *Osorio v. United States,* No. 04-259E, 2007 WL 2008498 (W.D. Pa. July 5, 2007) (Gibson, J. and Pesto, M.J.) (same); *Wilson v. Wigen,* Nos. CIV. A. 96-0620, CIV. A. 96-1241, 1998 WL 199649, at *4 (E.D. Pa. April 24, 1998) (granting summary judgment because the plaintiff presented no expert medical evidence).

## II. PLAINTIFF CANNOT ESTABLISH A BREACH OF THE STANDARD OF CARE, BECAUSE THE MEDICAL RECORDS SHOW THAT HE WAS TREATED IN ACCORDANCE WITH THE APPLICABLE GUIDELINES

Plaintiff alleges that the United States was negligent because the medical staff at FCI McKean refused or delayed treating him with the prescription medications Interferon and Ribavirin from September 22, 2003 until such antiviral therapy was initiated on October 28, 2004, and that they refused to perform a liver biopsy until August 2004. (*See* Am. Compl., ¶¶ 13-24); (Donald L. Moshier deposition transcript, Ex. 2, at 75-77).[5] As discussed below, however, there was no such delay or denial. After the medical staff at FCI McKean were notified of plaintiff's Hepatitis C diagnosis on September 16, 2003, they treated him in accordance with the Federal Bureau of Prisons Clinical Practice Guidelines For the Prevention and Treatment of Viral Hepatitis (February 2003) ("BOP Guidelines"), which required repeated monitoring and testing to ensure that he was an appropriate candidate before providing antiviral therapy.

On October 10, 2003, medical staff at FCI McKean collected a blood sample from plaintiff to check his ALT levels. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2m).[6] Indeed, the BOP Guidelines support monitoring ALT levels before proceeding to a liver biopsy or

---

[5]Plaintiff also alleges negligence based on the reduction of his Interferon/Ribavirin dosage, and the alleged failure to provide 24 weeks of antiviral therapy. (Donald L. Moshier deposition transcript, Ex. 2, at 75, 94-95). But plaintiff has no evidence supporting his belief that his dosage should not have been reduced. (*See id.* at 95-96); (Expert Report of Barry Kisloff, M.D., FACP, Ex. 3 at 2) (stating that plaintiff's treatment included "[t]he modification of medication dosage schedules consistent with bone marrow function assessments by appropriately timed monitoring of total white cell, neutrophile and platelet counts as well as hemoglobin and hematocrit testing."). Nor do the medical records support plaintiff's allegation that he did not receive the full course of therapy. (*See id.*); (*see generally*, Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2nnn through 2hhhhhh).

[6]ALT is a liver enzyme that is tested to determine if a patient has liver damage. (*See* Docket No. 40, at 4, n.3).

Interferon/Ribavirin treatment. Under the heading "[i]dentifying candidates for liver biopsy," the BOP Guidelines state that "[i]nmates with chronic HCV infection should be periodically evaluated and have ALT levels monitored to help determine if liver biopsy is warranted in accordance with the following . . . ." (BOP Guidelines, Ex. 6, at 42). The guidelines go on to explain that, "[i]nmates with ALT levels two times the upper limit of normal or greater should have ALT measurements repeated at least twice over a 6 month period. Inmates with persistent elevations in ALT levels > twice normal should be referred directly for liver biopsy unless antiviral therapy is contraindicated." (*Id.* at 42).

On October 21, 2003, medical staff at FCI McKean received the results from plaintiff's Hepatic Function Panel, which indicated that his ALT level was more than twice the upper limit of normal. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2m). In accordance with the BOP Guidelines, plaintiff's ALT levels were again tested on February 12, 2004 and found to be above normal, but less than twice the upper limit of normal (115 compared to an upper limit of 66). (*See id.,* ¶ 2mm). Although plaintiff was scheduled to have his ALT levels checked for the third time in a six (6) month period on April 21, 2004, he failed to report for his chronic care clinic appointment. (*See id.,* ¶ 2pp). On May 17, 2004, FCI McKean staff received plaintiff's blood test results indicating that plaintiff's ALT level was more than twice the upper limit of normal (129 compared to upper limit 66). (*See id.,* ¶ 2qq). Because plaintiff's first ALT level was confirmed by two (2) more elevated ALT measurements, Herbert Beam, M.D., Staff Physician at FCI McKean, appropriately forwarded a liver biopsy referral to the Utilization Review Committee ("URC") on May 21, 2004. (*See id.,* ¶ 2rr). Plaintiff was approved for a liver biopsy by the URC on July 15, 2004. (*See id.,* ¶ 2ss).

About a month after the URC approved plaintiff for his liver biopsy, a CT guided liver biopsy was performed on August 24, 2004. (*See id.,* ¶ 2bbb through 2ccc). His liver was found to have the consistency of wood, and he was diagnosed with cirrhosis of the liver, micro-nodular pattern, active. (*See id.,* ¶ 2ccc). The day after Dr. Beam reviewed the biopsy report, he had a long discussion with plaintiff regarding the results, the risks, the psychological effects and the bone marrow suppression associated with Interferon treatment. (*See id.,* ¶¶ 2fff through 2ggg). After plaintiff decided to have the treatment, Dr. Beam referred plaintiff for the requisite psychological clearance. (*See id.,* ¶ 2ggg). Plaintiff received psychological clearance within two (2) weeks of that discussion, and his Interferon/Ribavirin treatment was approved on October 7, 2004. (*See id.,* ¶¶ 2hhh, 2kkk). Plaintiff received his first dosage of Interferon/Ribavirin on October 28, 2004. (*See id.,* ¶ 2nnn). In summary, it took less than two (2) months between Dr. Beam's review of the liver biopsy results on September 7, 2004, and the initiation of Interferon/Ribavirin treatment.

