# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD L. MOSHIER, JR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-180(ERIE) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | JUDGE MCLAUGHLIN |
| JOHN J. LAMANNA (Former Warden), | ) | MAGISTRATE JUDGE BAXTER |
| DOCTOR BEAM (Doctor at FCI McKean), | ) | |
| DOCTOR OLSON (Doctor at FCI McKean),) | | |
| DOCTOR SMITH (Health Administrator), | ) | |
| and JAMES SHERMAN | ) | |
| (FCI McKean Warden), | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST SET OF INTERROGATORIES
## AND REQUESTS FOR PRODUCTION OF DOCUMENTS

To:    Donald L. Moshier, Jr.
       No. 10924-052
       USP Lewisburg
       P.O. Box 1000
       Lewisburg, PA 17837

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, defendants the

United States of America, John J. LaManna, Herbert Beam, M.D., Dennis Olson, M.D., Rodney

Smith, H.S.A. (incorrectly identified as "Doctor Smith") and James Sherman, by their

undersigned counsel, hereby propound and serve the following First Set of Interrogatories and

Requests for Production of Documents, to be answered fully and under oath within thirty (30)

days from service hereof.

Pursuant to the Local Rules of Court, answers to these Interrogatories should be entered

in the space provided below the particular Interrogatory. If the complete answer requires more

space than provided, it is requested that the remainder of the response be entered on a blank page attached behind the Interrogatory. Moreover, these Interrogatories shall be deemed continuing in nature so that plaintiff has a duty to supplement his answers seasonably, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendants also request that plaintiff produce the designated documents for inspection and copying by defendants within thirty (30) days of service. Production shall take place in the office of the United States Attorney for the Western District of Pennsylvania, 700 Grant St., Suite 4000, Pittsburgh, Pennsylvania 15219.

For purposes of answering these Interrogatories and Requests for Production of Documents, the following Definitions and Instructions are provided:

## DEFINITIONS

A.     "You" or "your" means plaintiff, Donald L. Moshier, Jr., and any person or organization, such as an attorney, spouse, union representative or union organization, acting on behalf of the plaintiff for purposes of the matter under inquiry.

B.     "Person" means any natural person, corporation, partnership, proprietorship, trust, association, group of natural persons or other entity of any nature whatsoever.

C.     "Document" means any written, recorded or graphic material of any kind whether prepared by you or by any other person that is in your possession, custody, or control. The term "document" includes, but is not limited to: contracts; letters; e-mails; telegrams; memoranda; notes; reports; studies; books; records; telephone books or messages; visitor books; calendar or diary entries; drafts; business cards; minutes of meetings, conferences, and telephone or other

-2-

conversations or communications; ledgers; financial statements; photostats; microfilm; microfiche; audio, video, or other magnetically encoded recordings; and computer print-outs. The term also includes electronically or electromagnetically stored data from which information can be obtained either directly or indirectly by translation through detection devices, readers, computer programs, or electronic retrieval and the documentation necessary and sufficient to access the universe of data produced and to interpret the data. The term "document" includes the original document (or a copy thereof if the original is not available) and all copies which differ in any respect from the original or which bear any notation, marking or information not on the original.

D.    "Identify" and all its forms means:

1.    When referring to a document, to state the type of document (e.g., letter, contract, memorandum, etc.), its date, the author(s) and addressee(s) of the document, its title, general subject matter, present location, and name and address of the custodian. Documents to be identified shall include documents which you maintain are destroyed and with respect to which a privilege is or may be claimed.

2.    When referring to a natural person, to state his or her full name, present or last known residence and business addresses, present or last known residence and business telephone numbers, present or last known employer or business affiliation, and present or last known position held.

3.    When referring to any entity other than a natural person, to state its full name and the address of its principal place of business.

4.    When referring to an oral communication, to state the date upon which it occurred, identify the speaker and each other person who was present when it was made, state its

-3-

substance, and identify each document which refers or relates, in whole or in part, to said oral communication.

      5.      When referring to a meeting, conference, event or occurrence, to state the date, duration, location and persons attending or participating in the meeting, conference, event or occurrence.

      E.      "State" means to set forth fully and unambiguously every fact relevant to the answer called for by the Interrogatory, of which you, your agents, or representatives have knowledge.

      F.      "Relate to" means to make a statement about, refer to, discuss, describe, reflect, contain, constitute, identify, or in any way pertain to, in whole or in part.

## INSTRUCTIONS

      A.      The singular form of a noun or pronoun shall be considered to include the plural form of the noun so used and vice versa.  The masculine form of a noun or pronoun shall be considered to include the feminine and neuter gender of the noun or pronoun so used and vice versa.

