IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD L. MOSHIER, JR | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 05-180(ERIE) |
| | ) | |
| v. | ) | JUDGE MCLAUGHLIN |
| | ) | MAGISTRATE JUDGE BAXTER |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Electronically Filed |
| Defendant. | ) | |

**UNITED STATES' CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(B)(1) of the Western District of Pennsylvania, defendant the United States of America, by its undersigned counsel, files the following Concise Statement of Material Facts in Support of its Motion for Summary Judgment:

1.  Donald L. Moshier is a federal inmate who was incarcerated at the Federal Correctional Institution in McKean County, Pennsylvania ("FCI McKean") from June 6, 2002 until his transfer to another institution on June 26, 2005. (*See* Docket No. 40 at 1-3).

2.  Prior to plaintiff's incarceration, on June 6, 1999, plaintiff was diagnosed with cirrhosis after he underwent a diagnostic laparoscopy with laparoscopic appendectomy at Cayuga Medical Center at Ithaca. (*See* Operative Note (6/6/99), Ex. 7, at 2).

3.  On September 2, 2003, plaintiff requested a hepatitis test because he had been feeling ill, and because he had a history of intravenous drug use, cocaine use, and unprotected sexual contact. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2a); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 107); (Donald L. Moshier deposition transcript, Ex. 2, at 29, 31-33).[1]

---

[1] Citations to "(Ex. __)" refer to the exhibit numbers of documents contained in a separate Appendix of Exhibits in Support of the United States' Motion for Summary Judgment, which is being filed simultaneously with this Concise Statement of Material Facts.

4.  In response to plaintiff's request, a Hepatitis C profile was conducted on September 4, 2003, the results of which indicated that plaintiff had tested positive for the Hepatitis C antibody. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2b); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 104, 256).

5.  After the results of plaintiff's hepatitis test were received at FCI McKean on September 16, 2003, Herbert Beam, M.D. Staff Physician at FCI McKean, placed plaintiff on the chronic care list. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2c); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 104).

I.  **MONITORING AND TREATMENT OF PLAINTIFF'S HEPATITIS C PRIOR TO INITIATION OF ANTIVIRAL THERAPY**

6.  Under the heading "[i]dentifying candidates for liver biopsy," the Federal Bureau of Prisons Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis (February 2003) ("BOP Guidelines") state that "[i]nmates with chronic HCV infection should be periodically evaluated and have ALT levels monitored to help determine if liver biopsy is warranted in accordance with the following . . . ." (BOP Guidelines, Ex. 6, at 42).

7.  The BOP Guidelines further explain that, "[i]nmates with ALT levels two times the upper limit of normal or greater should have ALT measurements repeated at least twice over a 6 month period. Inmates with persistent elevations in ALT levels > twice normal should be referred directly for liver biopsy unless antiviral therapy is contraindicated." (BOP Guidelines, Ex. 6, at 42).

8.  ALT is a liver enzyme that is tested to determine if a patient has liver damage. (*See* Docket No. 40, at 4, n.3).

9.      On October 10, 2003, blood was collected from plaintiff for a hepatic function panel, the results of which were received on October 21, 2003 and indicated that plaintiff had an elevated ALT level of 116 (reference range 0-40).  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2m); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 430).

10.     During an examination on October 16, 2003 in FCI McKean's Chronic Care Clinic, Dr. Beam informed plaintiff that most people get Hepatitis C through intravenous drugs; in response, plaintiff stated that he has probably had Hepatitis C for twenty years.  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2t); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 100-01); (Donald L. Moshier deposition transcript, Ex. 2, at 62).

11.     In response to Interrogatory No. 16, plaintiff stated: "It is an established fact that in the very beginning the Plaintiff was interviewed by prison staff, he stated he <u>may</u> have contacted hepatitis C, some twenty-years prior.  (*See* Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production of Documents, Ex. 1).

12.     On November 17, 2003, a Hepatitis C battery, and Hepatitis A and B serology tests were conducted on plaintiff; the results of such tests, received on November 26, 2003, indicated that plaintiff had tested positive for the Hepatitis B surface and core antibodies, but tested negative for the IgM antibody to the Hepatitis A antigen.  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2y); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 254)

13.     On December 22, 2003, Dr. Beam ordered a Hepatitis A vaccine for plaintiff, which was administered on January 23, 2004.  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2gg and 2kk); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 92-94).

14.     A blood sample was collected from plaintiff on February 12, 2004 for a liver profile test, the results of which were received on February 18, 2004, and indicated that plaintiff's ALT level was still elevated at 115 (reference range 11-66). (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2mm); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 431).

15.     After plaintiff failed to report for a Chronic Care Clinic appointment on April 21, 2004, he was advised that he would be rescheduled in one month. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2pp); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 88-89).

16.     On May 12, 2004, another blood sample was collected from plaintiff for a lipid test and a liver profile, the results of which were received on May 17, 2005 and indicated an elevated ALT of 129 (reference range 11-66). (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2qq); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 432).

