IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD L. MOSHIER, JR | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 05-180(ERIE) |
| | ) | |
| v. | ) | JUDGE MCLAUGHLIN |
| | ) | MAGISTRATE JUDGE BAXTER |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Electronically Filed |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

In its Brief in Support of the United States' Motion for Summary Judgment ("Defendant's Opening Brief" or "Def.'s Br."), defendant the United States of America argued that summary judgment should be entered in its favor as to plaintiff's only remaining claim, in which he alleged that the medical staff at the Federal Correctional Institution in McKean County, Pennsylvania ("FCI McKean") provided him with negligent medical treatment with regard to his Hepatitis C virus. Specifically, Defendant's Opening Brief argued that Pennsylvania law is clear that, in a case such as this involving complex medical issues, a plaintiff cannot maintain a medical malpractice claim without producing a sufficient expert report or testimony, and that plaintiff had failed to produce such requisite evidence in this case. (*See* Def.'s Br. at 5-7) (citing cases); *see, e.g., Mitzelfelt v. Kamrin*, 584 A.2d 888, 892 (Pa. 1990). It also argued that plaintiff cannot demonstrate a breach of the standard of care, because the medical records show that the medical staff at FCI McKean treated plaintiff in accordance with applicable medical guidelines. (*See* Def's Br. at 8-11). Finally, the United States argued that plaintiff cannot demonstrate that any delay or denial of treatment caused his cirrhosis, because medical records show that plaintiff has had cirrhosis since at least 1999. (*See id.* at 11-12).

Plaintiff's "Rebuttal to United States Governments Motion for Summary Judgment" ("Plaintiff's Rebuttal" or "Pl.'s Reb.") does not dispute that plaintiff has failed to provide an expert report or testimony in support of his medical malpractice claim. (*See* Pl.'s Reb. at 2). Rather, Plaintiff's Rebuttal asserts that he has satisfied the requirement for expert testimony by naming treating physicians at Bradford Regional Medical Center ("BRMC"), and by identifying documents. (*See id.*) Additionally, plaintiff now concedes that the alleged delay in initiating antiviral therapy did not cause his cirrhosis. (*See id.* at 4). Plaintiff's Rebuttal instead claims that the medical staff at FCI McKean was negligent because its alleged delay in medical treatment allowed plaintiff to develop an infection that allegedly caused his gallbladder problems, and because the dose and duration of his antiviral therapy was inappropriate. (*See id.* at 4-7).

For the reasons explained below, all of plaintiff's arguments fail. As such, and for the reasons asserted in Defendant's Opening Brief, the Court should enter summary judgment in favor of the United States.

## ARGUMENT

**I. PLAINTIFF CANNOT AVOID APPLICATION OF THE RULE THAT EXPERT TESTIMONY IS NEEDED TO ESTABLISH MEDICAL MALPRACTICE**

Plaintiff's Rebuttal does not dispute the proposition that, under Pennsylvania law, he cannot maintain a malpractice case without providing expert testimony. (*See* Def.'s Br. at 5-7) (citing cases). Plaintiff's response is only that his witnesses are Dr. Horsley, a physician at BRMC who performed plaintiff's liver biopsy, and Dr. Graham, the surgeon at BRMC who removed plaintiff's gallbladder. (*See* Pl.'s Reb. at 2). He also cites documents he received from the Hepatitis C Support Project and Prison Health News. (*See id.*) However, plaintiff provides

no support for his assertion that simply identifying treating physicians and documents is a sufficient substitute for the expert report and testimony required under Pennsylvania law.[1]  Nor can he.  Pennsylvania law is clear as to the necessity of an expert report in a case such as this. *See, e.g., Wooding v. U.S.*, Civil Action No. 05-1681, 2007 WL 951494, at *5 (W.D. Pa. March 27, 2007) (granting the United States' motion for summary judgment as to the plaintiff's medical malpractice claim, because the plaintiff failed to provide the requisite expert testimony).  Defendant's motion should be granted, therefore, based solely on plaintiff's failure to provide the requisite expert report or testimony.

II.   **THE MEDICAL RECORDS CONFIRM THAT THERE WAS NO DELAY IN TREATING PLAINTIFF, AND THAT THE DOSE AND DURATION OF HIS ANTIVIRAL TREATMENT WERE ENTIRELY APPROPRIATE**

Although plaintiff's arguments are somewhat difficult to follow, Plaintiff's Rebuttal clearly disavows any allegation that a delay in initiating antiviral therapy caused his cirrhosis.  (*See* Pl.'s Reb. at 4) ("The government insinuates that Mr. Moshier claims they caused his cirrohsis [sic], he's not claiming that at any point.").  "Mr. Moshier's claim is that from the neglect and the delay in treating him, that the staff at FCI McKean allowed his body to become rampant with infection causing him to nearly die from a gangerous [sic] gallbladder." (*Id.*)  But there was no such delay.  As discussed in Defendant's Opening Brief, plaintiff was treated in accordance with the applicable guidelines for Hepatitis C, which required repeated monitoring and testing over time to ensure that he was an appropriate candidate before providing antiviral

---

[1]Plaintiff also complains that "a significant amount of his medical records are missing due to staff going through his property before and during his transfer to FCI Schuylkill on or about March 19, 2007." (*Id.*)  However, defense counsel sent plaintiff all of the pleadings in this case, including all of his medical records, on March 22, 2007.  (*See* enclosure letter from M. Farrell to D. Moshier dated March 22, 2007) (attached as Exhibit 2).

