# EXHIBIT 1

176 Thornberry Drive
Pittsburgh, PA 15235-5061
January 10, 2008

Ms. Megan E. Farrell
Assistant U.S. Attorney
Western District of Pennsylvania
U.S. Post Office & Courthouse
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

RE: Donald L. Moshier, Jr. v. U.S., et al.

Dear Ms. Farrell:

It has been brought to my attention that the plaintiff in the above-captioned matter has raised several issues as regards the care rendered to him at FCI McKean. The matters addressed by Mr. Moshier are:

(1) That he apprised Dr. Beam of his cirrhosis at the time of his initial visit to the medical facility at FCI McKean (9/2/2003). The records do not bear out this contention. They indicate that the plaintiff was concerned as to possible viral hepatitis based upon a history of high risk behavior for acquiring viral hepatitis-i.e., IV drug use, cocaine consumption and unprotected sex.

(2) Therapy for hepatitis C was allegedly delayed with the initial elevated liver injury tests (LITs) having been reported 10/10/2003, the positive hepatitis C serology noted on 9/16/2003 while the liver biopsy occurred 8/24/2004 and antiviral therapy initiated 10/28/2004. In the interim Mr., Moshier had repeat blood studies on 2/12 and 7/19/2004 to confirm both the persistence and magnitude of the elevated LITs. The claimed "delay" actually constituted appropriate management of Mr. Moshiers as per "FBP Clinical Practice Guidelines for the Prevention & Treatment of Viral Hepatitis, February 2003", pg.43. This reference both defines "minimally elevated" ALT levels at roughly twice the upper limit of normal (ULN) and recommends "Inmates with ALT levels two times the ULM or greater should have ALT measurements repeated at least twice over a 6 month period. "Mr. Moshier's ALT levels were just above or immediately below twice the ULN and hence the correct observation of his status rather than a rush to treatment. Similar observational time frames are recommended in the "NIH Consensus Statement on Management of Hepatitis C: 2002", pgs. 10 & 15. Both of the above noted publications represent highly reliable state-of-the-art references with regard to the management and treatment of hepatitis C.

(3) Mr. Moshier questions the dosage of medications and duration of the treatment he received for his hepatitis C. He claims that; (a) He should have received thrice weekly interferon (INF), (b) That his dose of ribavirin was low given his generous size and (c) The treatment should have been a year's duration rather that the 24-25 weeks of the medication he received. All of these allegations are incorrect. As to (a), Mr. Moshier did NOT receive standard ING bur rather the newer, more effective and easier to administer pegylated INF (PEG-INF) which is administered on a once weekly basis rather than trice weekly, As to (b), weight based dosing of both PEG-INF and ribavirin remains controversial as to efficacy vis-à-vis a fixed dosing schedule. This issue is moot in Mr. Moshier's instance as the standard dosing regimen was appropriately decreased on an intermittent basis due to the adverse effect of the medication upon Mr. Moshier's bone marrow. This was principally manifest by the intermittent decrease in his platelet count. Mr. Moshier would not have tolerated a weight based regimen even if such were the standard of care. As to (c), Mr. Mosier had the genotype 3e of the hepatitis C virus for which treatment is recommended for only 24 weeks. The full 48 week dosing is used for the more difficult to treat genotype 1 of the hepatitis C virus.

(4) The plaintiff claims (pg. 7, para.1) that "...blood test proved that he was already in the advanced states of cirrhosis." This is simply incorrect and at variance with the facts, Indices of hepatic function such as serum albumin (10//2003, 7/19/2004), total protein (same dates) and prothrombin time (4/14/2004) were normal in his pretreatment evaluation. Blood laboratory values of liver function are only diminished in advanced states of liver compromise. Mr. Moshier's hepatic synthetic function remained adequate during his pretreatment evaluation.

(5) The assertion of the plaintiff that the occurrence of his gangrenous gallbladder in mid April, 2005 was somehow related to his hepatitis C or its treatment is entirely without any basis in fact. There is no causal connection between hepatitis C, its treatment and the development of cholecystitis in any of its forms.

In summary, there is no basis in fact to support any of the allegations made by the plaintiff.

Sincerely yours,

Barry Kisloff, M.D., FACP