     In accordance with the BOP Guidelines, plaintiff was appropriately referred for a liver biopsy after his elevated ALT level was confirmed twice in about a six (6) month period.[7] Likewise, plaintiff was referred for Interferon/Ribavirin treatment after the results of the liver biopsy were reviewed, and plaintiff received psychological clearance. Indeed, the BOP Guidelines provide that "[a]ntiviral therapy [Interferon/Ribavirin treatment] is recommended for patients with chronic hepatitis C and a liver biopsy with portal or bridging fibrosis and at least

---

[7]Although plaintiff alleges that his ALT levels were checked more than three (3) times before he was referred for a liver biopsy, he has produced no evidence to support this statement, and it is not supported by the medical records. (*See* Donald L. Moshier deposition transcript, Ex. 2, at 73-74); (Decl. of a. Bussanich, M.D., Ex. 5, ¶¶ 2m, 2mm and 2qq).

moderate inflammation and necrosis." (BOP Guidelines, Ex. 6, at 44). Because the medical staff at FCI McKean adhered to the BOP Guidelines, they could not have practically hardly have initiated the antiviral therapy any sooner than they did. Indeed, defendant's expert Barry Kisloff, M.D., FACP, has opined that the "monitoring over time" of plaintiff's ALT levels was:

> in accordance with all current recommendations as to the treatment of chronic hepatitis C in order to document the chronic nature of the active and ongoing liver necrosis as well as to provide a basis for treatment prognosis as medication for the therapy of chronic hepatitis C is both less likely to be needed or succeed in those patients with ALT levels < twice the ULN.

(Expert Report of Barry Kisloff, M.D., FACP, Ex. 3, at 2). Accordingly, there was no breach of the standard of care.

### III.    NOR CAN PLAINTIFF ESTABLISH CAUSATION, BECAUSE THE MEDICAL RECORDS SHOW THAT HE HAS HAD CIRRHOSIS SINCE AT LEAST 1999

Even if plaintiff could establish a denial or delay in initiating antiviral therapy or performing a liver biopsy, he cannot show that such delay or denial caused his alleged injuries. Specifically, plaintiff alleges that he developed cirrhosis of the liver as a result of the mere eleven (11) month delay between the date that medical staff at FCI McKean became aware that he had Hepatitis C (September 16, 2003), and the date of the liver biopsy (August 24, 2004). (*See* Donald L. Moshier deposition transcript, Ex. 2, at 80-81). Plaintiff admitted, however, that he does not know how long it takes for cirrhosis to develop, and he has no support for his belief that his cirrhosis developed over this period of less than a year. (*See id.* at 81-82). Moreover, Dr. Kisloff's expert report establishes that cirrhosis is not a condition that can develop over such a short period of time. Specifically, it states that "the advanced stage of liver diseased noted on the 8/24/04 biopsy . . . was the product of decades of liver disease rather than the almost twelve

month frame from initial request for evaluation for possible hepatitis C virus infection (9/2/03) to the time of liver biopsy (8/24/04). (*See* Expert Report of Barry Kisloff, M.D., FACP, Ex. 3, at 2). Dr. Kisloff's conclusion is further supported by medical records produced by plaintiff, which demonstrate that he was diagnosed with cirrhosis as early as June 6, 1999. (*See id.*); (Cayuga Medical Center at Ithaca, Operative Note (6/6/99), Ex. 7, at 2). It is also consistent with plaintiff's repeated admissions that he has probably had the virus for twenty (20) years. (See Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2t); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 100-01); (Donald L. Moshier deposition transcript, Ex. 2, at 62); (Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production of Documents, Ex. 1, at Answer No. 16) ("It is an established fact that in the very beginning the Plaintiff was interviewed by prison staff, he stated he <u>may</u> have contacted hepatitis C, some twenty-years prior."). Because "the process leading to cirrhosis" in a patient such as plaintiff "involves decades rather than months," (*see* Expert Report of Barry Kisloff, M.D., FACP, Ex. 3, at 2), an alleged eleven (11) month delay could not have caused plaintiff to develop cirrhosis.[8]

---

[8] In his deposition, plaintiff attempted to draw a distinction between "alcohol cirrhosis" and "hepatitis C cirrhosis." (*See* Donald L. Moshier deposition transcript, Ex. 2, at 80-81). He failed, however, to provide any support for such a distinction. (*See* Expert Report of Barry Kisloff, M.D., FACP, Ex. 3, at 2).

## CONCLUSION

For all the foregoing reasons, the Court should grant the United States' motion for summary judgment and enter judgment in defendant's favor as to each of plaintiff's claims.

    Respectfully submitted,

    MARY BETH BUCHANAN
    United States Attorney

    s/ Megan E. Farrell
    MEGAN E. FARRELL
    Assistant U.S. Attorney
    Western District of PA
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219
    (412) 894-7429
    PA I.D. No. 76972

    Counsel for defendant the United States of America

Dated: October 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October, 2007, a true and correct copy of the within United States' Motion for Summary Judgment, Brief in Support thereof, United States' Concise Statement of Material Facts in Support of its Motion for Summary Judgment, and Appendix of Exhibits in Support of the United States' Motion for Summary Judgment were served via first-class U.S. mail upon the following:

> Donald L. Moshier, Jr.
> No. 10924-052
> FCI Schuylkill
> P.O. Box 759
> Minersville, PA 17954

>> s/ Megan E. Farrell
>> MEGAN E. FARRELL
>> Assistant United States Attorney