      B.      "And" and "or" as used herein are terms of inclusion and not exclusion and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory or document request any information or document that might otherwise be construed to be outside its scope.

      C.      In each instance where Interrogatories are answered on information and belief, state the basis for such information and belief.

D.    With respect to each Interrogatory, state whether the information furnished is within the personal knowledge of the person answering and if not, the name of each person to whom the information is a matter of personal knowledge.

E.    Identify each person who assisted, participated or who was relied upon in preparing and supplying any of the information given in the answers to the Interrogatories.

F.    If you refuse to produce any requested document pursuant to a claim of privilege, please submit a certified sworn statement setting forth as to each such document:  (a) the date and subject matter of the document; (b) the names and business positions of its authors and addressees; (c) all persons to whom copies of the document were directed or to whom its contents were disclosed in whole or part; (d) all persons whose signatures, initials or other notations appear on the document; and (e) the basis of the privilege claimed.

G.    If you maintain that any document or record requested or that is related to the subject matter of an Interrogatory has been destroyed, set forth the content of said document, the location of any copies of said document, the date of such destruction and the name of the person who ordered or authorized such destruction.

Further, unless otherwise specified, when reference is made in these Interrogatories and Requests for Production of Documents, the reference is meant to include any and all representatives, employees, agents, officials or other persons in any way affiliated with plaintiff Donald L. Moshier, Jr..

## INTERROGATORIES

1.     State your full name and any other names by which you have been known, your social security number, and each address at which you resided during the period ten (10) years prior to the date your incarceration began (April 26, 2002).

**ANSWER:**  DONALD L. MOSHIER JR.,   aka "Jr." S.S.

Arrest date: May 30, 2001, sentenced April 26, 2002.

Most recent address:

    (a)
    (b)
    (c)
    (d)
    (e)

    (f)
    (g)

2.      Have you ever filed a claim or lawsuit against any person or governmental agency other than in connection with the events alleged in your Amended Complaint?  If so, for each claim or lawsuit, identify the defendant(s), the basis for the claim or lawsuit, and the date and court in which the claim or lawsuit was filed.

**ANSWER**:     Yes, an automobile accident on September 30,1989, sustained permanent back injury. This action was adjudicated in 1995, out of court settlement.

3.    Identify all evidence supporting your claim that your medical care for injuries caused by the events alleged in your Amended Complaint did not meet the standard of care. For each piece of evidence, state the name(s) of all person(s) responsible, and explain how each such person was responsible.

**ANSWER**:

A.    Plaintiff avers the following:

10. Arrived at FCI McKean June 6, 2002;

11. Plaintiff informed prison infirmary in August 2003, that he was sick;

12. Plaintiff tested for Hepatitis-C, found <u>positive</u>;

13. Plaintiff informed staff he must have treatment immediately;

14. <u>Dr. Beam</u> <u>denies</u> Plaintiff's request for treatment on September 22, 2003;

15. <u>Dr. Olson</u>, <u>refused</u> Plaintiff treatment on September 22, 2003, <u>Dr. Smith</u> concurs;

**Evidence**

18. BP-8, authorized by counselor <u>Morello</u>, affirmed for treatment;

19. Plaintiff's BP-9, is <u>denied</u> by <u>Warden LaManna</u> on November 14, 2003;

20. Plaintiff sought Regional Remedy, was <u>denied</u> on December 22, 2003;

21. Plaintiff's BP-11, <u>denied</u>;

22. Plaintiff is <u>denied</u> TorT claim, June 16, 2004;

24. After one year of delays, in september 2004, staff finally determines that Plaintiff is seriously ill and they waited too long to administer Interferin/Ribaviron;

25. In January 2005, Plaintiff's system rejects treatment by Dr. Beam, in the interim Dr. Beam gives Plaintiff one-half 1/2 the original dose of the past (4) months;

26. In February 2005, Plaintiff is in severe pain, with a huge swelling on the left side of his stomach. The defendants told him "not to worry";

27. Into March 2005, Plaintifff cannot hold food down, has loss of appetite, begins to lose weight at a rapid pace. No sleep has become an issue as well;

**\*ATTACHMENT 28-35**

ATTACHMENT  28-35

28. Dr.'s Smith, Olson, prescribe Tylenol;

29. On April 14, 2005, Plaintiff is transported to emergency in area Hospital;

31. Dr. Graham at bradford Hospital remarked to Plaintiff "you almost died"

Exhibit.
        Letter to Dr. Graham at Bradford Hospital- (unanswered).