17.     On May 21, 2004, Dr. Beam ordered a Hepatitis C battery and a psychological evaluation, and forwarded a liver biopsy referral to the Utilization Review Committee ("URC"); the URC approved plaintiff for a liver biopsy on July 15, 2004. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2rr and 2ss); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 85-87).

18.     A blood sample was collected from plaintiff on July 19, 2004 for a complete metabolic test, viral load test, HCV genotyping test and ferratin test; the results indicated, *inter alia*, that plaintiff's ALT level was 130 (reference range 11-66), his HCV was of the Genotype 3e, his ferritin was 180 mg/mL, and his HCV level was 7,270,000 UI/mL. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2tt-2ww); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 234-35, 253-54).

19. On August 24, 2004, a liver biopsy was performed on plaintiff at the Bradford Regional Medical Center; a CT guided needle biopsy of plaintiff's liver revealed that his liver had the consistency of wood, and he was diagnosed with cirrhosis of the liver, micro-nodular pattern, active. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2ccc); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 191, 196).

20. On September 8, 2004, the day after he reviewed the biopsy report, Dr. Beam informed plaintiff that the liver biopsy revealed cirrhosis, and he discussed with plaintiff the risks, psychological effects and bone marrow treatment associated with Interferon treatment; after this discussion, plaintiff indicated that he wanted the treatment, and Dr. Beam agreed that the treatment was "a good idea." (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2fff and 2ggg); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 78, 191).

21. Plaintiff was cleared by the Chief Psychologist to receive Interferon and Ribavirin treatment on September 22, 2004. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2hhh); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 252).

22. On October 7, 2004, Dr. Beam made an administrative notation indicating that he was approved to initiate Interferon and Ribavirin treatment on plaintiff, which was scheduled to begin during the week of October 25, 2004. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2kkk); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 79).

II. **ADMINISTRATION OF ANTIVIRAL THERAPY TO PLAINTIFF**

23. Plaintiff received his first dosage of Interferon/Ribaviron on October 28, 2004. (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2nnn); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 75).

24.     Plaintiff received his second dosage of Interferon/Ribaviron on November 4, 2004, his third dosage of Interferon/Ribaviron on November 11, 2004, and his fourth such dosage on November 18, 2004.  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2qqq, 2uuu and 2xxx ¶ 2uuu); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 72, 68).

25.     On November 11, 2004, plaintiff was seen by Dr. Beam with complaints of a headache and a hollow feeling in his ears; as a result, plaintiff's dosages of Interferon/Ribavirin were reduced from 180 to 90 mcg/week (Interferon) and from 1200 to 600 mg/day (Ribavirin). (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶ 2aaaa); (Plaintiff's Prison Medical Records, Ex. 5a, at p. 66).

26.     From October 28, 2004 until April 14, 2005, plaintiff received a total of 25 weekly doses of Interferon/Rivavin, eleven of which were full doses.  (*See* Decl. of A. Bussanich, M.D., Ex. 5, ¶¶ 2nnn, 2qqq, 2uuu, 2xxx, 2bbbb, 2ffff, 2jjjj, 2mmmm, 2qqqq, 2tttt, 2wwww, 2zzzz, 2bbbbb, 2ddddd, 2fffff, 2hhhhh, 2kkkkk, 2nnnnn, 2qqqqq, 2sssss, 2uuuuu, 2wwwww, 2zzzzz, 2cccccc, 2ffffff); (Plaintiff's Prison Medical Records, Ex. 5a, at pp. 44-45, 46-51, 54, 57-65, 67-68, 72, 75, 72, 157-58).

**III.    PLAINTIFF'S FAILURE TO PROVIDE ANY EXPERT TESTIMONY/REPORT**

27.     Pursuant to this Court's Minute Entry entered on March 22, 2007, discovery was required to be completed by July 31, 2007.  (*See* Docket No. 34).

28.     In Interrogatory No. 7 of Defendant's First Set of Interrogatories and Requests for Production of Documents, plaintiff was asked to identify each expert witness who he may call to testify at trial in support of his action, and to provide certain information for each such expert

witness.  (*See* Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production of Documents, Ex. 1).

29. In response to Interrogatory No. 7, plaintiff stated:  "At this time I do not have any expert witness' [sic] to testify and support me in this claim . . . ." (*See* Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production of Documents, Ex. 1).

30. During his deposition on July 30, 2007, plaintiff confirmed that he has no expert, and has not had any discussions with expert witnesses to testify on his behalf.  (*See* Donald L. Moshier deposition transcript at 101-102, Ex. 2).

31. Accordingly, as of this date, plaintiff has not produced an expert report or otherwise identified an expert who will testify in support of his medical malpractice claims.

    Respectfully submitted,

    MARY BETH BUCHANAN
    United States Attorney

    /s Megan E. Farrell
    MEGAN E. FARRELL
    Assistant U.S. Attorney
    Western District of PA
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219
    (412) 894-7429
    PA I.D. No. 76972

    Counsel for defendant the United States of America

Dated: October 12, 2007