therapy.  (*See* Def.'s Br. at 8-11).  According to defendant's expert Barry Kisloff, M.D., FACP, "[t]he claimed 'delay' actually constituted appropriate management of Mr. Moshier as per 'FBP Clinical Practice Guidelines for the Prevention & Treatment of Viral Hepatitis, February 2003.'" (*See* Suppl. Expert Report of Barry Kisloff, M.D., FACP at p. 1) (attached as Exhibit 1).  Under the applicable guidelines, inmates with ALT levels two times the upper limit of normal ("ULN") or greater should have ALT measurements repeated at least twice over a 6 month period.  (*See id.*) (citing The Federal Bureau of Prisons Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis (February 2003), Ex. 6, at p. 43)).[2]  Dr. Kisloff concluded that "Mr. Moshier's ALT levels were just above or immediately below twice the ULN and hence the correct observation of his status rather than a rush to treatment."  (*Id.*)[3]

Plaintiff also alleges that the medical staff at FCI McKean was negligent with regard to the dose and duration of his antiviral treatment.  Specifically, plaintiff contends that although he received weekly injections of Interferon, it should have been administered several times a week.  (*See* Pl.'s Reb. at 5).  Plaintiff further objects that his dose of Ribavirin was too low for a 286 lb. individual such as plaintiff, and that the therapy should have been taken for a year.  (*See id.* at 5-6).  But as demonstrated by Dr. Kisloff, none of plaintiff's assertions is correct.  With regard to plaintiff's first complaint, Dr. Kisloff explains that plaintiff received not standard Interferon

---

[2]Citations to "(Ex. __)" refer to the exhibit numbers of documents contained in the Appendix of Exhibits in Support of the United States' Motion for Summary Judgment.

[3]In response to the assertion in Defendant's Opening Brief that plaintiff failed to report for his chronic care clinic appointment on April 21, 2004 (*see* Def.'s Br. at 9), Plaintiff's Rebuttal states that "by his own admission Dr. Beam failed to put Mr. Moshier on the call-out list" for that date.  (Pl's. Reb. at 3).  But in contrast to the medical records supporting plaintiff's failure to report, plaintiff provides no evidence supporting Dr. Beam's alleged admission.

("INF") but "rather the newer, more effective and easier to administer pegylated INF (PEG-INF) which is administered on a once weekly basis." (*See* Suppl. Expert Report of Barry Kisloff, M.D., FACP at p. 2). As for plaintiff's second complaint, Dr. Kisloff explains that weight-based dosing of both PEG-INF and INF remains controversial, but that "[t]his issue is moot in Mr. Moshier's instance as the standard dosing regimen was appropriately decreased on an intermittent basis due to the adverse effect of the medication upon Mr. Moshier's bone marrow." (*Id.*) Dr. Kisloff explains that plaintiff's third complaint, regarding the duration of his treatment, is also without merit because plaintiff had the genotype 3e, for which treatment is recommended for only twenty-four weeks. (*Id.*) Because plaintiff has presented no evidence of any breach of the standard of care, his medical malpractice claim should fail.[4]

### III. PLAINTIFF CANNOT SHOW THAT ANY ALLEGED NEGLIGENCE IN TREATING HIS HEPATITIS C CAUSED HIS GALLBLADDER PROBLEMS

Even if plaintiff could establish negligent treatment with regard to his Hepatitis C (which he cannot), there is no evidence of a causal connection between such negligence and his gallbladder problems. As discussed, Plaintiff's Rebuttal concedes that plaintiff is not alleging that any such negligence caused his cirrhosis; rather, he now claims negligence because the medical staff at FCI McKean allowed plaintiff to develop an infection that allegedly led to his gallbladder problems. (*See* Pl.'s Reb. at 4). This argument fails for two additional reasons.

---

[4]Plaintiff also complains that he apprised Dr. Beam of his cirrhosis at the time of his initial visit to the medical facility at FCI McKean, and his "blood test proved that he was already in the advanced states of cirrhosis." (*See* Pl.'s Reb. at 4, 7). As demonstrated by Dr. Kisloff, neither assertion is factually accurate. (*See* Suppl. Expert Report of Barry Kisloff, M.D., FACP at pp. 1-2)

First, plaintiff cannot resurrect his claim regarding his gallbladder problems. As the Court will recall, plaintiff's claim alleging medical negligence regarding the treatment of his gallbladder problems and the growth on the side of his stomach were dismissed for failure to exhaust his administrative remedies with respect to these issues. (*See* Docket Nos. 40 and 43). Plaintiff cannot make an "end run" around this dismissal. Second, this claim fails because plaintiff has presented no evidence that his Hepatitis C or the treatment therefor caused his gallbladder problems. And according to Dr. Kisloff, there is no such connection:

> The assertion of the plaintiff that the occurrence of his gangrenous gallbladder in Mid April, 2005 was somehow related to his hepatitis C or its treatment is entirely without any basis in fact. There is no causal connection between hepatitis C, its treatment and the development of cholecystitis in any of its forms.

(*See* Suppl. Expert Report of Barry Kisloff, M.D., FACP at p. 2).

## CONCLUSION

For all the foregoing reasons, as well as those stated in Defendant's Opening Brief, the Court should grant the United States' motion for summary judgment and enter judgment in defendant's favor as to each of plaintiff's claims.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

s/ Megan E. Farrell
MEGAN E. FARRELL
Assistant U.S. Attorney
Western District of PA
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7429

Dated: January 25, 2008          Counsel for defendant the United States of America

-6-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January, 2008, a true and correct copy of the within Reply Brief in Support of the United States' Motion for Summary Judgment was served via first-class U.S. mail upon the following:

> Donald L. Moshier, Jr.
> No. 10924-052
> FCI Schuylkill
> P.O. Box 759
> Minersville, PA 17954

> s/ Megan E. Farrell
> MEGAN E. FARRELL
> Assistant United States Attorney