32. Dr. Graham's prognosis--- immediate surgery for removal of Plaintiff's gallblader, is determined by examination, that infection is rampant throughout Plaintiff's system.

Exhibit. Medical reports-

35. From February 2005, when the so-called "cyst" was located on Plaintiff's abdoman, until his arrival at bradford Hospital this cyst had grown triple in size to that of a golfball.

Exhibit. Medical reports-

4.    Describe in detail all injuries, ailments, or pains that you claim were caused by the

events alleged in your Amended Complaint and, for each such injury, ailment or pain, state the

part(s) of the body so affected, the severity, and how long each lasted.

**ANSWER**  On February 5-6, Plaintiff's ongoing pain accelerated
way beyond discomfort to excruciating pain, evendently from the
cyst blocking food passage into his stomach.Plaintiff complained
that the area around his stomach was very tender to touch, and
could not sleep on that side or sit for any prolonged periods of
time. Walking was difficult. This pain began in early February
and continued till plaintiff was transported to Bradford Hospital.

Toward late February he continued to experience extreme pain
in his middle and right side. However the pain would come and go.
Approximately two months prior, I shown and explained the area
that felt like there was a lump of some sort, and very tender. Dr.
Beam said "don't worry its just the medication making you feel
sick. The medication was so strong it irritated my gallbladder. I
was passing blood in my stool.

I've been experiencing a blurring and loss of vision. My
leg's are getting weaker by the day, swollen and covered with
"liver spots" as Dr. Beam referred them, they ach even while
recumbent. Iam having constant severe headachs, that pulsates in
my temples and the back of my head. I'm tired, have no energy or
strength.

5.    Please describe any ongoing medical problem resulting from the events alleged in

your Amended Complaint.

**ANSWER:**  Plaintiff experiencing a very offensive bad breath, and
taste in his mouth. He still continues to feel pain in the area
of his stomach, even after small amounts of food. (Not junk food),
but nourishing food prepared by the prison kitchen. Evendently or
presumably scar tissue remains, causing a stricture and not allowing
the normal passage of food or liquid. Plaintiff complains of being
"filled up" lack of appetite, avoid's eating for fear of suffering
afterward.

Plaintiff has constant gas, diarrhea, and has developed
hemorrhoids from straining at stool. Still observes traces of
blood in his stool.

6.      Identify each witness who you may call to testify at trial in support of your claim in this action, including hostile witnesses, and for each witness provide the following information:

      a.      His or her full name, residence address and phone number, business address and phone number, occupation, title and, if applicable, Federal Registration number;

      b.      The subject matter of his or her testimony and the substance of all facts or opinions to which each witness is expected to testify; and

      c.      All documents upon which such witness will rely.

**ANSWER:**

    a. Dr.Beam. I'd expect him to be honest. He told me that his hands were tied, or he would give me the treatment (Interferin/ Ribaviron).

    b. Dr. Olson. His testimony which I expect to also be honest, he just passed the buck when it came to making an important decision about my treatment. He told me I was primarily under Dr. Beam's supervision.

    c. Dr. Smith told me practically the same story, that I was under the watchful attention of Dr.Beam.

    As to the facts and opinions of each of these witnesses they are expectedto testify under oath, and what they testify too, depends on what questions the examiner ask's of them! As far as documents go, that depends on what documents they have in their possession.

    d. Mr.Morello, FCI Mckean counselor, whom I filed my BP-8's, I assume he wouldbe truthful,that I was not getting the treatment. He was aware I was gettingthe run-around by allthe medical staff.

**\*ATTACHMENT E-F**

-11-

ATTACHMENT E-F

    e. Dr. Bussanich, cheif medical physcian at USP Lewisburg, responded with a 34 page declaration **Exhibit 2** .  I would assume that if Dr.Bussanich is honest, that he would also be truthful.

    f. Dr. Graham, staff physcian at bradford Hospital. Dr. Graham told me when I was admitted, that I was a very sick man, that I would have been dead in another twenty hours. Also said after questioning me further about what medicine I was taking, that if I had been treated earlier with the proper antibiotics, the infection wouldn't be so well advanced.

James Fowers, inmate No. 20120-068, was Plaintiff's room-mate, he will testify to my illiness, and to the fact I was refused treatment, he will also testify to the fact how the staff at FCI McKean  started retaliating against me for filing on the medical staff.

Donald G. Jackman Jr., Inmate No. 06804-068, inmate at FCI McKean. He will testify to my illiness and how I was refused medical treatment.

G.R. Leacock, inmate No. 02121-052, inmate at USP Lewisburg, will will testify to the fact that Dr. Bussanich did nothing for my Hepatitis C.

Kevin Hody, inmate No. unknown, was a inmate at McKean. We were both in the Special Housing Unit SHU, when I was stricken with pain, and was refused by staff to assist me. He was present at the time I was transported to Bradford Hospital.

Kurtis Armond, inmate at FCI McKean at the interim, now released. His home address: P.O. Box 8105, Zanesville, OH 43702

Anthony Loewell, inmate No. 11015-055, inmate at FCI McKean, Contact address: 4935 Main St. Bemus point, NY 14712 PH: (716) 386-5964.

**ATTACHMENT 11-B**  Witness's continued

Richard Smith, inmate No. 10463-052, former inmate at USP Lewisburg.
Contact Address: 15 Hill Street Keeseville, NY 12944;

Jimmy Craft, inmate at USP Lewisburg, will attest to my illness
and lack of medical care;

Raymond Cornwell, inmate at FCI McKean, # unknown, can be located
by name at the institution;

Darryl Lee Cherry, # unknown, inmate at FCI McKean.

How each expert witness will testify is anyone's guess, Plaintiff
is indigent and cannot afford the luxury of private counsel or
professional investigator/medical expertise. As this examiner/panel
most suredly must be aware of- this is not a level playing field
and most assuredly is balanced in the prison/ doctor's favor,
Plaintiff is a layman at law, is at the caprice whim of prison
administration, and can only tell the truth.

7.    Identify each expert witness who you may call to testify at trial in support of your claim in this action, and for each expert witness provide the following information:

    a.    The subject matter on which the expert is expected to testify;

    b.    The substance of the facts and opinions to which the expert is expected to testify;

    c.    A summary of the grounds for each opinion;

    d.    A curriculum vitae for each expert;

    e.    All supporting documents upon which each expert will rely; and

    f.    All other information required to be provided by Fed. R. Civ. P. 26(a)(2)(B).

**ANSWER:**    At this time I do not have any expert witness' to testify and support me in this claim;

Since I have no experts to bring foreward, I must rely on the truthfulness of the hostile witness's;

Since I do not have the doctor's opinion's, I am unable to serve this examiner/panel with a summary of the defendant's opinion's or rebute any statements made by them, or their counsel;

I have absolutely no idea as to the curriculum vitae of each of the defendants. They have medical degree's hanging in their office's, their employed by the BOP to administer medical care to prisoners, they call themselves medical doctors. I am very limited to any questions I could ask them of their medical expertise, or schoolastic background.

Plaintiff has no documents to present this examiner/panel other than the documents U.S. Attorney Megan E. Farrell, 700 Grant St., suite 4000, Pittsburg, PA 15219, has sent;

Under Fed. R. Civ. P. 26(a)(2)(B). Plaintiff does not have the funds to retain an expert in the medical field to refute any adverse testimony that the defendants will attest too.

**SEE. ATTACHMENT 12-A**

## ATTACHMENT 12-A

This panel is aware that I am a federal prisoner, and not accorded the accommodation of medical investigators or any medical doctors that would be willing to come foreward and testify against their colleagues, pr bono or otherwise!

12-A

8.    Identify any statements or documents obtained by you or by anyone acting on your behalf related to the events alleged in your Amended Complaint, and for each such statement or document provide the following information:

     a.    The identity of the persons from whom each statement or document was taken;

     b.    The date on which each statement or document was taken;

     c.    The identity of the person who took each statement or document;

     d.    The identity of the person having custody or each statement or document;

     e.    State whether each document or statement was written or oral and whether each was recorded by the use of electronic equipment of any kind or by an individual taking a verbatim transcript of what was said; and

     f.    State the subject matter and substance of each statement or document.

**ANSWER:**  a.    Statement by Dr. Beam at FCI McKean on October 2, 2003, was "My hands are pretty much tied around here".

     b.    Above stated date for Dr. Beam's statement. On October 27, 2003, counselor Morello stated " that if Plaintiff needed treatment he would receive it". On April 14, 2005, Dr. Nathaniel Graham stated to Plaintiff "that in another 20 hours you would have died". Another statement by Dr. Graham in the emergency room- "this all could have been prevented if you were given the proper antibiotics".

     c.    There are no third persons involved in statement a; or statement c. I was the only one that Dr.'s Beam, and Dr. Graham spoke too at the time they made those statements.

     d.    I have no idea who would have a copy of the above statements made by Dr.'s Beam, and Dr. Graham on the above mentioned dates. These were oral statements made by Dr. Beam in the examining room at FCI McKean, and Dr. Grahams statement when I arrived in the emergency room at Bradford Hospital.

**SEE ATTACHMENT 13 A**

ATTACHMENT 13-A

e. To my knowkedge there was no third party present with any
recording device, or taking notes as per the conversation
between Dr. Beam, Dr. Graham, or any other doctor at any
time.

f. On October 2, 2003, in the examining room at FCI mcKean,
Dr. Beam made the above statements, as why he could not
administer the Interferon/ ribaviron treatment. He said
"it's not my decision to make".

The conversation between me and Dr. Graham was he was
asking me what medication I was on when I arrived in the
emergency room at Bradford Hospital. They had to send out
for my records from another hospital. When he received the
records, I believe by FAX, after reading them told me I
was not given the proper medication, that is why in such
a short time the infection spread so rapidly.

13-A

## WITNESSES 14-A

(f) Dr. Graham, at Bradford Region Medical Center was unfamiliar with Plaintiffs case. Before he would treat Plaintiff, he had Plaintiffs medical records faxed over to him from Kane Medical Center;

(g) James Fowers, inmate # 20120-068, was Plaintiffs cell-mate, he will testify as to Plaintiffs illness, the vomiting, diarrhoea, the color change and abnormal swelling in Plaintiffs legs;

(h) Donald G. Jackman Jr., inmate # 06804-068, Inmate at FCI McKean, he will attest to Plaintiffs stress, and anxiety at not being given proper medical treatment;

(i) G.R. Leacock, #02121-052, inmate at USP Lewisburg, will testiy as to Plaintiffs illness, from June 16, 2005, to March 19, 2007, that during the interim Dr. Bussanich failed to treat Plaintiff for the time he was incarcerated there;

(j) Kevin Hody, - Inmate No. unknown. Was incarcerated in Special Housing Unit (SHU) for over four (4) months witnessed how sick Plaintiff was, and the delay by medical staff in getting Plaintiff to the hospital;

(k) Kurtis Armond, inmate at McKean, Inmate No. unknown. He witnessed to the fact that the medical staff wouldn't pay any attention to Plaintiffs complaints and visual sickness. Address: P.O. Box 8105 Zanesville, Oh 43702

(l) Anthony Lowell, Inmate No. 11015-055, inmate since released from FCI McKean. He witnessed that Plaintiff was refused medical treatment. Address: 4935 Main St. Bemus Point, NY 14712

(m) Richard Smith, Inmate # 10463-052. Inmate at USP Lewisburg. He was Plaintiffs cell-mate, lived with Plaintiff 27/7, witnessed Plaintiffs pain, stress, and anxiety over not getting any treatment from the medical staff, and Dr. Bussanich's perfunctory performance, and how he failed to explicate Plaintiffs condition;

(n) Jimmy Craft, Inmate at USP Lewisburg. Inmate No. unknown. Will testify as to Plaintiffs illness, fatigue, inability to walk from swollen legs, and general lack of attention by the medical staff;

(o) Raymond Cornwell, Inmate at FCI McKean. Inmate No. unknown. Will testify to the failure of the medical department to get the proper treatment to plaintiff due to the seriousness of his condition;

## CONTINUED 14-B

## WITNESSESS 14-B

(p) Darryl Lee Cherry, Inmate at FCI McKean. Inmate No. unknown.
He will testify as to the delays and total thoughtfulness when it
came to treating Moshier. How the medical staff retaliated against
Moshier for the numerous cop-outs, and trips to the hospital, and
tryiny in vain to get the doctors to commit to a particular course
of treatment.

14-B

10.    Identify all hospitals, physicians, or other health care providers who have examined, treated, or consulted with you during the twenty (20) years prior to the date your incarceration began (April 26, 2002).  For each health care provider listed in your answer, state his or her name, address and telephone number.

**ANSWER:**

    a.    Cayuga Medical Center
          101 Oats Dr.
          Ithaca, NY 14850

          I've written a letter for all my past medical records,
          from 1982, to 2002. (No Answer yet.

    b.    Driscoll,
          Lisle, NY
          13797

          Address and Phone unknown.

11.    During the twenty (20) years prior to the date your incarceration began (April 26, 2002) had you been hospitalized? If so, identify the name and address of each hospital in which you were hospitalized and provide the following information for each:

    a.    The dates of hospitalization;

    b.    The names and addresses of the attending physicians;

    c.    The reason(s) for hospitalization; and

    d.    Any residual effects suffered from the injury, illness, symptoms or complaint of which you were hospitalized.

**ANSWER:**

```
a.   Cayuga Medical Center
     101 oats Dr.
     Ithaca, NY 14850
     Hospitalized on September 30,1989; 1998, and 1999.

b.   Names and address's of the attending physcians are
     unknown.

c.   A back injury in 1989; Appendix removel 1998;
     surgery on left knee 1999;

d.   Lower back pain,definetly from accident in 1989.
```

12.    During the twenty (20) years prior to the date your incarceration began (April 26, 2002), have you sustained any illness, injury, ailment, infirmity, impairment or disability? If so, provide the following information for each such illness, injury, ailment, infirmity, impairment or disability:

a.    The full and complete description of any such condition, including its nature, extent and severity;

b.    The exact diagnosis of any such condition;

c.    The duration in time, in months and days, that you had any such condition prior to the time of the events alleged in your Amended Complaint;

d.    Describe any medical or hospital examination, treatment or care which you received at any time for such consideration;

e.    State the names and addresses of any doctor, health care provider and/or hospital involved in any examination, treatment or care of any such condition; and

f.    State the dates of each such examination, treatment or therapy for any such condition.

**ANSWER:**

a.    The only disibility that I incurred prior to my incarceration, is the injury to my lower back due to an automobile accident occuring on September 30, 1989;

b.    I do not have in my possession any documents pertaining to my diagnosis or condition. The hospital never made then available to me;

c.    From September 30, 1989, to date;

d.    At Cayuga Medical Center, they performed X-rays. MRI-scan, gave me oral medication for pain;

e.    I do not have documentation attesting to those dates.

-17-

13.    What was the general condition of your health during each of the twenty (20) years prior to the date your incarceration began (April 26, 2002)?  If your condition was other than normal in any particular, describe the condition of your health in detail.

**ANSWER:**

    I enjoyed good health prior to my car accident on
    September 30, 1989.

14.    During the twenty (20) years prior to the date your incarceration began (April 26, 2002), did you receive any medical and/or psychological or psychiatric treatment for alcoholism or a drinking problem of any kind?  If so, provide the following information:

     a.    The dates of any such treatment;

     b.    The names and addresses of physicians or other persons providing such treatment;

     c.    The names and addresses of any institutions that you visited or in which you were admitted or institutionalized for such treatment; and

     d.    The outcome of such treatment.

**ANSWER**:   a.   None

             b.   None

             c.   None

             d.   None

15.   During the twenty (20) years prior to the date your incarceration began (April 26, 2002), did you receive any medical and/or psychological or psychiatric treatment for narcotics or drug use?  If so, provide the following information:

      a.   The dates of any such treatment;

      b.   The names and addresses of physicians or other persons providing such treatment;

      c.   The names and addresses of any institutions that you visited or in which you were admitted or institutionalized for such treatment; and

      d.   The outcome of such treatment.

**ANSWER**:   a.  None

           b.  None

           c.  None

           d.  None

16.    For each element of damages you are claiming, specify the full amount claimed

and the method of calculation.

**ANSWER:**

It is an established fact that in the very beginning the Plaintiff was interviewed by prison staff, he stated he <u>may</u> have contacted hepatitis C, some twenty- years prior. <u>No medical</u> history disputes this statement.

However, the issue here is not how or when Plaintiff contacted a disease. The facts are presented by eye-witness, and medical documents attesting to these claims of deliberate indifference by the defendant's by clear chronologigal events leading up to the time's and dates of the alleged misconduct by the defendants.

a. What monetary amount does a trier of fact compute on deliberate and unattententiveness towards a patient that is helplessely incarcerated. His pain undue suffering, and by all accounts (eye-witness testimony) faced certain death by acute infection that rapidly spread throughout his circulatory system by deliberate inadvertence. And purposful retaliation explains the delay in getting Plaintiff to the hospital with this grave illness.

b. The full amount claimed here is a delicate question. What price do we here in america cast upon a human life? We save animals caught up in acts of nature, and single out human life as less important!

c. This court asks for a method of calculation. Is the issue what he's lost in gainful employment while incarcerated? Or, do we look into Plaintiffs future?

Plaintiff is a 45 year old white male, limited education. Record shows he's a welder/fitter by trade, and we take notice a very strenuous type of hard work. Upon release Plaintiff will be 51 years old, diagnosed with Hepatitis C virus, if he should live that long. He will in all probability not be able to work as a welder/fitter, much less afford medical insurance coverage given his disease, and the expensive medication to sustain him for the rest of his life!

d. Jobs that Mr. Moshier are qualified for are disappearing at a tremendous rate in this region of the United States.Blame it on automation if you wish, for whatever reasons, Plaintiffs future is at stake here!

It is of record Plaintiff received SSD for some time before his untimely arrest in the prime of his life, and ultimate incarceration. This court is well aware of the skyrocketing prices of food, housing, and the mere staples of life, and will only increase in the years ahead!

**ATTACHMENT 21-A**

## ATTACHMENT 21-A

Mr. Moshier's permanent and likelihood effects of his trauma cannot be alleviated by prescription or therapy. The memories and nine inch scar on his abdoman will always be a reminder, fostering Post Traumatic Stress he suffered from the malevolent treatment he received at the hands of the defendants.

If Mr. Moshier was a paying customer and not a federal inmate would he have been treated differently!

Therefore, for a few of the foregoing reasons, Plaintiff informs  this court that any method of calculation other than what he has averred by this testimony and witness declaration,is <u>not</u> difficult to measure in dollar value.

The calculation is not what Plaintiff has lost, but his unability to earn a meaningful living in his future because of the misconduct of the defendants.

At just 50,000 per year, the math is simple:

**12 years incarceration x 45,000 per year, conservative---**

**$<u>540,000</u>  claim**

17.    Were you employed during the period ten (10) years prior to the date your

incarceration began (April 26, 2002)?  If so, for each period of employment identify the name

and address of your employer, your job title, the dates you worked for the employer, your salary

and your reason for leaving the employer.

**ANSWER:**

      a. Yes;

      I worked for the P.S. Griswal Construction Company in
      Cortland N.Y.

      b. I was a certified welder/fitter- I earned $10.00 per
         hour plus company benefits, and $26.00 per hour for
         union production.

      c. I was employed for the first eight months of 1999,
         laid off due to contract cancellation, and lowest
         seniority.

18.    As a result of the injuries caused by the events alleged in your Amended Complaint, are you now unable to perform, or restricted in the performance of, any normal duties or activities, including but not limited to employment?  If so, please state the nature and extent of each such disability or restriction, the manner in which your duties, activities or employment is adversely affected, and whether such disability or restriction is temporary or permanent.

**ANSWER:**

a. I am restricted to very light duty in the prison kitchen. Due to the nature of my past medical history, and to the injuries attested too at the case at bar, I can not lift anything heavier than a mop, to clean the floors in the prison kitchen.
    I am unable to enjoy leisure activities such as softball, ping-pong, basketball, or any games requiring to sit for any prolonged periods of time.
    I am restricted in bending, stooping, or stacking anything overhead. And forbidden to use any steplatters for assistance.
    I am supervised by the kitchen officer as to the institution complies to my disabilities.

    At the present my situation is hardly temporary. At my present age (45) years, my left knee and internal organs are damaged for the rest of my life. I must be on very strong medication, that are not friendly to my heart, liver, pancreas and stomach losing my gallbladder is causing me bloating and constant diarrhea. I cannot afford depends (Diapers) to keep my trousers clean while I work and maneuver about the institution.

    Would a reasonable trier of fact scrutinize the Plaintiff's journey through the prison system has been most unfortunate as to reasonable health care that should be afforded a person incarcerated in an institution that the very same jurisprudence advocates punishment for crime against society.

    Since the removal of my gallbladder, my body will never function the same as long as I live. God issued each and every one of us a gallbladder for a specific use, if He didn't think we needed one, he wouldn't have given us one!

19.    State the name and address of every person who in any way has assisted you in the preparation of your answers to these Interrogatories and Requests for Production, and identify by number of each Interrogatory or Request for which you received assistance.

**ANSWER:**

      a. Donald Leroy Moshier, Jr. Plaintiff
         #10924-052
         FCI Schuylkill
         P.O. Box 759
         Minersville, PA 17954

    * b. Several Paralegals in the various institutions that
          Plaintiff has been incarcerated in, names unknown.

      c. All interrogatories from 1-25.


*    PS 1315.07 LEGAL ACTIVITIES, INMATE

PS 1315.07:
    1. [PURPOSE AND SCOPE @ 543.10. The Bureau of Prisons affords
       an inmate reasonable access to legal materials and counsel,
       and reasonable opportunity to prepare legal documents.
          The Warden shall establish an inmate law library, and
       procedures for access to legal reference materials and
       to legal counsel, and for preparation of legal documents.]

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Each document identified in response to the above Interrogatories.

2.    Each document related to your allegations in your Amended Complaint.

3.    Each document that you intend to use as an exhibit at the trial of this matter.

4.    Each document that you relied on or referred to when drafting your Amended Complaint and/or your answers to the above Interrogatories.

5.    Each document related to your alleged damages as set forth in your Amended Complaint.

6.    Any and all documents containing hospital records, medical reports, evaluations, opinions, diagnosis, treatments, prognosis, bills, and invoices related to your medical treatment and care.

7.    Any and all documents containing the statements of persons who have knowledge of the facts and circumstances related to the events alleged in your Amended Complaint.

8.    Any and all documents containing the statements or observations of persons who have knowledge of facts related to your injuries and damages as alleged in your Amended Complaint.

9.    Each expert report prepared in connection with the events alleged in your Amended Complaint, whether or not you intend to rely on such report, and a resume and curriculum vitae for each expert.

10.    Each and every document related to any alleged loss of earnings, benefits or earnings capacity (past, present and future) as a result of the events alleged in your Amended Complaint.

11.    Please execute the attached Medical, Social Security, Employment and Tax authorization forms.

## EACH NUMERAL DENOTES TO ALPHABET

(1)a. <u>See</u>. **Exhibit 2- <u>Dr</u>. <u>Bussanich</u> <u>Attachment</u> <u>E-F</u>, <u>11-A</u>**

    b. Bradford Regional Medical Center <u>date 4/18/05</u>, Medical record #M000226525 three (3) pages.
       <u>NOTICE</u>: Dr. Graham neglected to sign this record procedure;

    c. Date of surgical operation: 4/19/05, Dr. Syed Ally, MD,
       <u>NOTICE</u>: Dr. Syed neglected to sign this record of treatment;

    d. Medical Codes: 4/20/05, Dr.'s Graham; Edward J. MD Miskiel
                         neglected to sign document;

    e. Discharge summary: 4/27/05, Dr. Graham neglected to sign
                             document;

    f. All other documents pertinate to this case are in the hands of the US Attorney.

(2)g. <u>All documents are related</u>.

(3)h. <u>See</u>. **Exhibit 2**, HCV Treatment Psychology Evaluation 9/22/04.

(4)i. Unanswered letter addressed to Dr. Nathanial Graham, dated 4/12/07, neglected to respond;
(4-A) j. All documents submitted;

(5)k. <u>All documents are related</u>;

(6)l. All documents submitted are all I have in my possession as of this date. (Have signed and returned forms for: Request for medical records to : Cayuga Medical Center, 101 Dates Dr. Ithaca, NY 14810;

(7)m. <u>See</u>, Page 11, 11-B, See also Exhibit 2:
    I. Dr. Bussanich, Attachment E-F, 11-A, Bradford Regional Medical Center, date 4/18/05;

    II. Date of surgical operation, 4/19/05;
   III. Medical codes: 4/20/05

    IV. Discharge summary: 4.27/05;

    V. All other documents are in the possession of the US Attorney;

**ATTACHMENT 25-A**

25

Attachment 25-A

(8) n. See. page 11-11A; 11-B <u>Witness sheet</u>

(9) o. See. page 8-0-A <u>evidence sheet</u>, and all documents presented;
     (curriculum Vitae) <u>Plaintiff</u> does not have the resources or
     a private investigator to delve into the schoolastic background
     of the defendants, or any medical associations they may be by
     membership, or general education.
          However, I will adduce, that none of the prison doctors
     that allegedly treated me for Hepatitis C, are even remotely
     qualified to treat a patient diagnosed with Hepatitis C.;

(10) p. Plaintiff has no loss of earnings from the result of this
     episode because he's incarcerated. His living quarters,
     food, clothing, and general care albeit the health care
     the BOP provides.
          In retrospect Plaintiff's capacity for any kind of
     gainful employment available in the private sector has
     been greatly diminished if not curtailed due to the
     inadequate health care by the defendants, now and in his
     future;

(11) q. Completed as instructed.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

MEGAN E. FARRELL
Assistant United States Attorney
Western District of PA
700 Grant St., Suite 4000
Pittsburgh, PA 15219
412/894-7429
Pa. I.D. No. 76972

Counsel for defendants

Dated: April 20, 2007

## **VERIFICATION**

I, Donald L. Moshier, Jr., hereby declare under penalty of perjury that to the best of my knowledge and belief, based on the information officially furnished to me, the foregoing is true and correct.

DONALD L. MOSHIER, JR..

## CERTIFICATE OF SERVICE

I hereby certify that this _20th_ day of April, 2007 the original and two true and correct

copies of the foregoing Defendants' First Set of Interrogatories and Requests for Production of

Documents was served to and upon the following:

> Donald L. Moshier, Jr.
> No. 10924-052
> USP Lewisburg
> P.O. Box 1000
> Lewisburg, PA 17837

MEGAN E. FARRELL
Assistant United States Attorney